**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DAIMLER TRUCKS NORTH AMERICA LLC, a Delaware limited liability company,** | ) ) ) | |
| Plaintiff, | ) | **Case No. 08 CV 2893** |
| v. | ) ) | **Judge Lefkow** |
| | ) | **Magistrate Judge Denlow** |
| **RAMIN YOUNESSI, an Illinois resident,** | ) ) | |
| Defendant. | ) ) | |

## YOUNESSI'S RESPONSE TO DAIMLER'S MOTION TO QUASH THIRD-PARTY SUBPOENAS OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Ramin Younessi ("Younessi") opposes the Motion to Quash Third-Party Subpoenas or, in the Alternative, For a Protective Order filed by Daimler Trucks North America LLC ("Daimler") on May 19, 2008, and in support thereof states as follows:

### I.    INTRODUCTION

Daimler filed this motion without any attempt to meet and confer with Younessi's counsel, and for that reason alone its motion should be denied. It should also be denied on substantive grounds. The subpoenas are directed at critically relevant information, are narrowly tailored, and are not unduly burdensome. Moreover, the information sought is not appropriately protected by any privilege. Instead, the documents are subject to production because they are directly at issue in this case, and Younessi has no other method to obtain the information sought.

The facts are quite simple: Younessi is a former employee of Daimler who moved to a quiet suburban street in Naperville, Illinois, just over a year ago. After filing its third lawsuit in less than a year against Younessi, Daimler interfered with Younessi's seclusion by hiring private detectives to follow, surveil, and harass Younessi and his family at their new home. These

detectives sat outside the Younessis' home for twenty-four hours a day for a period of several days and followed Mrs. Younessi on her daily errands. The Younessis and their neighbors were so concerned about the presence of these strange men in dark cars that the police were called, and it was discovered that the detectives falsely told the Naperville police that they were in the area on a "workers' compensation" matter. As the District Court of Oregon found, the hiring of private detectives has no place in litigation of the type Daimler has brought against Younessi. See Jan. 16, 2008 Tr. at 3, Ex. A hereto. Indeed, Daimler's conduct was so egregious that the District Court of Oregon issued a protective order to prevent Daimler from further harassing Younessi and his family. Id.

Because of Daimler's unwarranted and harassing actions, Younessi filed a claim of invasion of privacy based on intrusion upon seclusion. See Answer and Amended Counterclaim, Ex. B hereto. Younessi caused reasonable subpoenas to issue on the individual private detectives who harassed him and his family, as well as on the detective agency. See Subpoenas, Ex. C hereto. Those subpoenas seek depositions as well as the production of documents related to the surveillance of the Younessis and Daimler's hiring of the detectives. Id. The information requested is relevant not only to Daimler's underlying claims against Younessi, but most particularly to Younessi's claims against Daimler. Younessi has no other way to get the information to address Daimler's egregious actions except from the private detectives themselves – the detectives possess the surveillance footage, the detailed information of their actions, possibly transcripts of eavesdropped conversations, tangible material gathered from the Younessis, documents of their activities, and any amount of other evidence. This evidence is crucial to redressing Younessi's harm, and exists solely in the possession of Daimler's detectives.

## II.    FACTS

Younessi is a former employee of Daimler, which is headquartered in Portland, Oregon. See Answer and Amended Counterclaim, Ex. B.  He left Daimler on March 12, 2007, and moved to a quiet residential street in Naperville, Illinois.  See id.  Daimler filed suit against Younessi in this Court on March 23, 2007, alleging that Younessi would disclose trade secrets to his new employer and that he had breached a confidentiality agreement.  That suit was voluntarily dismissed because Daimler had misrepresented its citizenship and diversity jurisdiction did not exist.  See Illinois Federal Complaint, Ex. D; Notice of Dismissal, Ex. E.  Daimler then filed suit against Younessi in the Circuit Court of DuPage County, and made the same claims in that suit. See Illinois State Complaint, Ex. F.  The state lawsuit was voluntarily dismissed when the parties reached a settlement agreement, which was executed on April 22, 2007.  See Settlement Agreement, Ex. G.

Daimler then again sued Younessi, this time in the District of Oregon.  In this latest lawsuit, Daimler alleges that Younessi removed confidential information from his office at Daimler and breached the same confidentiality agreement.[1]  That lawsuit was filed on January 7, 2008, along with a motion for a temporary restraining order.  Daimler served the complaint at Younessi's place of business in Warrenville, Illinois, on January 7, 2008, by leaving it with the receptionist.  See Proof of Service, Ex. H.

On or about January 7, 2008, Younessi and his wife (as well as their neighbors) became aware that a series of strange men were lurking outside the Younessis' house in Naperville, Illinois.  See Younessi Emergency Motion for Protective Order, Ex. I; Dec. of K. Younessi, Ex.

---

[1] A motion to dismiss all these claims as released under the earlier settlement agreement and as preempted by the Oregon Trade Secrets Act is currently on file with the District Court of Oregon.

J; Younessi's Response to Daimler's First Set of Interrogatories at Resp. No. 1, Ex. K. At least one of these men was present outside the Younessis' house for twenty-four hours a day, and at times more than one man was present. Younessi's Response to Daimler's First Set of Interrogatories at Resp. No. 1, Ex. K. The men sat in a series of dark cars with electronic equipment and made no attempt to be circumspect; instead, they openly watched the Younessis' house and followed at least Mrs. Younessi around town. Id. at 6. Younessi contacted the Naperville police, who informed him that private detectives had told the police that they would be working in the area on a "workers' compensation" matter. Id. On at least one occasion, one of the detectives followed Younessi's wife as she went about her daily errands, including a trip to her doctor's office. Id. This constant surveillance continued until at least January 10, 2008. Id.

On January 14, 2008, Younessi filed an emergency motion for a protective order with the District Court of Oregon in order to stop Daimler's harassing behavior. See Younessi Emergency Motion for a Protective Order, Ex. I. At the hearing on that motion and on Daimler's motion for a temporary restraining order, Daimler's counsel declined to answer the Court's question on why it had hired the private detectives, instead claiming that even the fact of hiring the detectives was itself privileged. See Jan. 16, 2008 Tr. at 3, Ex. A. Despite Daimler's refusal to admit that it had hired the detectives, the Oregon Court granted Younessi's motion, stating that it could not "see any logical reason to have a private detective sitting outside of the defendant's home and thereafter following defendant's wife." See id. at 2-3. At the same hearing, the Oregon Court denied Daimler's motion for a temporary restraining order. See id. at 14.

III.    **ARGUMENT**

A.    **Daimler's Failure to Adhere to Rule 26(c) Warrants Denial of Its Motion**

Daimler did not make any attempt whatsoever to meet and confer with Younessi before filing its motion to quash and for a protective order, which is a violation of Federal Rule of Civil Procedure 26(c). Rule 26(c) states that "any person" who moves for a protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c). Not only does Daimler's motion fail to include the required certification, but Daimler did not even attempt to contact Younessi's counsel prior to its filing. Such a failure to abide by the rules warrants denial of Daimler's motion. See Moriarty v. LSC Illinois Corp., Case No. 98 C 7997, 1999 WL 1270711 at *4 ( Dec. 29, 1999, N.D. Ill.) (denying motion for protective order because "the failure to certify [conference on] the original motion constitutes a procedural basis for denying that motion for a protective order."); Stalling v. Union Pacific RR Co., Case No. 01 C 1056, 2003 WL 22071502 at *1 (Sept. 4, 2003, N.D. Ill) (failure to certify attempts to meet and confer merit denial of motion); Syngenta Seeds Inc. v. BTA Branded Inc., Case. No. 05 C 6673, 2007 WL 3256848 at *1 (Nov. 1, 2007, N.D. Ill.) (failure to meet and confer is sufficient grounds to deny motion).

B.    **The Subpoenas Seek Information Not Only Relevant, But Crucial to Younessi's Defenses and Claims**

On substantive grounds, Daimler incorrectly states that discovery related to its surveillance of Younessi is "not relevant to any claim or defense raised in this action." See Mot. at 3. Daimler's position is incorrect. First, Daimler hired private detectives to surveil Younessi and his wife, presumably in the hope of uncovering information helpful to its case. As such, any information that the detectives gathered (or failed to gather) is substantive evidence that goes

directly to Daimler's allegations and Younessi's defenses.  It is thus of central relevance to the

claims in this case.  The majority of courts that have considered surveillance materials, whether

intended to be used at trial or not, have held that such materials are discoverable.  See, e.g.,

Boyle v. CSX Transp., Inc., 142 F.R.D. 435, 437 (S.D.W.Va. 1992); Daniels v. National R.R.

Passenger Corp., 110 F.R.D. 160, 161 (S.D.N.Y. 1986); Martin v. Long Island R.R. Co., 63

F.R.D. 53, 55 (E.D.N.Y. 1974); Dodson v. Persell, 390 So.2d 704, 705 (Fla. 1980); Jenkins v.

Rainner, 350 A.2d 473, 475 (N.J. 1976); Olszewski v. Howell, 253 A.2d 77, 78 (Del. 1969);

Suezaki v. Superior Court, 373 P.2d 432, 434-35 (Cal. 1962).

     Second, because of Daimler's egregious actions, Younessi has filed a claim for invasion

of privacy.  See Answer and Amended Counterclaim, Ex. B.  This claim is based on the

detectives' behavior in staking out his home twenty-four hours a day, performing surveillance on

him and his family, and in following his family (and presumably him as well) throughout town.

See Younessi's Response to Daimler's First Set of Interrogatories at Resp. No. 1, Ex. K;

Younessi Emergency Motion for Protective Order, Ex. I; Dec. of K. Younessi, Ex. J.  Thus, not

only are the facts uncovered by the private detectives relevant to Daimler's own claim, but they

are directly relevant, and indeed crucial, to Younessi's claim against Daimler.[2]  Younessi has no

---

[2]    Daimler argues that this Court should prevent Younessi from conducting discovery
because Daimler filed a motion to dismiss this claim.  Daimler has not asked the Court in
the underlying litigation for a stay in discovery pending disposition of its motion, nor
would such a motion be proper.  See, e.g., Graue Mill Development Corp. v. Colonial
Bank & Trust Co., Case No. 88 C 2584, 1988 WL 139346 (Dec. 22, 1988, N.D. Ill.)
(Lefkow, J.) (noting that there are a "large number of other cases in which dispositive
motions to dismiss have been filed but discovery is ordered to proceed" in denying
motion for stay); Sygenta Seeds, Inc. v. BTA Branded, Inc., Case No. 05 C 6673, 2007
WL 3256848 at *2 (Nov. 1, 2007, N.D. Ill.) (same); Sharif v. Int'l Development Corp.,
Case No. 02 C 5430, 2003 WL 21995166 at *1 (Aug. 21, 2003, N.D. Ill.) (same);
Niederhoffer Intermarket Fund LP v. Chicago Mercantile Exchange, Case No. 99 C 3223,
1999 WL 731773 (Aug. 31, 1999, N.D. Ill.) (same).  Moreover, although Daimler
neglects to inform the Court of the fact, Younessi filed an opposition to that motion,

other recourse to obtain the information necessary to redress the harms against him except through the detectives.

In an attempt to downplay its misconduct in hiring detectives to harass Younessi, Daimler states that the detectives were present at the Younessis' house on "the day of service," as if to imply that the detectives were there as process servers. See Mot. at 2. The complaint, however, was left with the receptionist at Younessi's place of business on January 7, 2008, not at his house. See Proof of Service, Ex. H. Indeed, the summons did not even list Younessi's home address. Id. Moreover, the detectives stayed outside Younessi's house for twenty-four hours a day for days *after* the complaint was served. See Younessi Emergency Motion for Protective Order, Ex. I; Dec. of K. Younessi, Ex. J; Younessi's Response to Daimler's First Set of Interrogatories at Resp. No. 1, Ex. K. The detectives never attempted to serve Younessi. Certainly the detectives were not attempting to serve Younessi's wife, who is not even a party to this lawsuit, when they followed her to her doctor's office.

Daimler also claims that the detectives watched Younessi's house from the street, and nothing more.[3] Such a statement is unsupported by the record. As an example, the detectives also followed Younessi's wife to a doctor's appointment, and had electronic equipment in their cars, presumably to surveil the Younessis. Younessi's Response to Daimler's First Set of

---

which is attached hereto as Ex. L. As detailed in that opposition, Daimler's motion to dismiss is without merit, as its only authority is an Illinois state case that was dismissed because of the plaintiff's failure to satisfy Illinois' fact-pleading standard. Younessi's claim is in federal court, which of course follows a notice-pleading rule. See, e.g., Erikson v. Pardus, 127 S. Ct. 2197, 2200 (2007); Beanstalk Group, Inc. v. AM General Corp., 283 F.3d 856, 863 (7th Cir. 2002).

[3] Up to this date, Daimler has refused to admit it hired the detectives, much less respond to discovery requests regarding them. Thus, through no fault of Younessi's, it is impossible to assess Daimler's factual claims. Note, however, that Daimler has not provided even a declaration supporting its claims. Daimler's failure to respond to several discovery

Interrogatories at Resp. No. 1, Ex. K. The detectives also told the Naperville police department that they would be present in the area on a "workers' compensation" matter, which was a bald-faced fabrication. See id. at 6.

These actions had no place in this litigation, and the District Court of Oregon agreed when it granted Younessi's motion for a protective order to prevent further harassment from Daimler's detectives. As that Court stated,

> I can't see any logical reason to have a private detective sitting outside of the defendant's home and thereafter actually following defendant's wife.

See Jan. 16, 2008 Tr. at 2, Ex A.

### C.    The Information Sought Is Not Protected By Any Privilege and Is Discoverable

Daimler argues that anything related to the private detectives is protected by the work-product privilege. As an initial point, the private detectives might have any number of responsive documents that are not even arguably work product.[4] Moreover, the work-product privilege extends only to "documents and tangible things" – not to whether a deposition occurs at all, although Daimler seeks to prevent depositions of its detective as well as the discovery of

---

requests, including queries regarding the detectives, is currently the subject of a motion to compel in the District Court of Oregon, where it has been pending for over two months.

[4]    It is difficult to identify with specificity what documents may be at issue, as Daimler has not produced any privilege log, despite Younessi's repeated requests for one and the filing of a motion to compel on the issue. See, e.g., Feb. 21 Corresp. fr. C. Krieger to S. Eggum, Ex. M; April 25, 2008 Email fr. C. Krieger to P. Berg, Ex. N; May 9, 2008 Email fr. P. Berg to C. Krieger, Ex. O; Mot. to Compel, Ex P. Over two months ago, Daimler finally agreed to produce a limited privilege log. See March 21, 2008 Corresp. fr. R. Hulshizer to S. Eggum, Ex. Q. Daimler has, however, refused to produce *any* privilege log showing documents related to its private investigators; Daimler instead claims that even identifying the existence of responsive documents would be protected by some type of privilege. To date, Younessi has still not received a privilege log of any kind from Daimler, much less one identifying documents related to its detectives. See May 9, 2008

documents. <u>See</u> Fed. R. Civ. Pro. 26(b)(3); <u>In re Bank One Securities Litigation</u>, 209 F.R.D. 418, 423 (N.D. Ill. 2002) (Denlow, M.J.) ("Factual information may not be withheld under the work-product doctrine, but must be produced through interrogatories, depositions or other discovery"); <u>Diemer v. Fraternal Order of Police</u>, 242 F.R.D. 452, 458 n.9 (N.D. Ill. 2007) ("there is no prohibition against discovery of the underlying facts of a dispute even if a deponent's response to a question was based on information provided by counsel").

Daimler itself recognizes that even the work-product privilege is not absolute. <u>See</u> Mot. at 4; <u>see</u> <u>also</u> Fed. R. Civ. P. 26(b)(3). First, the Court should assess whether the documents at issue even fall into the category of work product. To be considered "work product," the documents at issue must fairly be said to have been created in anticipation of litigation or for trial by a party or its representative. <u>See</u> <u>id.</u>; <u>Binks Mfg. Co. v. National Presto Industries, Inc.</u>, 709 F.2d 1109, 1118 (7th Cir. 1983). Because Daimler refuses to even identify responsive documents, it is impossible to assess its claim that the documents fall under the category of "work product" under the law.

Second, it is common knowledge that underlying facts are not protected by any privilege. <u>See</u> <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney"); <u>In re Bank One Securities Litigation</u>, 209 F.R.D. at 423 ("Factual information may not be withheld under the work-product doctrine"). Until this motion, Daimler has not only refused to admit it hired the detectives (instead insisting, contrary to all authority, that even the act of hiring the detectives is privileged information), but it also refused to identify the detectives and refused to produce even the most basic underlying factual

_____

Email fr. P. Berg to C. Krieger, Ex. O (stating that Daimler "hoped" to produce the

information. See Jan. 16, 2008 Tr. at 3, Ex. A. Underlying facts must exist; the entire stake-out cannot be veiled in a cloak of secrecy. Daimler has made no effort to, for example, produce responsive material with appropriate redactions for truly privileged information, nor has Daimler made any attempt to meet and confer with Younessi to discuss any other potential solutions.

**D.    Even If the Documents Were Work Product, They Are Discoverable**

Even accepting Daimler's unsupported claim that the documents at issue are "work product," they are discoverable for at least three reasons: they are directly at issue in this litigation, they are of critical importance to this case, and Younessi has no other method of obtaining the discovery sought.

**1.    Work Product Is Discoverable If It Is "Directly At Issue" in the Litigation**

Even for documents that can fairly be identified as "work product," neither opinion or ordinary work product is protected if it is "directly at issue" in the underlying litigation, as it is here. See Donovan v. Fitzsimmons, 90 F.R.D. 583, 588 (N.D. Ill. 1981) (no privilege applies if the information is "directly at issue" in the case at hand). Documents related to Daimler's motivation for hiring the detectives could, at most, be construed as opinion work product, which is discoverable "when mental impressions are *at issue* in a case and the need for the material is compelling." See Holmgren v. State Farm Mut. Auto Ins. Co., 976 F.2d 573, 577 (9th Cir. 1992) (emphasis in original); see also Donovan, 90 F.R.D. at 588. Here, Younessi has asserted a counterclaim for invasion of privacy based on the specific activities of the private detectives in surveilling him and his family. See Answer and Amended Counterclaim, Ex. B hereto. Clearly, the actions of the detectives and Daimler's motivations in hiring them are directly at issue, and Younessi's need for the requested material is compelling.

---

limited privilege log "in the next ten days").

**2.    Younessi Has Substantial Need for the Materials and No Other Way to Obtain Them**

Moreover, ordinary work product is discoverable where a party has substantial need for the materials to prepare its case, or cannot obtain the information through other means. See United States ex rel. Yannacopoulos v. General Dynamics, 231 F.R.D. 378, 382 (N.D. Ill. 2005).

Obviously, documents related both to the actions of the detectives and to Daimler's intent in hiring them are of paramount importance to Younessi's claim. There is no way for Younessi to obtain this information except from Daimler or its private detectives. Thus, Younessi has a substantial and compelling need for the information. Younessi has no mechanism to obtain the information through other means. See Simmons Foods, Inc. v. Willis, 196 F.R.D. 610, 612 (D. Kan. 2000) (ordering the production of work product documents on the basis of substantial need and inability to obtain the substantial equivalent by other means without undue hardship); Peterson v. Wallace Computer Services, Inc., 984 F. Supp. 821, 826-27 (D. Vt. 1997) (same); Roberts v. Americable Int'l. Inc., 883 F. Supp. 499, 507 (D.C. Cal. 1995) (same); Ehrlich v. Howe, 848 F. Supp. 482, 493-94 (S.D.N.Y. 1994) (same); Wheeling-Pittsburgh Steel Corp. v. Underwriters Laboratories, Inc., 81 F.R.D. 8, 10-11 (N.D. Ill. 1978) (same).

Here, Daimler's position leads to the absurd result that a party or its lawyers can hire agents to harass opposing parties without any redress, because the hiring is "privileged." Daimler made the detectives an issue in the litigation by hiring them to harass Younessi; tellingly, Daimler has never made any claim that the detectives were staking out Younessi in any legitimate furtherance of Daimler's lawsuit. Younessi filed a claim based on Daimler's harassment, and thus the actions of Daimler's detectives are directly at issue in the underlying lawsuit. Moreover, Younessi's need for the information is compelling and it is impossible for

him to get the information elsewhere.  As such, this Court should deny Daimler's motion to quash.

### E.    This Court Has Sole Jurisdiction Over the Subpoenas

Daimler claims that Younessi is attempting to "circumvent the authority" of the Oregon court.  See Mot. at 2.  This claim is untrue.  The subpoenas appropriately issued from this Court, and pursuant to Rule 45, litigation of the subpoenas should be conducted in this Court, which is the "issuing court" under that rule.[5]  See Fed. R. Civ. Pro. 45(c)(2)(B)(i).  Indeed, this Court has sole and exclusive jurisdiction over subpoenas that it issues.  See id. ("At any time...the serving party may move *the issuing court* for an order compelling production or inspection.") (emphasis added); In re Clients and Former Client of Baron & Budd, P.C., 478 F.3d 670, 671 (5th Cir. 2007); In re Sealed Case, 141 F.3d 337, 341 (D.C. Cir. 1998).

Daimler's request to this Court to delay ruling until the District of Oregon rules on a motion to compel currently pending against Daimler (not the detectives) is both inappropriate under Rule 45 and prejudicial to Younessi.  See Fed. R. Civ. P. 45(c)(3)(A).  In essence, Daimler asks this Court to cede its authority over subpoenas it issues to an out-of-district court.  Such a request is not allowed under Rule 45.  See id.; see also In re Sealed Case, 141 F.3d at 341 ("Subpoenas are process of the issuing court...and nothing in the Rules even hints that any other court may be given the power to quash or enforce them"); Wells v. GC Servs., 2007 U.S. Dist. LEXIS 29447, at *2-3 (N.D. Cal. 2007); Lieberman v. American Dietetic Assoc., 1995 WL

---

[5]    Ignoring appropriate jurisdiction is actually a pattern for Daimler, which repeatedly refuses to recognize the authority of *this* Court over subpoenas it issues.  For example, Daimler subpoenaed documents and depositions from Navistar, Inc., Younessi's employer, yet it has refused to litigate issues regarding those subpoenas in the Northern District of Illinois, which issued the subpoenas.  Instead, Daimler has attempted to drag non-party Navistar into court in Oregon by filing a motion to compel in that Court in violation of Rule 45.

250414, at *1 (N.D. Ill. 1995). Furthermore, the motion to compel, which is not against the subpoenaed detectives, has been pending in the District Court of Oregon for over two months. Younessi is entitled to discovery in a timely fashion so that he may defend himself against Daimler's baseless claims, and to prosecute the claims he has brought against Daimler.

### F.    Untimely Service of the Subpoenas Did Not Prejudice Daimler

Daimler is correct that, through administrative error, Younessi failed to serve Daimler prior to service of the third-party subpoenas. Younessi did, however, serve Daimler before the return date of the subpoenas and before any documents were produced. Daimler obviously was aware of the subpoenas and suffered no prejudice. Indeed, Daimler filed its motion to quash the next business day after service. Daimler does not even state, much less show, that the delay in service caused it any prejudice, and that is the appropriate standard.

The purpose of service under Rule 45 is to "to prevent inconvenience." See Price Waterhouse LLP v. First American Corp., 182 F.R.D. 56, 62 (S.D.N.Y. 1998). Untimely notice under Rule 45(b)(1) "does not automatically trigger quashing a subpoena without prejudice to the aggrieved party." See Zinter Handling, Inc. v. G.E., 04 CV 500, 2006 WL 3359317 at *2 (S.D.N.Y., Nov. 16, 2006); see also Biocore Med. Techs. Inc. v. Khosrowshahi, 181 F.R.D. 660, 667-668 (D.C. Kan. 1998) (refusing to quash subpoena where party failed to show prejudice from untimely notice); Seewald v. IIS Intelligent Info. Sys., 93 CV 4258, 1996 WL 612497 at *5 (E.D.N.Y., Oct. 16, 1996) (same). Here, Daimler has not alleged any prejudice from the delay in service, nor can it. No documents were produced prior to notice, and Daimler clearly had sufficient time to lodge its objections, as it has done so. Because Daimler was not prejudiced by the delay in service, the harsh remedy of quashing is unwarranted. See Biocore, 181 F.R.D. at 667 (holding that "the purpose behind the notice requirement is to provide opposing counsel an

opportunity to object to the subpoena" and that "[w]hen opposing counsel have notice and sufficient time to object, they are not prejudiced by the violation").

Furthermore, Daimler never attempted to meet and confer with Younessi on this issue, or on the scope of the subpoenas. See disc. supra at 5. The meet and confer rules exist to prevent the waste of this Court's time and resources. Daimler's failure to comply with Federal Rules of Civil Procedure 26(c) would alone merit denial of Daimler's motion by this Court. See id. Had Daimler attempted to meet and confer with Younessi, it is entirely possible that it would not have had to file its motion at all. Younessi certainly would have provided Daimler with additional time, or if necessary, Younessi could have, and would have, cured his error by re-serving the subpoenas on the third-parties.

WHEREFORE, Younessi respectfully requests that this Court deny Daimler's Motion to Quash Third-Party Subpoenas or, in the Alternative, For a Protective Order.


Dated:  May 29, 2008                              Respectfully submitted,


                                                  /s/Cameron R. Krieger
                                                  One of the Attorneys for Ramin Younessi

Mark S. Mester
   mark.mester@lw.com
Robin R. Hulshizer
   robin.hulshizer@lw.com
Cameron R. Krieger
   cameron.krieger@lw.com
LATHAM & WATKINS LLP
233 South Wacker Drive
Suite 5800 Sears Tower
Chicago, Illinois  60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

## CERTIFICATE OF SERVICE

I, Cameron R. Krieger, hereby certify that I electronically filed the foregoing

YOUNESSI'S RESPONSE TO DAIMLER'S MOTION TO QUASH THIRD-PARTY

SUBPOENAS OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER with the Clerk of

the Court using the CM/ECF system, which sent notification of such filing to the following:

>Martin J. Bishop
>mbishop@foley.com
>
>Daniel M. Cordis
>dcordis@foley.com

I further certify that I caused copies of the foregoing to be served by electronic mail and Federal

Express upon:

>Susan K. Eggum
>Paul A. C. Berg
>COSGRAVE VERGEER KESTER LLP
>805 S.W. Broadway, 8th Floor
>Portland, Oregon 97205

on this 29th day of May, 2008.

>/s/Cameron R. Krieger
>Cameron R. Krieger

**Exhibits to Younessi's Response to Daimler's Motion to Quash Third-Party Subpoenas or, in the Alternative, for a Protective Order**

A.    January 16, 2008 Transcript of Proceedings

B.    Answer, Affirmative Defenses and Amended Counterclaim

C.    Subpoena for Fed. R. Civ. P. 30(B)(6) Deposition of John D. Rea Detective Agency, Subpoena for Production of Documents and Deposition of Alberto Gerena, Subpoena for Production of Documents and Deposition of Luigi Castillo

D.    Freightliner's Illinois Federal Complaint against Ramin Younessi in the United States District Court for the Northern District of Illinois

E.    Notice of Dismissal filed in the United States District Court for the Northern District of Illinois

F.    Freightliner's Illinois State Complaint against Ramin Younessi in the Circuit Court of DuPage County, Illinois

G.    Settlement Agreement between Freightliner and Ramin Younessi and International Truck & Engine Corporation

H.    Proof of Service

I.    Emergency Motion for a Protective Order and Memorandum in Support Thereof

J.    Declaration of Karla Younessi

K.    Younessi's Objections and Responses to Daimler's First Set of Interrogatories Regarding Younessi's Race Counterclaim

L.    Response to Plaintiff's Rule 12(B)(6) Motion to Dismiss Count V of Younessi's Amended Counterclaim

M.    February 21, 2008 correspondence from C. Krieger to S. Eggum

N.    April 25, 2008 e-mail from C. Krieger to P. Berg

O.    May 9, 2008 e-mail from P. Berg to C. Krieger

P.    Motion to Compel Production of Documents and Memorandum in Support Thereof

Q.    March 21, 2008 correspondence from R. Hulshizer to S. Eggum

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FREIGHTLINER LLC, a Delaware     )
limited liability company,       )
                                 )
            Plaintiff,           )    CV-08-31-HA
                                 )
      vs.                        )    January 16, 2008
                                 )
RAMIN YOUNESSI, an Illinois      )    Portland, Oregon
resident,                        )
                                 )
            Defendant.           )


TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE ANCER L. HAGGERTY

UNITED STATES DISTRICT COURT CHIEF JUDGE

APPEARANCES

FOR THE PLAINTIFF:     Susan K. Eggum
                       Paul A. C. Berg
                       Attorneys at Law


FOR THE DEFENDANT:     Mark S. Mester
                       Bruce C. Hamlin
                       Cameron R. Krieger
                       Attorneys at Law




COURT REPORTER:        Dennis W. Apodaca, RPR
                       1000 S.W. Third Ave., Room 301
                       Portland, OR  97204
                       (503) 326-8182

1          (January 16, 2008)

2                    P R O C E E D I N G S

3          (Open court:)

4          THE COURT:  Okay.  We have a couple of matters.

5    First of all, there is the motion for reassignment.

6    Typically the judges of this court look at whether a judge

7    has been away from their prior firm for a period of two to

8    three years, and thereafter there is generally an

9    acceptance of the fact that the judge could hear matters

10   even with their old partners, unless there was a specific

11   conflict that was such that they should not take the case.

12   In this case, there is really nothing that I see that

13   would preclude Judge Stewart from remaining on the case.

14          However, I'll treat the motion as a statement by

15   defendants that they would not consent to Judge Stewart to

16   be the trial judge, and I'll therefore transfer the case

17   to myself, since I'm the back-up judge and that's why I'm

18   doing the TRO.  So the case will be reassigned to me, and

19   I will continue with it.

20          We also have a motion for protective order.  In

21   this type of case I can't see any logical reason to have a

22   private detective sitting outside of the defendant's home

23   and thereafter actually following defendant's wife.  She

24   is not a party to this, and even if she were, I wouldn't

25   see any basis to follow someone, as represented in the

1    pleadings.

2            Ms. Eggum, what the is purpose of this private

3    detective?

4            MS. EGGUM:  Your Honor, first of all, let me say

5    that it is my client's position that whether the

6    investigator has been retained is an OEC 503 privileged

7    communication; and therefore, I'm not at liberty to

8    disclose whether such an investigator has been retained.

9    I might point out to the Court that there isn't any

10   submission before the Court indicating that any

11   surveillance took place after what Mrs. Younessi describes

12   as several days.  I do think it is a moot point,

13   Your Honor.

14           THE COURT:  Well, let's see.  Mr. Mester, do you

15   think it is a moot point?

16           MR. MESTER:  Your Honor, it certainly isn't for

17   our client.  It was a matter of some concern to them to

18   have a black SUV parked outside their home with tinted

19   windows day and night and to have that car follow them.

20   Perhaps it is the case that it has stopped.  We don't know

21   for sure.  We can't know for sure.  But we would like some

22   assurance it is not going to happen again.

23           THE COURT:  I'll grant the protective order.

24           MR. MESTER:  Thank you, Your Honor.

25           THE COURT:  All right.  That takes us to the

1    question as to whether the Court should grant a temporary

2    restraining order in this case.  As I understand it, there

3    has been a prior lawsuit, one that resulted in a

4    settlement, and the question becomes whether or not this

5    lawsuit is based on the same facts that led to the lawsuit

6    and settlement in the state court of Illinois.

7         I guess the question is:  How is this lawsuit

8    different?  Ms. Eggum.

9         MS. EGGUM:  Thank you, Your Honor.  The first

10   suit was, if I may use the term, a prophylactic action.

11   It was an action for the sole purpose of barring any

12   potential disclosure of trade secrets or confidences or

13   information to International, the defendant's current

14   employer.  That action was brought under the Illinois

15   Trade Secrets Statute.  The allegation in that complaint,

16   both when it was initially filed in federal court as well

17   as in DuPage County, is that there would be an inevitable

18   disclosure, which is a doctrine recognized under Illinois

19   law with information -- if you permit me -- in his head in

20   the course of performing his duties for this competitor.

21        That was the sole legal claim in that case.  As

22   a result of that legal claim, there was a pending claim;

23   therefore, in the event of an inevitable disclosure, there

24   would be a breach of his confidentiality contract as well

25   with Freightliner.  That action resulted in a sworn

1    statement from Mr. Younessi that, up until the date of

2    April 24, 2007, he had not made any disclosures.  That's

3    the full extent of his sworn statement.

4              In return for that sworn statement, as well as

5    the covenant that he would be taken out of critical,

6    strategic business-making decisions for International, a

7    very limited settlement agreement was reached whereby he

8    would be allowed to take a different position with

9    International for a period of six months, allowing him to

10   maintain his covenant under the confidentiality contract

11   through March 12, 2009.  The settlement agreement further

12   requires him to maintain trade secrets in perpetuity.

13             In paragraph 6 of the settlement agreement, it

14   recites the trade secret claim and states that all claims

15   and any act of disclosure to this competitor,

16   International, taking place before April 24, 2007 are

17   barred.  Paragraph 6 of that agreement further states that

18   it is not a general release; that the only claims being

19   released are those specifically described there, which,

20   again, is any act of disclosure to the competitor prior to

21   April 24, 2007.

22             Now, in this case that is pending, Your Honor,

23   we do not raise any misappropriation disclosure or use

24   claim under any Trade Secret Statute.  What we have

25   brought in this case, Your Honor, is a conversion case,

1    tort of conversion under Oregon law, and breach of duty of

2    loyalty.  We have additionally brought a different claim

3    for the confidentiality contract than was raised in

4    Illinois.  The confidentiality contract claim we raise

5    today is that he remains in possession, personal

6    possession, of the proprietary information, not that he

7    has disclosed it; not that he is using it.

8            His confidentiality contract in paragraph 1

9    specifically requires him to immediately deliver, I'm

10   quoting, "to Freightliner any proprietary information in

11   his possession."  We know that didn't happen.  We also

12   know that he actually removed from the premises, at his

13   departure, proprietary information.  That's the response.

14           THE COURT:  All right.  One other aspect of this

15   is, as I recall, it has been a number of months since

16   Freightliner knew of this alleged basis to pursue the

17   defendant.  Why did you wait for months?

18           MS. EGGUM:  Thank you, Your Honor.  It took

19   Freightliner months to locate suitable replacement for the

20   very high-level position of responsibilities of

21   Mr. Younessi.  The replacement is Hannes Moeller.  He

22   joined August 6th, 2007.  To my personal chagrin, if not

23   to my client's chagrin, he apparently struggled for more

24   than a month trying to get up to speed.  He finally went

25   to his boss, Elmar Boeckenhoff, and said, "I cannot locate

Page 7

1   any current, relevant test engineering data or other

2   material I would need to get a head start."

3          That then triggered inquiries from

4   Mr. Boeckenhoff as to the contents of all of his cabinets

5   in his office, Mr. Younessi's former office.  Those

6   cabinets were found empty but for several hanging files

7   containing outdated and/or irrelevant material.

8          That then triggered a series of interviews of

9   Mr. Younessi's secretary, Bobbi Felix.  That then

10  triggered the retainer of a former FBI computer expert who

11  then took forensic images of a number of hard drives and

12  undertook a very extensive and detailed review of what

13  could be located both with respect to servers and the

14  Freightliner laptop that he left.

15         Other internal investigative actions would

16  take -- a long story made short, Your Honor, it took a

17  long time to get here because, frankly, the kind of claims

18  we're raising here are career ending for Mr. Younessi, and

19  they merit punitive damages.

20         So Freightliner did not delay.  In the Lydo

21  case, I'll point out to you, under certain circumstances

22  the Court has to consider the action timely even after

23  months or years have passed.  We submit to the Court that

24  this is ripe for a TRO at this stage.

25         THE COURT:  Mr. Mester, those two areas.

1            MR. MESTER:  Thank you, Your Honor.  On the

2       first issue, Your Honor, I'm not sure what a prophylactic

3       action is.  Our understanding of the law was that

4       Freightliner was obligated to bring forward in the initial

5       action -- by the way, there have been three.  There was

6       the initial filed in federal court in Chicago and the

7       state court action, where the settlement was entered into,

8       to bring all the claims it had at the time of the first

9       lawsuit.

10           Respectfully, I think the complaint they did

11      file was much broader than counsel has characterized it.

12      In any event, it resulted in a settlement agreement

13      subject to the principles of merger and bar, which require

14      them to bring all their claims.  That settlement

15      agreement, which is Exhibit 4, to the opposition we filed

16      contains two important components and divides the time

17      period into two pieces.

18           The first piece is the date up to the settlement

19      agreement for which Mr. Younessi has been released, and

20      the second piece, which I think has been glossed over a

21      bit by counsel, is that which governs the relationship

22      going forward.  It imposes restrictions on Mr. Younessi.

23      It imposes restrictions on his new employer,

24      International, and there is no suggestion here that anyone

25      has not abided by those obligations.

Page 9

1            On the other hand, everything that has been said

2    in the complaint that Freightliner has filed in this

3    Court, now the third court that has heard these

4    allegations, I believe, could have been and properly

5    should have been construed and treated as a motion for

6    breach of the settlement agreement, rather to the extent

7    that's what they think really happened.

8            For whatever reason Freightliner didn't want to

9    come back to Illinois and raise these issues with the

10   judge who presided over the matter in the case where the

11   settlement agreement was entered into, and I don't know,

12   only they can answer why that is.

13           I think that's what should have happened, and

14   obviously it didn't.  The confidentiality agreement,

15   interestingly enough that counsel referred to, is

16   specifically referred to in the settlement agreement that

17   was entered in the Illinois action, and the agreement at

18   page 2, paragraph 3A specifies that confidentiality

19   agreement, pursuant to the settlement agreement, will stay

20   in effect until March 12, 2009.

21           So this is the document that was supposed to

22   govern everybody going forward.  If counsel had a problem

23   or if Freightliner had a problem, I don't understand why

24   someone didn't pick up the phone and call me or my

25   colleague, Ms. Krieger, and say "we have got a concern; we

1    have got an issue.  No one ever called us or did anything.

2             I think that dovetails into the second issue,

3    which is laches.  That all occurred last spring, the

4    lawsuit and the resignation.  Counsel just explained that

5    Mr. Younessi's replacement showed up in August.  Now, I'll

6    give her the benefit of the doubt and assume he had

7    difficulty getting up to speed.  That still gives us

8    September.  Again, no one called.  No one indicated

9    anything to us.  There was never a suggestion of a

10   problem, never an indication that there would be filed

11   another lawsuit, let alone file now what is emergency

12   equitable relief.

13           Respectfully, I think too much time has passed.

14   I don't think this is an emergency.  I think if

15   Freightliner was concerned, they should have gone back to

16   Illinois where they filed that second action where the

17   case was settled.

18           MS. EGGUM:  Your Honor, may I be heard?

19           THE COURT:  Yes.

20           MS. EGGUM:  First of all, I'm afraid I'm going

21   to mispronounce his name.  Mr. Mester suggested that this

22   is the third court that has heard these issues.  No court

23   yet has heard any of these issues.  You will be the first

24   Court to delve into the merits of Mr. Younessi's conduct

25   that we learned beginning in September of 2007.

1        No. 2, the theory that has been suggested to you

2    about laches is a theory that requires a demonstration of

3    prejudice, and the Court will know that absolutely no

4    evidence is before, Your Honor, of any type or kind to

5    oppose this motion for TRO.

6        The only thing the Court has is a legal argument

7    that we shouldn't be allowed to proceed.  The settlement

8    agreement on its face says:  This release is not general

9    in scope, and Freightliner maintains and preserves any

10   claim not described herein.

11       The Illinois case was about the Illinois Trade

12   Secrets Statute.  The settlement was about not suing him

13   for disclosures before April of '07.  This case now before

14   you is a theft and conversion and loyalty action.

15       So in the absence of even a suggestion of

16   prejudice, which he hasn't even suggested to you, that

17   theory is bogus.  So with all due respect, Your Honor, we

18   ask that you enter the TRO, allow us to take discovery in

19   the manner that we have described in our first submissions

20   of January 7th and schedule this for a preliminary

21   injunction hearing in ten days.

22       MR. MESTER:  I'll be very brief, Your Honor.  In

23   terms of the evidence, as we indicated in our opposition,

24   Mr. Younessi was, and I use the word loosely, served by

25   leaving a copy of the complaint at the corporate

1    headquarters.  He didn't learn of it until Wednesday or

2    Thursday.  I learned of it at that time, too.  I happened

3    to be out of the country on vacation.  That's of no import

4    at this moment, but the point is he left for India for a

5    pre-planned business trip.  Assuming he didn't have an

6    opportunity to get any affidavits, I can assure the Court

7    if it became necessary, we could and would dispute much of

8    what has been alleged.  But we haven't been -- unlike

9    Freightliner's counsel, we haven't been working on this

10   for several months, and that's the explanation for why it

11   is.

12           The only other point I would make, the same

13   settlement agreement that counsel referred to also

14   provides in paragraph 9, "The parties have had the

15   opportunity to investigate and determine all facts

16   material to the decision to enter into this agreement."  I

17   think that speaks a lot to what should have and did happen

18   in the prior action.

19           THE COURT:  Well, the only question I have with

20   respect to that, if you enter into a settlement agreement

21   in April of '07 and these matters are discovered in August

22   of 07, I guess your position is that Freightliner should

23   have taken steps to determine the facts before entering

24   the settlement agreement?

25           MR. MESTER:  If not that, Your Honor, they

1    should have come back to the Court in Illinois and asked

2    for an opportunity to re-open the issue.  We have a court

3    there, and we have a case.  And we have a settlement

4    agreement.  Why we are in the third court is still not at

5    all clear to me.

6              MS. EGGUM:  I would be happy to respond to that,

7    Your Honor, if you would like me to.

8              THE COURT:  All right.

9              MS. EGGUM:  The Illinois action was strictly

10   limited to disclosing of the competitive trade secrets.

11   In the course of negotiations that occurred immediately

12   with International's lawyers, this same team again today,

13   and also representing Mr. Younessi, we became satisfied

14   with Mr. Younessi's signature on a sworn statement, which

15   I believe you have seen, that says, "I have not made any

16   disclosures as of the date of my signed statement."

17             The representation that we made every -- had

18   every opportunity -- the representation is opportunity to

19   investigate was the opportunity to investigate whether, in

20   fact, those disclosures to International took place.  In

21   that suit, Your Honor, I must emphasize, it was not about

22   burning CDs, shredding material, making hard copies and

23   removing material from the premises prior to departure.

24   We had no knowledge nor any inquiry notice of that kind of

25   conduct when that Illinois lawsuit was filed, and it would

Page 14

1    have gone a very different direction had we known that

2    that had taken place.

3              MR. MESTER:  Your Honor, I have one point.

4              THE COURT:  All right.

5              MR. MESTER:  I just call your attention,

6    Your Honor, to Exhibit 3 in our memorandum.  It is the

7    complaint filed in Illinois.  With all due respect to

8    counsel, I understand she was not counsel of record for

9    Freightliner.  It was not just a trade secrets case.

10   Count 2, it is anticipated, breach of contract,

11   confidentiality and proprietary rights agreement, the same

12   agreement referenced in the settlement agreement and that

13   they are now basing their claim on.  It is not just a

14   trade secrets claim.

15             THE COURT:  Okay.  Well, obviously the Court has

16   some concerns as to whether or not this lawsuit is

17   associated with the lawsuit that was settled in Illinois.

18   I am not certain I get the full distinctions Ms. Eggum is

19   making, but in looking at what's alleged and in looking at

20   what's in the settlement agreement, I do have doubts.  I

21   have doubts to such a degree that the Court is not going

22   to grant the temporary restraining order.

23             I also have some questions as to the delay that

24   I see.  It may be true that Mr. Younessi's replacement

25   didn't come until August of '07, but he has been gone for

1    almost a year.  You would have thought that someone would

2    have walked into his office and seen what was there or

3    what wasn't there prior to entering into that settlement

4    agreement.  I really question plaintiff's efforts in that

5    respect.

6             I don't know what's going to become of the

7    settlement agreement, how it affects this case, but it is

8    certainly there to such a degree that I think it would be

9    incorrect to grant the temporary restraining order at this

10   time.

11            The litigation will proceed.  As I indicated,

12   I'll retain it.  Ms. Eggum, you have asked for expedited

13   discovery.  Is there any need for such in light of the

14   fact that the Court is not going to grant the temporary

15   restraining order?

16            MS. EGGUM:  Yes, Your Honor.  I think the

17   evidence in the submission of January 7 are detailed and

18   compelling because of the possession of this material,

19   both digitally and hard copy.  It is imperative that we

20   pursue discovery as of that dominion and control.  So we

21   do ask that expedited discovery be allowed so we can

22   receive the documents that we requested in the request for

23   production now served on Mr. Younessi with the complaint;

24   that we be allowed to take his deposition; and that we be

25   allowed the 30(b)(6) notice of deposition of International

1    as well as Mr. Baughman, as well as Mr. Kapur's testimony.

2    We are seeking the testimony from D.J.K. Homes, who is in

3    our initial submission.  We ask that the expedited

4    discovery go forward.  I don't see a need to fly to

5    Chicago tomorrow, but I would request the Court to allow

6    the discovery I just described and set forth in our

7    January 7th submissions to be concluded within the next 14

8    days.

9              THE COURT:  Mr. Mester.

10             MR. MESTER:  Judge, respectfully, that's an

11   awful lot of depositions in a very short period of time.

12   I can't imagine the reason why they all need to be

13   completed in that time period.  It is probably not a

14   surprise to counsel that we are going to be filing a

15   motion to dismiss, based upon the prior action and bar.  I

16   am happy to talk to counsel.  Seven or eight depositions

17   in two weeks is not feasible; it is not necessary.  I

18   don't know of any compelling need we need to do that other

19   than to create an inconvenience for Mr. Younessi and his

20   employer, which seems to be part of the goal here.

21             I will certainly cooperate with counsel and

22   schedule depositions and take things as expeditiously.

23   Why we have to do all the work in the case in two weeks is

24   beyond me.

25             THE COURT:  Well, I guess the Court doesn't see

Page 17

1    the need for such rapid discovery as well.  I'll allow you

2    to have the discovery as you have outlined, but I will

3    give the parties 45 days to mutually set dates for the

4    depositions as outlined by Ms. Eggum.  I would assume you

5    want the production of those documents before the taking

6    of the depositions, so I'll give defendants -- what

7    quantity of documents are we talking about?

8             MS. EGGUM:  Your Honor, we sent out with the

9    summons and complaint a custodian of records subpoena,

10   which detailed the material.  It is not necessarily

11   extensive material, but there is very specific

12   simple-to-understand specifications for what we are

13   seeking that is in the custodial records subpoena.  They

14   have that.

15            I would ask the Court require those records,

16   along with Mr. Younessi's records described in the request

17   for production, to be produced within the next 20, 21

18   business days and the depositions we described be

19   completed within 45 days.

20            MR. MESTER:  Not a problem at all on the

21   documents, Your Honor.

22            THE COURT:  All right.  That will be the order

23   of the Court.  Anything further at this time?

24            MR. MESTER:  Nothing, Your Honor.

25            THE COURT:  All right.  That will be the order

1    of the Court.

2             (Recess.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                                    --oOo--

3

4          I certify, by signing below, that the foregoing

5     is a correct transcript of the record of proceedings in

6     the above-entitled cause.  A transcript without an

7     original signature is not certified.

8

9     _____          _____

      DENNIS W. APODACA, RPR                          DATE
10    Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**A**

abided 8:25
above-entitled 19:6
absence 11:15
absolutely 11:3
acceptance 2:9
act 5:15,20
action 4:10,11,14
    4:25 7:22 8:3,5,7
    9:17 10:16 11:14
    12:18 13:9 16:15
actions 7:15
additionally 6:2
affidavits 12:6
afraid 10:20
agreement 5:7,11
    5:13,17 8:12,15
    8:19 9:6,11,14,16
    9:17,19,19 11:8
    12:13,16,20,24
    13:4 14:11,12,12
    14:20 15:4,7
allegation 4:15
allegations 9:4
alleged 6:16 12:8
    14:19
allow 11:18 16:5
    17:1
allowed 5:8 11:7
    15:21,24,25
allowing 5:9
ANCER 1:11
and/or 7:7
answer 9:12
anticipated 14:10
Apodaca 1:22 19:9
apparently 6:23
APPEARANCES
    1:13
April 5:2,16,21
    11:13 12:21
areas 7:25
argument 11:6
asked 13:1 15:12
aspect 6:14
associated 14:17
assume 10:6 17:4
Assuming 12:5
assurance 3:22

assure 12:6
attention 14:5
Attorneys 1:15,18
August 6:22 10:5
    12:21 14:25
Ave 1:22
awful 16:11

**B**

back 9:9 10:15 13:1
back-up 2:17
bar 8:13 16:15
barred 5:17
barring 4:11
based 4:5 16:15
basing 14:13
basis 2:25 6:16
Baughman 16:1
beginning 10:25
believe 9:4 13:15
benefit 10:6
Berg 1:14
beyond 16:24
bit 8:21
black 3:18
Bobbi 7:9
Boeckenhoff 6:25
    7:4
bogus 11:17
boss 6:25
breach 4:24 6:1 9:6
    14:10
brief 11:22
bring 8:4,8,14
broader 8:11
brought 4:14 5:25
    6:2
Bruce 1:17
burning 13:22
business 12:5 17:18
business-making
    5:6

**C**

C 1:14,17 2:2
cabinets 7:4,6
call 9:24 14:5
called 10:1,8
Cameron 1:17
car 3:19

career 7:18
case 2:11,12,13,16
    2:18,21 3:20 4:2
    4:21 5:22,25,25
    7:21 9:10 10:17
    11:11,13 13:3
    14:9 15:7 16:23
cause 19:6
CDs 13:22
certain 7:21 14:18
certainly 3:16 15:8
    16:21
certified 19:7
certify 19:4
chagrin 6:22,23
characterized 8:11
Chicago 8:6 16:5
CHIEF 1:12
circumstances 7:21
claim 4:21,22,22
    5:14,24 6:2,4
    11:10 14:13,14
claims 5:14,18 7:17
    8:8,14
clear 13:5
client 3:17
client's 3:5 6:23
colleague 9:25
come 9:9 13:1
    14:25
communication 3:7
company 1:3
compelling 15:18
    16:18
competitive 13:10
competitor 4:20
    5:15,20
complaint 4:15
    8:10 9:2 11:25
    14:7 15:23 17:9
completed 16:13
    17:19
components 8:16
computer 7:10
concern 3:17 9:25
concerned 10:15
concerns 14:16
concluded 16:7
conduct 10:24

13:25
confidences 4:12
confidentiality
    4:24 5:10 6:3,4,8
    9:14,18 14:11
conflict 2:11
consent 2:15
consider 7:22
construed 9:5
containing 7:7
contains 8:16
contents 7:4
continue 2:19
contract 4:24 5:10
    6:3,4,8 14:10
control 15:20
conversion 5:25 6:1
    11:14
cooperate 16:21
copies 13:22
copy 11:25 15:19
corporate 11:25
correct 19:5
counsel 8:11,21
    9:15,22 10:4 12:9
    12:13 14:8,8
    16:14,16,21
Count 14:10
country 12:3
County 4:17
couple 2:4
course 4:20 13:11
court 1:1,12,22 2:3
    2:4,6 3:9,10,14,23
    3:25 4:1,6,16 6:14
    7:22,23,25 8:6,7
    9:3,3 10:19,22,22
    10:24 11:3,6 12:6
    12:19 13:1,2,4,8
    14:4,15,15,21
    15:14 16:5,9,25
    16:25 17:15,22,23
    17:25 18:1 19:10
covenant 5:5,10
create 16:19
critical 5:5
current 4:13 7:1
custodial 17:13
custodian 17:9

**CV-08-31-HA** 1:4

**D**

D 2:2
damages 7:19
data 7:1
date 5:1 8:18 13:16
    19:9
dates 17:3
day 3:19
days 3:12 11:21
    16:8 17:3,18,19
decision 12:16
decisions 5:6
defendant 1:8,16
    6:17
defendants 2:15
    17:6
defendant's 2:22
    2:23 4:13
degree 14:21 15:8
Delaware 1:3
delay 7:20 14:23
deliver 6:9
delve 10:24
demonstration
    11:2
Dennis 1:22 19:9
departure 6:13
    13:23
deposition 15:24,25
depositions 16:11
    16:16,22 17:4,6
    17:18
described 5:19
    11:10,19 16:6
    17:16,18
describes 3:11
detailed 7:12 15:17
    17:10
detective 2:22 3:3
determine 12:15,23
different 4:8 5:8
    6:2 14:1
difficulty 10:7
digitally 15:19
direction 14:1
disclose 3:8
disclosed 6:7

**disclosing** 13:10
**disclosure** 4:12,18
    4:23 5:15,20,23
**disclosures** 5:2
    11:13 13:16,20
**discovered** 12:21
**discovery** 11:18
    15:13,20,21 16:4
    16:6 17:1,2
**dismiss** 16:15
**dispute** 12:7
**distinctions** 14:18
**DISTRICT** 1:1,2
    1:12
**divides** 8:16
**doctrine** 4:18
**document** 9:21
**documents** 15:22
    17:5,7,21
**doing** 2:18
**dominion** 15:20
**doubt** 10:6
**doubts** 14:20,21
**dovetails** 10:2
**drives** 7:11
**due** 11:17 14:7
**DuPage** 4:17
**duties** 4:20
**duty** 6:1
**D.J.K** 16:2

**E**
**E** 2:2,2
**effect** 9:20
**efforts** 15:4
**Eggum** 1:14 3:2,4
    4:8,9 6:18 10:18
    10:20 13:6,9
    14:18 15:12,16
    17:4,8
**eight** 16:16
**Elmar** 6:25
**emergency** 10:11
    10:14
**emphasize** 13:21
**employer** 4:14 8:23
    16:20
**empty** 7:6
**engineering** 7:1

**enter** 11:18 12:16
    12:20
**entered** 8:7 9:11,17
**entering** 12:23 15:3
**equitable** 10:12
**event** 4:23 8:12
**everybody** 9:22
**evidence** 11:4,23
    15:17
**Exhibit** 8:15 14:6
**expedited** 15:12,21
    16:3
**expeditiously** 16:22
**expert** 7:10
**explained** 10:4
**explanation** 12:10
**extensive** 7:12
    17:11
**extent** 5:3 9:6

**F**
**face** 11:8
**fact** 2:9 13:20
    15:14
**facts** 4:5 12:15,23
**FBI** 7:10
**feasible** 16:17
**federal** 4:16 8:6
**Felix** 7:9
**file** 8:11 10:11
**filed** 4:16 8:6,15
    9:2 10:10,16
    13:25 14:7
**files** 7:6
**filing** 16:14
**finally** 6:24
**firm** 2:7
**first** 2:5 3:4 4:9 8:2
    8:8,18 10:20,23
    11:19
**fly** 16:4
**follow** 2:25 3:19
**following** 2:23
**foregoing** 19:4
**forensic** 7:11
**former** 7:5,10
**forth** 16:6
**forward** 8:4,22
    9:22 16:4

**found** 7:6
**frankly** 7:17
**Freightliner** 1:3
    4:25 6:10,16,19
    7:14,20 8:4 9:2,8
    9:23 10:15 11:9
    12:22 14:9
**Freightliner's** 12:9
**full** 5:3 14:18
**further** 5:11,17
    17:23

**G**
**G** 2:2
**general** 5:18 11:8
**generally** 2:8
**getting** 10:7
**give** 10:6 17:3,6
**gives** 10:7
**glossed** 8:20
**go** 16:4
**goal** 16:20
**going** 3:22 8:22
    9:22 10:20 14:21
    15:6,14 16:14
**govern** 9:22
**governs** 8:21
**grant** 3:23 4:1
    14:22 15:9,14
**guess** 4:7 12:22
    16:25

**H**
**HAGGERTY** 1:11
**Hamlin** 1:17
**hand** 9:1
**hanging** 7:6
**Hannes** 6:21
**happen** 3:22 6:11
    12:17
**happened** 9:7,13
    12:2
**happy** 13:6 16:16
**hard** 7:11 13:22
    15:19
**head** 4:19 7:2
**headquarters** 12:1
**hear** 2:9
**heard** 9:3 10:18,22
    10:23

**hearing** 11:21
**high-level** 6:20
**home** 2:22 3:18
**Homes** 16:2
**Honor** 3:4,13,16,24
    4:9 5:22,25 6:18
    7:16 8:1,2 10:18
    11:4,17,22 12:25
    13:7,21 14:3,6
    15:16 17:8,21,24
**HONORABLE**
    1:11

**I**
**Illinois** 1:6 4:6,14
    4:18 6:4 9:9,17
    10:16 11:11,11
    13:1,9,25 14:7,17
**images** 7:11
**imagine** 16:12
**immediately** 6:9
    13:11
**imperative** 15:19
**import** 12:3
**important** 8:16
**imposes** 8:22,23
**inconvenience**
    16:19
**incorrect** 15:9
**India** 12:4
**indicated** 10:8
    11:23 15:11
**indicating** 3:10
**indication** 10:10
**inevitable** 4:17,23
**information** 4:13
    4:19 6:6,10,13
**initial** 8:4,6 16:3
**initially** 4:16
**injunction** 11:21
**inquiries** 7:3
**inquiry** 13:24
**interestingly** 9:15
**internal** 7:15
**International** 4:13
    5:6,9,16 8:24
    13:20 15:25
**International's**
    13:12

**interviews** 7:8
**investigate** 12:15
    13:19,19
**investigative** 7:15
**investigator** 3:6,8
**irrelevant** 7:7
**issue** 8:2 10:1,2
    13:2
**issues** 9:9 10:22,23

**J**
**January** 1:5 2:1
    11:20 15:17 16:7
**joined** 6:22
**judge** 1:12 2:6,9,13
    2:15,16,17 9:10
    16:10
**judges** 2:6

**K**
**K** 1:14
**Kapur's** 16:1
**kind** 7:17 11:4
    13:24
**knew** 6:16
**know** 3:20,21 6:11
    6:12 9:11 11:3
    15:6 16:18
**knowledge** 13:24
**known** 14:1
**Krieger** 1:17 9:25

**L**
**L** 1:11
**laches** 10:3 11:2
**laptop** 7:14
**law** 1:15,18 4:19
    6:1 8:3
**lawsuit** 4:3,5,5,7
    8:9 10:4,11 13:25
    14:16,17
**lawyers** 13:12
**learn** 12:1
**learned** 10:25 12:2
**leaving** 11:25
**led** 4:5
**left** 7:14 12:4
**legal** 4:21,22 11:6
**let's** 3:14
**liability** 1:3

**liberty** 3:7
**light** 15:13
**limited** 1:3 5:7
  13:10
**litigation** 15:11
**LLC** 1:3
**locate** 6:19,25
**located** 7:13
**logical** 2:21
**long** 7:16,17
**look** 2:6
**looking** 14:19,19
**loosely** 11:24
**lot** 12:17 16:11
**loyalty** 6:2 11:14
**Lydo** 7:20

**M**
**maintain** 5:10,12
**maintains** 11:9
**making** 13:22
  14:19
**manner** 11:19
**March** 5:11 9:20
**Mark** 1:16
**material** 7:2,7
  12:16 13:22,23
  15:18 17:10,11
**matter** 3:17 9:10
**matters** 2:4,9 12:21
**memorandum** 14:6
**merger** 8:13
**merit** 7:19
**merits** 10:24
**Mester** 1:16 3:14
  3:16,24 7:25 8:1
  10:21 11:22 12:25
  14:3,5 16:9,10
  17:20,24
**misappropriation**
  5:23
**mispronounce**
  10:21
**Moeller** 6:21
**moment** 12:4
**month** 6:24
**months** 5:9 6:15,17
  6:19 7:23 12:10
**moot** 3:12,15

**motion** 2:5,14,20
  9:5 11:5 16:15
**mutually** 17:3

**N**
**N** 2:2
**name** 10:21
**necessarily** 17:10
**necessary** 12:7
  16:17
**need** 7:2 15:13 16:4
  16:12,18,18 17:1
**negotiations** 13:11
**never** 10:9,10
**new** 8:23
**night** 3:19
**notice** 13:24 15:25
**number** 6:15 7:11

**O**
**O** 2:2
**obligated** 8:4
**obligations** 8:25
**obviously** 9:14
  14:15
**occurred** 10:3
  13:11
**OEC** 3:6
**office** 7:5,5 15:2
**Official** 19:10
**Okay** 2:4 14:15
**old** 2:10
**oOo** 19:2
**Open** 2:3
**opportunity** 12:6
  12:15 13:2,18,18
  13:19
**oppose** 11:5
**opposition** 8:15
  11:23
**order** 2:20 3:23 4:2
  14:22 15:9,15
  17:22,25
**Oregon** 1:2,6 6:1
**original** 19:7
**outdated** 7:7
**outlined** 17:2,4
**outside** 2:22 3:18

**P**

**P** 2:2
**page** 9:18
**paragraph** 5:13,17
  6:8 9:18 12:14
**parked** 3:18
**part** 16:20
**parties** 12:14 17:3
**partners** 2:10
**party** 2:24
**passed** 7:23 10:13
**Paul** 1:14
**pending** 4:22 5:22
**performing** 4:20
**period** 2:7 5:9 8:17
  16:11,13
**permit** 4:19
**perpetuity** 5:12
**personal** 6:5,22
**phone** 9:24
**pick** 9:24
**piece** 8:18,20
**pieces** 8:17
**place** 3:11 5:16
  13:20 14:2
**Plaintiff** 1:4,14
**plaintiff's** 15:4
**pleadings** 3:1
**point** 3:9,12,15
  7:21 12:4,12 14:3
**Portland** 1:6,23
**position** 3:5 5:8
  6:20 12:22
**possession** 6:5,6,11
  15:18
**potential** 4:12
**preclude** 2:13
**prejudice** 11:3,16
**preliminary** 11:20
**premises** 6:12
  13:23
**preserves** 11:9
**presided** 9:10
**pre-planned** 12:5
**principles** 8:13
**prior** 2:7 4:3 5:20
  12:18 13:23 15:3
  16:15
**private** 2:22 3:2
**privileged** 3:6

**probably** 16:13
**problem** 9:22,23
  10:10 17:20
**proceed** 11:7 15:11
**proceedings** 1:10
  19:5
**produced** 17:17
**production** 15:23
  17:5,17
**properly** 9:4
**prophylactic** 4:10
  8:2
**proprietary** 6:6,10
  6:13 14:11
**protective** 2:20
  3:23
**provides** 12:14
**punitive** 7:19
**purpose** 3:2 4:11
**pursuant** 9:19
**pursue** 6:16 15:20

**Q**
**quantity** 17:7
**question** 4:1,4,7
  12:19 15:4
**questions** 14:23
**quoting** 6:10

**R**
**R** 1:17 2:2
**raise** 5:23 6:4 9:9
**raised** 6:3
**raising** 7:18
**RAMIN** 1:6
**rapid** 17:1
**reached** 5:7
**really** 2:12 9:7 15:4
**reason** 2:21 9:8
  16:12
**reassigned** 2:18
**reassignment** 2:5
**recall** 6:15
**receive** 15:22
**Recess** 18:2
**recites** 5:14
**recognized** 4:18
**record** 14:8 19:5
**records** 17:9,13,15
  17:16

**referenced** 14:12
**referred** 9:15,16
  12:13
**relationship** 8:21
**release** 5:18 11:8
**released** 5:19 8:19
**relevant** 7:1
**relief** 10:12
**remaining** 2:13
**remains** 6:5
**removed** 6:12
**removing** 13:23
**replacement** 6:19
  6:21 10:5 14:24
**Reporter** 1:22
  19:10
**representation**
  13:17,18
**represented** 2:25
**representing** 13:13
**request** 15:22 16:5
  17:16
**requested** 15:22
**require** 8:13 17:15
**requires** 5:12 6:9
  11:2
**resident** 1:7
**resignation** 10:4
**respect** 7:13 11:17
  12:20 14:7 15:5
**respectfully** 8:10
  10:13 16:10
**respond** 13:6
**response** 6:13
**responsibilities**
  6:20
**restraining** 4:2
  14:22 15:9,15
**restrictions** 8:22,23
**result** 4:22
**resulted** 4:3,25
  8:12
**retain** 15:12
**retained** 3:6,8
**retainer** 7:10
**return** 5:4
**review** 7:12
**re-open** 13:2
**right** 3:25 6:14

13:8 14:4 17:22
  17:25
**rights** 14:11
**ripe** 7:24
**Room** 1:22
**RPR** 1:22 19:9

**S**

**S** 1:16 2:2
**satisfied** 13:13
**says** 11:8 13:15
**schedule** 11:20
  16:22
**scope** 11:9
**second** 8:20 10:2
  10:16
**secret** 5:14,24
**secretary** 7:9
**secrets** 4:12,15 5:12
  11:12 13:10 14:9
  14:14
**see** 2:12,21,25 3:14
  14:24 16:4,25
**seeking** 16:2 17:13
**seen** 13:15 15:2
**sent** 17:8
**September** 10:8,25
**series** 7:8
**served** 11:24 15:23
**servers** 7:13
**set** 16:6 17:3
**settled** 10:17 14:17
**settlement** 4:4,6 5:7
  5:11,13 8:7,12,14
  8:18 9:6,11,16,19
  11:7,12 12:13,20
  12:24 13:13 14:12
  14:20 15:3,7
**Seven** 16:16
**short** 7:16 16:11
**showed** 10:5
**shredding** 13:22
**signature** 13:14
  19:7
**signed** 13:16
**signing** 19:4
**simple-to-unders...**
  17:12
**sitting** 2:22

**six** 5:9
**sole** 4:11,21
**speaks** 12:17
**specific** 2:10 17:11
**specifically** 5:19
  6:9 9:16
**specifications**
  17:12
**specifies** 9:18
**speed** 6:24 10:7
**spring** 10:3
**stage** 7:24
**start** 7:2
**state** 4:6 8:7
**statement** 2:14 5:1
  5:3,4 13:14,16
**states** 1:1,12 5:14
  5:17
**Statute** 4:15 5:24
  11:12
**stay** 9:19
**steps** 12:23
**Stewart** 2:13,15
**stopped** 3:20
**story** 7:16
**strategic** 5:6
**strictly** 13:9
**struggled** 6:23
**subject** 8:13
**submission** 3:10
  15:17 16:3
**submissions** 11:19
  16:7
**submit** 7:23
**subpoena** 17:9,13
**suggested** 10:21
  11:1,16
**suggestion** 8:24
  10:9 11:15
**suing** 11:12
**suit** 4:10 13:21
**suitable** 6:19
**summons** 17:9
**supposed** 9:21
**sure** 3:21,21 8:2
**surprise** 16:14
**surveillance** 3:11
**Susan** 1:14
**SUV** 3:18

**sworn** 4:25 5:3,4
  13:14
**S.W** 1:22

**T**

**take** 2:11 5:8 7:16
  11:18 15:24 16:22
**taken** 5:5 12:23
  14:2
**takes** 3:25
**talk** 16:16
**talking** 17:7
**team** 13:12
**temporary** 4:1
  14:22 15:9,14
**ten** 11:21
**term** 4:10
**terms** 11:23
**test** 7:1
**testimony** 16:1,2
**Thank** 3:24 4:9
  6:18 8:1
**theft** 11:14
**theory** 11:1,2,17
**thing** 11:6
**things** 16:22
**think** 3:12,15 8:10
  8:20 9:7,13 10:2
  10:13,14,14 12:17
  15:8,16
**third** 1:22 9:3
  10:22 13:4
**thought** 15:1
**three** 2:8 8:5
**Thursday** 12:2
**time** 7:17 8:8,16
  10:13 12:2 15:10
  16:11,13 17:23
**timely** 7:22
**tinted** 3:18
**today** 6:5 13:12
**tomorrow** 16:5
**tort** 6:1
**trade** 4:12,15 5:12
  5:14,24 11:11
  13:10 14:9,14
**transcript** 1:10
  19:5,6
**transfer** 2:16

**treat** 2:14
**treated** 9:5
**trial** 2:16
**triggered** 7:3,8,10
**trip** 12:5
**TRO** 2:18 7:24
  11:5,18
**true** 14:24
**trying** 6:24
**two** 2:7 7:25 8:16
  8:17 16:17,23
**type** 2:21 11:4
**Typically** 2:6

**U**

**understand** 4:2
  9:23 14:8
**understanding** 8:3
**undertook** 7:12
**UNITED** 1:1,12
**use** 4:10 5:23 11:24

**V**

**vacation** 12:3
**vs** 1:5

**W**

**W** 1:22 19:9
**wait** 6:17
**walked** 15:2
**want** 9:8 17:5
**wasn't** 15:3
**way** 8:5
**Wednesday** 12:1
**weeks** 16:17,23
**went** 6:24
**we're** 7:18
**wife** 2:23
**windows** 3:19
**word** 11:24
**work** 16:23
**working** 12:9
**wouldn't** 2:24

**Y**

**year** 15:1
**years** 2:8 7:23
**Younessi** 1:6 3:11
  5:1 6:21 7:18
  8:19,22 11:24

13:13 15:23 16:19
**Younessi's** 7:5,9
  10:5,24 13:14
  14:24 17:16

**0**

**07** 11:13 12:21,22
  14:25

**1**

**1** 6:8
**1000** 1:22
**12** 5:11 9:20
**14** 16:7
**16** 1:5 2:1

**2**

**2** 9:18 11:1 14:10
**20** 17:17
**2007** 5:2,16,21 6:22
  10:25
**2008** 1:5 2:1
**2009** 5:11 9:20
**21** 17:17
**24** 5:2,16,21

**3**

**3** 14:6
**3A** 9:18
**30(b)(6)** 15:25
**301** 1:22
**326-8182** 1:23

**4**

**4** 8:15
**45** 17:3,19

**5**

**503** 1:23 3:6

**6**

**6** 5:13,17
**6th** 6:22

**7**

**7** 15:17
**7th** 11:20 16:7

**9**

**9** 12:14
**97204** 1:23

# EXHIBIT B

**Bruce C. Hamlin**, OSB No. 79254
hamlinb@lanepowell.com
**LANE POWELL** PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: 503.778.2100
Facsimile: 503.778.2200

Mark S. Mester, admitted *pro hac vice*
mark.mester@lw.com
Cameron R. Krieger, admitted *pro hac vice*
cameron.krieger@lw.com
Alan Devlin, admitted *pro hac vice*
alan.devlin@lw.com
Robin M. Hulshizer, admitted *pro hac vice*
Robin.hulshizer@lw.com
**LATHAM & WATKINS LLP**
233 S. Wacker Drive, Suite 5800
Chicago, Illinois 60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Attorneys for Defendant Ramin Younessi

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **DAIMLER TRUCKS NORTH AMERICA LLC,** a Delaware limited liability company, | No. 08-CV-0031-HA |
| Plaintiff, | Defendant Ramin Younessi's **ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM** |
| v. | |
| **RAMIN YOUNESSI,** an Illinois resident, | |
| Defendant. | |

PAGE 1 -   ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

Defendant Ramin Younessi ("Younessi") respectfully submits this Answer, Affirmative Defenses and Counterclaim in response to the Complaint of Plaintiff Daimler Trucks North America LLC f/k/a Freightliner LLC ("Daimler"):

Answering Paragraph 1, to the extent that Paragraph 1 contains any allegations of fact, Younessi lacks knowledge or information with respect to those allegations, and accordingly, Younessi denies the allegations contained in Paragraph 1.

1.      Answering Paragraph 2, Younessi admits that he is a resident of the State of Illinois and a former employee of Freightliner LLC, now Daimler.

2.      Answering Paragraph 3, Younessi admits that Daimler alleges that the amount-in-controversy exceeds $75,000, exclusive of interests and costs.  Younessi denies that Daimler has made a claim on which relief can be granted, and Younessi denies any remaining allegations in Paragraph 3.

3.      Answering Paragraph 4, Younessi denies the allegations contained in Paragraph 4.

4.      Answering Paragraph 5, Paragraph 5 contains conclusions of law as opposed to allegations of fact, and as such, no answer is required.  To the extent that Paragraph 5 purports to contain any allegations of fact, Younessi specifically denies any wrongdoing or other conduct giving rise to causes of action in this District.

5.      Answering Paragraph 6, Paragraph 6 contains conclusions of law as opposed to allegations of fact, and as such, no answer is required.  To the extent that Paragraph 6 purports to contain any allegations of fact, Younessi denies that he engaged in any events within this District giving rise to claims asserted in the Complaint.  Younessi further denies that venue is appropriate in this jurisdiction, as the parties agreed to litigate in the Circuit Court of DuPage County, Illinois issues arising out of the Settlement Agreement entered into by the parties in the prior litigation.

6.      Answering Paragraph 7, Younessi admits that over the course of 13 years ending in March of 2007, he held a variety of positions with Daimler, including Manager of Engineering

PAGE 2 -   ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

Operations and Planning, and Director of Product Marketing and that, in 2002, he was appointed Chief Engineer Product Validation.

7.      Answering Paragraph 8, Younessi denies that he had close involvement in virtually all aspects of Daimler's business, but admits that he periodically had access to confidential and proprietary information in those areas where his work was focused. Younessi further admits that he was ultimately responsible for approximately 150 employees and an annual budget of approximately $40 million.    Younessi denies all remaining allegations contained in Paragraph 8.

8.      Answering Paragraph 9, Paragraph 9 contains conclusions of law, as opposed to allegations of fact, and as such, no answer is required. To the extent that Paragraph 9 purports to contain any allegations of fact, Younessi is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore denies the same.

9.      Answering Paragraph 10, Younessi denies the allegations contained in Paragraph 10.

10.      Answering Paragraph 11, Younessi denies the allegations contained in Paragraph 11.

11.      Answering Paragraph 12, Younessi denies the allegations contained in Paragraph 12.

12.      Answering Paragraph 13, Younessi admits the allegations contained in Paragraph 13.

13.      Answering Paragraph 14, Younessi admits the allegations contained in Paragraph 14.

14.      Answering Paragraph 15, Younessi admits that Daimler initiated a lawsuit on or about March 23, 2007 in the United States District court for the Northern District of Illinois. The pleadings in that action speak for themselves, and to the extent the allegations contained in

PAGE 3 -   ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

Paragraph 15 vary therewith, Younessi denies those allegations. Younessi denies any remaining allegations contained in Paragraph 15.

15.    Answering Paragraph 16, Younessi admits that Daimler and Younessi entered into a Settlement Agreement on April 24, 2007. The Settlement Agreement speaks for itself, and to the extent the allegations contained in Paragraph 16 vary therewith, Younessi denies those allegations. Younessi denies any remaining allegations contained in Paragraph 16.

16.    Answering Paragraph 17, Younessi is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17, and accordingly, Younessi denies the allegations contained in Paragraph 17.

17.    Answering Paragraph 18, Younessi is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and accordingly, Younessi denies the allegations contained in Paragraph 18. To the extent the allegations contained in Paragraph 18 suggest that Younessi took confidential information from Daimler, they are denied.

18.    Answering Paragraph 19, Younessi is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19, and accordingly, Younessi denies the allegations contained in Paragraph 19. Younessi specifically denies that he collected, copied, printed or took Daimler's confidential data, information, files, notes and/or documents.

19.    Answering Paragraph 20, Younessi admits that he used several different Freightliner computers during his employment, including a T30 laptop that Freightliner had given him to use as his personal computer when he was working for Freightliner's parent corporation in Germany beginning in 2000. Younessi affirmatively states that, starting in 2005, he asked Freightliner's information technology staff if he could purchase that computer, but was told at that time that the computer was obsolete and that he should not worry about it. Younessi further admits that in or around October 2006, he again offered to purchase the computer from

PAGE 4 -   ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

Freightliner, but was told that the laptop was obsolete and to just keep it.  Younessi further admits that he again offered to purchase the laptop in March 2007, but was told by Freightliner to keep it without paying for it.  Younessi affirmatively states that the laptop did not work and so he disposed of it sometime in March 2007.  Younessi denies any remaining allegations contained in Paragraph 20.

20.    Answering Paragraph 21, Younessi denies the allegations contained in Paragraph 21.

21.    Answering Paragraph 22, Younessi affirmatively states that original travel authorizations were first sent to his supervisor for approval, and then expense reports were sent to Freightliner's accounting department for payment. Younessi further states that he kept a copy of his expense reports himself to ensure that he was reimbursed.  Younessi lacks sufficient information to admit or deny whether Bobbi Felix kept copies of his travel documents herself. Younessi denies any remaining allegations contained in Paragraph 22.

22.    Answering Paragraph 23, Younessi admits the allegations contained in Paragraph 23.  Younessi affirmatively states that he does not and has never owned any Navistar stock.

23.    Answering Paragraph 24, Younessi denies the allegations contained in Paragraph 24.

24.    Answering Paragraph 25, Younessi admits that he was the leader of the Product Subcommittee, but denies any remaining allegations contained in Paragraph 25.

25.    Answering Paragraph 26, Younessi denies the allegations contained in Paragraph 26.

26.    Answering Paragraph 27, Younessi denies the allegations contained in Paragraph 27.

27.    Answering Paragraph 28, Younessi denies the allegations contained in Paragraph 28.  Younessi affirmatively states that locked shredder bins were always present in Daimler's facilities and that one was permanently located close to his office.  Younessi further states that he

PAGE 5 -   ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

and other employees were encouraged by Daimler to regularly shred unnecessary documents to maintain a "clean desk," and that Daimler had a written policy to that effect.

28.    Answering Paragraph 29, Younessi denies the allegations contained in Paragraph 29.

29.    Answering Paragraph 30, Younessi denies the allegations contained in Paragraph 30. Younessi affirmatively states that for four years he had used what was known to employees as "Door #2" for entering and exiting the building, as it was close to his office. Younessi further states that many other employees also used this door for entering and exiting the building.

30.    Answering Paragraph 31, Younessi admits that he informed Daimler of his resignation on March 12, 2007, but denies any remaining allegations contained in Paragraph 31. Younessi specifically denies that he ever kept any binders containing presentations from "weekly staff meetings, Product Subcommittee meetings, and ExCom Product meetings" in his office during his employment at Daimler.

31.    Answering Paragraph 32, Younessi denies the allegations contained in Paragraph 32. Younessi affirmatively states that he provided his supervisor, Elmar Boeckenhoff, with a detailed monthly status report at the end of February 2007. Younessi further states that he met with his supervisor, Elmar Boeckenhoff, on March 12, 2007, regarding Younessi's resignation, and at that meeting Mr. Boeckenhoff did not ask for any additional information, but instead told Younessi to meet with Younessi's direct reports, which he did.

32.    Answering Paragraph 33, Younessi incorporates by reference as if fully set forth herein his responses to Paragraphs 1-32 of the Complaint.

33.    Answering Paragraph 34, Younessi admits that he had communicated with International by December 2006 regarding potential employment and that he resigned from Daimler after accepting a position at International. Younessi denies any remaining allegations contained in Paragraph 34.

PAGE 6 -   ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

34.     Answering Paragraph 35, Younessi is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and accordingly, Younessi denies the allegations contained in Paragraph 35.

35.     Answering Paragraph 36, Younessi denies the allegations contained in Paragraph 36.

36.     Answering Paragraph 37, Younessi is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and accordingly, Younessi denies the allegations contained in Paragraph 37.

37.     Answering Paragraph 38, Younessi denies the allegations contained in Paragraph 38.

38.     Answering Paragraph 39, Paragraph 39 contains conclusions of law as opposed to allegations of fact, and as such, no answer is required.  To the extent Paragraph 39 sets forth any factual allegations, Younessi denies them.

39.     Answering Paragraph 40, Paragraph 40 contains conclusions of law as opposed to allegations of fact, and as such, no answer is required.  To the extent that Paragraph 40 contains any allegations of fact, Younessi denies them and specifically denies that Daimler is entitled to any monetary damages.

40.     Answering Paragraph 41, Paragraph 41 contains conclusions of law as opposed to allegations of fact, and as such, no answer is required. To the extent that Paragraph 41 contains any allegations of fact, Younessi denies them and specifically denies that Daimler is entitled to any monetary damages.

41.     Answering Paragraph 42, Paragraph 42 contains conclusions of law as opposed to allegations of fact, and as such, no answer is required. To the extent that Paragraph 42 contains any allegations of fact, Younessi denies the allegations.

42.     Answering Paragraph 43, Younessi denies the allegations contained in Paragraph 43.

PAGE 7 -   ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

43.      Answering Paragraph 44, Younessi denies the allegations contained in Paragraph 44.

44.      Answering Paragraph 45, Younessi incorporates by reference as if fully set forth herein his responses to Paragraphs 1-44 of the Complaint.

45.      Answering Paragraph 46, Paragraph 46 contains conclusions of law as opposed to allegations of fact, and as such, no answer is required.  To the extent that Paragraph 46 contains any allegations of fact, Younessi denies the allegations.

46.      Answering Paragraph 47, Younessi denies the allegations contained in Paragraph 47 and specifically denies that Daimler is entitled to any monetary damages.

47.      Answering Paragraph 48, Younessi denies the allegations contained in Paragraph 48 and specifically denies that Daimler is entitled to any monetary damages.

48.      Answering Paragraph 49, Paragraph 49 contains conclusions of law as opposed to allegations of fact, and as such, no answer is required.  To the extent that Paragraph 49 contains any allegations of fact, Younessi denies the allegations.

49.      Answering Paragraph 50, Younessi denies the allegations contained in Paragraph 50.

50.      Answering Paragraph 51, Younessi incorporates by reference as if fully set forth herein his responses to Paragraphs 1-50 of the Complaint.

51.      Answering Paragraph 52, Younessi admits that he executed a Confidentiality Agreement in December 1994.  The document speaks for itself, and to the extent the allegations contained in Paragraph 52 vary therewith, Younessi denies those allegations.  Younessi denies any remaining allegations contained in Paragraph 52.

52.      Answering Paragraph 53, the referenced document speaks for itself, and to the extent the allegations contained in Paragraph 53 vary therewith, Younessi denies those allegations.

PAGE 8 -   ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

53.     Answering Paragraph 54, Younessi denies the allegations contained in Paragraph 54.

54.     Answering Paragraph 55, Younessi denies the allegations contained in Paragraph 55.

55.     Answering Paragraph 56, Younessi denies the allegations contained in Paragraph 56.

56.     Answering Paragraph 57, Paragraph 57 contains conclusions of law as opposed to allegations of fact, and as such, no answer is required.  To the extent that Paragraph 57 contains any allegations of fact, Younessi denies the allegations.

57.     Answering Paragraph 58, Younessi denies the allegations contained in Paragraph 58.

58.     Except as expressly admitted, Younessi denies each and every one of the allegations contained in the Complaint, including any and all allegations contained in the prayer for relief in the Complaint.  Younessi expressly denies that Daimler is entitled to any relief, including but not limited to the relief sought in the Complaint.  Younessi asks that the Complaint be dismissed with prejudice, that judgment be entered for Younessi and that Younessi be awarded his costs and attorneys' fees in defending against the Complaint.  Younessi further requests whatever other relief the Court may deem appropriate.

## AFFIRMATIVE DEFENSES

As and for his Affirmative Defenses to Daimler's Complaint, Younessi states as follows:

## AFFIRMATIVE DEFENSE NO. 1

### (Settlement)

Daimler and Younessi entered into a valid Settlement Agreement on or about April 24, 2007, under which Daimler released its claims against Younessi.  Daimler is, therefore, barred from bringing this suit and the claims it is asserting herein.

PAGE 9 -   ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

## AFFIRMATIVE DEFENSE NO. 2

### (Accord And Satisfaction)

Daimler and Younessi entered into a valid contract and Settlement Agreement on or about April 24, 2007, under which Younessi has fully performed his obligations. Daimler received the benefit of Younessi's performance under the contract. Thus, under the doctrine of accord and satisfaction, Daimler is barred from bringing this suit and the claims it is asserting herein.

## AFFIRMATIVE DEFENSE NO. 3

### (Venue/Forum Selection Clause)

Venue of this case properly belongs in the court that originally heard the matter, namely the Circuit Court of DuPage County, Illinois. The Settlement Agreement between Younessi and Daimler, entered into on or around April 24, 2007, itself provides that any ensuing litigation will be construed and interpreted under Illinois law.

## AFFIRMATIVE DEFENSE NO. 4

### (Pre-emption)

Some or all of Daimler's claims are preempted by the Oregon Trade Secrets Act. *See* OR. REV. STAT. § 646.473.

## AFFIRMATIVE DEFENSE NO. 5

### (No Right To Punitive Damages)

Daimler is precluded from recovering punitive damages from Younessi under applicable law. *See* OR. REV. STAT. § 31.730.

## AFFIRMATIVE DEFENSE NO. 6

### (No Right To Attorneys' Fees)

Daimler has failed to adequately plead any grounds for recovery of attorneys' fees and is thus is precluded from recovering attorneys' fees from Younessi under applicable law.

PAGE 10 - ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

## AFFIRMATIVE DEFENSE NO. 7

### (Failure To Mitigate Damages)

Daimler was and is obligated to mitigate its alleged damages (if any). On information and belief, Daimler, in the exercise of reasonable diligence, could have mitigated some or all of its alleged monetary damages (if any).

## AFFIRMATIVE DEFENSE NO. 8

### (Laches)

Daimler's claims are barred in whole or in part by the doctrine of laches.

## AFFIRMATIVE DEFENSE NO. 9

### (Equitable Estoppel)

The alleged causes of action in the Complaint are barred in whole or in part by the doctrine of equitable estoppel. Daimler has breached the Settlement Agreement between Younessi and Daimler, entered into on or about April 24, 2007, and as a result of that breach and other inequitable conduct, is equitably estopped from bringing some or all of the claims in the Complaint.

## AFFIRMATIVE DEFENSE NO. 10

### (Unclean Hands)

The claims in the Complaint are barred in whole or in part by the doctrine of unclean hands.

## AFFIRMATIVE DEFENSE NO. 11

### (Off-Set And Recoupment)

The claims in the Complaint are barred in whole or in part by the doctrine of off-set and recoupment. For the reasons more fully set forth in Younessi's Counterclaim and because of Daimler's breach of the Settlement Agreement between Younessi and Daimler, entered into on or about April 24, 2007, Daimler owes damages to Younessi that will off-set any damages claimed by Daimler.

PAGE 11 - ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

## COUNTERCLAIM

As and for his Counterclaim against Daimler, Younessi states as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over Younessi's Counterclaim pursuant to Fed. R. Civ. P. 13, 28 U.S.C. § 1331 and 28 U.S.C. § 1332.

2.     Younessi is a resident of the State of Illinois and a former employee of Daimler.

3.     On information and belief, Daimler is a Delaware limited liability company, the sole member of which is Daimler North America Corporation, a Delaware Corporation, with its principal place of business in Michigan.

4.     To the extent that this action remains in this District, venue is appropriate because Daimler has consented to the propriety of venue in this Court by filing its Complaint against Younessi in this Court.

## FACTUAL BACKGROUND

5.     The common allegations for Younessi's Counterclaim are set forth below.

### A.     Daimler Fails to Pay Younessi Wages Due

6.     In the early 2000s, Younessi received an annual bonus as part of his wages from Daimler based on his performance.

7.     Younessi chose to defer payment of this bonus until a date certain in the future.

8.     Daimler was obligated to pay all wages due and owing Younessi after termination of his employment.

9.     Daimler did not pay Younessi all wages due and owing in a timely fashion, as the bonus was not paid to Younessi until after the filing of Younessi's original Counterclaim.

### B.     Daimler Fails to Abide by Terms of Its Benefit Plan

10.     Daimler provides certain of its employees a Deferred Compensation Plan (the "Plan"). Under the Plan, those employees can defer all or part of their annual bonuses for payment in some future year.

PAGE 12 - ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

11.    The Plan provides that "[a]ll deferred amounts will be contributed by the company to your deferred compensation account and maintained there until payout" and that the "deferred compensation account, including investment income earned based on the mutual funds' performance, will be paid out to you based on your annual instructions at the time of contribution."

12.    The Plan further provides that "[i]n the event of termination of employment, regardless of the payout timing you may have selected at the time of deferral, your sub-account balance will be paid to you in a lump sum within 30 days of your last day of employment or by January 31 of the following year, at your election."

13.    In the early 2000s, Younessi deferred payment of his annual bonus under the terms of the Plan.

14.    Younessi announced his resignation from Daimler's employment on March 12, 2007. Under the Plan, Younessi was entitled to payment of his bonus by January 31, 2008, at the latest.

15.    When Younessi left Daimler's employment, he was assured that his deferred compensation would be "cashed out" and sent to him in January or February of 2008.

16.    On December 12, 2007, Younessi contacted Daimler to confirm that his deferred compensation would be cashed out and sent to him in January or February of 2008 under the terms of the Plan. In that correspondence, Younessi's current address in Illinois was listed and Younessi instructed Daimler to send the payment to that address.

17.    On December 13, 2007, Daimler affirmatively represented to Younessi that Daimler would distribute his deferred compensation account balance sometime in the first two weeks of February. Daimler did not do so.

18.    On information and belief, during some portion of January 2008, Daimler hired private detectives to surveil Younessi's house in Naperville, Illinois.

PAGE 13 - ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

19.    After the filing of Younessi's original Answer, Affirmative Defenses and Counterclaim on March 10, 2008, Daimler on March 12, 2008 delivered a check for $66,000 to Younessi's counsel, which Daimler said represented "payout" of Younessi's deferred compensation amount.

### C.    Daimler Discriminated Against Younessi on the Basis of Race and Ethnicity

20.    Younessi is of Middle Eastern descent.  He was born and raised in Iran and emigrated from Iran to the United States at the age of seventeen.  Younessi is now a naturalized citizen of the United States.

21.    During his thirteen years of employment at Daimler, Younessi was told by senior management at Daimler and at its parent company, Daimler Chrysler AG ("Daimler Chrysler"), that his advancement at the company to the executive level was limited because of his ethnicity.

22.    Younessi was also told that the management of Daimler Chrysler thought of him as a "Turk" and that "Turks" were perceived negatively by the Germans.  Daimler's former CEO told Younessi that, during high-level meetings in Germany where candidates for promotion were nominated, members of the Executive Management Development team of Daimler Chrysler referred to Younessi as a "Turk" and indicated that he was not promotable for that reason. Daimler's current Chief Operating Officer also told Younessi that the Germans at Daimler's parent company did not like and "looked down on Turks."

23.    In 2005, Younessi was qualified for a promotion into the senior management of Daimler as Senior Vice President of Engineering and Technology.  The Chief Executive Officer of Freightliner, Chris Patterson, told him that he was qualified and indicated that he was being considered for the promotion.

24.    Later in 2005, Mr. Patterson told Younessi that Younessi would not be promoted because Daimler wanted more Germans as part of the executive management team and would

PAGE 14 - ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

not allow any more non-Germans to be part of that elite group.  Instead, the position was filled by a German, Elmar Boeckenhoff.

25.    In late 2006/early 2007, Mr. Boeckenhoff and, later, the head of Daimler's Human Resources Department, Otto Arens, told Younessi that Daimler wanted to transfer Younessi to Japan, to work for more than three years as the Senior Vice President of Engineering for Mitsubishi-Fuso.  He was told that it would "look good" to send a non-German to Japan in a management role.

26.    Because Daimler refused to promote Younessi based on his race and ethnicity, Younessi was forced to resign from Daimler and obtain employment at a company that offered greater opportunity for advancement, rather than a "glass ceiling."

27.    In 2007, on information and belief, Daimler replaced Younessi with a German citizen.

### D.    Daimler Harasses Younessi and His Wife and Invades Their Privacy

28.    On or about January 7, 2008 (the date Daimler filed the Complaint), Daimler, on information and belief, hired private detectives to follow and harass Younessi and his wife, Karla Younessi.

29.    On or about January 8, 2008, Younessi and his wife became aware that a series of strange men were sitting in vehicles twenty-four hours a day outside the Younessi's home on a quiet suburban street.

30.    Younessi contacted the Naperville, Illinois, police to report the series of men watching his home.  The Naperville police told Younessi that a private detective had informed the police that he would be operating in the area on a "workers' compensation" matter.

31.    On or about January 10, 2008, Karla Younessi left her home to go to a doctor's appointment.  At the time she left the house, one private detective was parked across the street in front of the home.  As she pulled away, a second private detective, who had previously been seen at the house, approached.  On seeing Mrs. Younessi driving away, the first detective did a u-turn

PAGE 15 - ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

and followed Mrs. Younessi to her doctor's office.    When Mrs. Younessi returned home, that second private detective was again parked outside the Younessi's home.

32.    Between at least January 7 and January 10, 2008, the private detectives surveilled the Younessis' residence from cars parked outside the home.  During that time, they operated laptop computers and, on information and belief, took surveillance footage of the Younessis and their home.

### E.    Daimler Instigates This Lawsuit in Breach of the Settlement Agreement

33.    This lawsuit is the third time Daimler has sued Younessi based on his decision to leave Daimler's employment.  The first two lawsuits were filed in March and April of 2007, first in the Northern District of Illinois and then in the Circuit Court of DuPage County, Illinois, respectively.

34.    Daimler and Younessi reached a mutually-agreeable resolution of the second lawsuit, which all parties understood to put to an end all legal issues between the parties and to govern issues (if any) in the future.  That Settlement Agreement included a release by Daimler of "any and all claims, rights, and causes of action" against Younessi relating to allegations that Younessi "disclosed confidential information or trade secrets of Daimler."  That same Settlement Agreement further provided that (a) Younessi would refrain from certain activities for a period of six months ending on September 19, 2007 and (b) Younessi would be bound by the Confidentiality Agreement until March 12, 2009.  *See* Settlement Agreement, Ex. 1 hereto.

35.    Under the Settlement Agreement, Daimler agreed that any disputes under the Settlement Agreement would be governed by Illinois law.  *See* Settlement Agreement, Ex. 1 hereto.

PAGE 16 - ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

## COUNT I

### Violation of ERISA

36.     Younessi realleges Paragraphs 1-35 as if fully set forth herein.

37.     The Plan is an "employee welfare benefit plan" under Section 1002(7) of Employee Retirement and Income Security Act ("ERISA").

38.     Younessi is a "participant" under 29 U.S.C. § 1002(7) because he is a "former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan."

39.     Daimler, as the employer, is the "administrator" under the definitions of ERISA.

40.     Younessi, as a participant, brings an action under 29 U.S.C. § 1132(a)(1)(B) "to recover benefits due to him under the terms of his plan." Daimler's refusal to pay benefits in the due to Younessi in the time required under the terms of the Plan is a violation of this section.

41.     Younessi is entitled to a full accounting, as well as attorneys' fees and costs, under ERISA.

## COUNT II

### Breach of the Plan Contract

42.     Younessi realleges Paragraphs 1-35 as if fully set forth herein.

43.     This Count II is pled in the alternative to Count I, in the event the Court determines that the Plan is not a qualifying plan under the terms of ERISA.

44.     The Plan is a contract between Younessi and Daimler, under which Younessi performed all his obligations.

45.     Daimler's refusal to pay money due to Younessi constitutes a breach of contract that entitles Younessi for damages in the full amount of the money owed him under the Plan, plus pre- and post-judgment interest, attorneys' fees and costs.

PAGE 17 - ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

## COUNT III

### Violation of Oregon's Wage Act, ORS 652.110, *et seq.*

46.    Younessi realleges Paragraphs 1-35 as if fully set forth herein.

47.    This Count III is pled in the alternative to Count I, in the event the Court determines that the Plan is not a qualifying plan under the terms of ERISA.

48.    Younessi was paid a bonus in the early 2000s that was "compensation for performance of service by an employee for an employer." As such, that payment constitutes "wages" under Oregon's Wage Act, ORS 652.210(5). Under the terms of the Plan, Younessi agreed to defer payment of those wages until a date certain in the future. That date ended on January 31, 2008.

49.    Daimler has willfully failed to pay wages or compensation due Younessi at the time they were due. Accordingly, Daimler's actions violate Oregon's Wage Act, specifically ORS 652.120 and 652.140.

50.    Under ORS 652.150(1), Younessi is entitled to wages or compensation from the due date at the same hourly rate at which he was paid for eight hours per day until paid or the date of this action.

51.    Under ORS 652.200, Younessi seeks reasonable attorneys' fees in this action to collect his wages or compensation due under the Plan.

## COUNT IV

### Violation of 42 U.S.C. § 1981

52.    Younessi realleges Paragraphs 1-35 as if fully set forth herein.

53.    Daimler's refusal to promote Younessi constitutes discrimination on the basis of race, ancestry and ethnic characteristics in violation of 42 U.S.C. § 1981.

PAGE 18 - ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

## COUNT V

### Violation of Privacy

54.     Younessi realleges Paragraphs 1-35 as if fully set forth herein.

55.     The surveillance conducted by the private detectives retained by Daimler was conducted in an unreasonable and obtrusive manner and for no apparent purpose other than to harass and frighten the Younessis.  The conduct would be offensive and objectionable to a reasonable person, and as a result of being subjected to such harassment, Younessi and his wife experienced anguish and suffering.

56.     Younessi and his wife had a legitimate expectation of privacy in and around their home.

57.     On information and belief, Daimler's actions in hiring private detectives to engage in this unreasonable and obtrusive behavior constituted an invasion of privacy through intrusion upon seclusion, thus entitling Younessi to monetary and injunctive relief.

## COUNT IV

### Breach of the Settlement Agreement Contract

58.     Younessi re-alleges Paragraphs 1-35 as if fully set forth herein.

59.     Daimler and Younessi entered into a valid contract on or around April 24, 2007, which is attached hereto as Exhibit 1.

60.     Younessi has performed all his obligations under the Settlement Agreement.

61.     By filing this lawsuit, Daimler is in breach of its obligations under the Settlement Agreement.

62.     By filing this lawsuit in Oregon, Daimler is in breach of its promise under the Settlement Agreement that disputes related to that Agreement would be governed by Illinois law.

63.     Daimler's breach of the Settlement Agreement has caused Younessi significant monetary damages.

PAGE 19 - ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

### **PRAYER FOR RELIEF**

WHEREFORE, Younessi seeks the following relief:

1.     A full accounting of the benefits due him under the Plan.

2.     Judgment against Daimler and in favor of Younessi in an amount equal to the deferred compensation to which he is entitled.

3.     Judgment against Daimler and in favor of Younessi in an amount equal to the wages or compensation from the due date at the same hourly rate at which he was paid for eight hours per day until paid or the date of this action.

4.     Judgment against Daimler and in favor of Younessi in an amount sufficient to compensate Younessi both for the salary that was denied him by Daimler's discriminatory promotion procedures and for the mental anguish that such discrimination caused him.

5.     Injunctive relief against Daimler and in favor of Younessi prohibiting any continuing discrimination in Daimler's promotion procedures.

6.     Judgment against Daimler and in favor of Younessi in an amount adequate to compensate him for the mental anguish caused by Daimler's hiring of private detectives to conduct an unreasonable and obtrusive investigation.

7.     Judgment against Daimler and in favor of Younessi in an amount adequate to compensate him for the Daimler's breach of the Settlement Agreement contract.

8.     Judgment against Daimler and in favor of Younessi in amount equal to Younessi's reasonable attorneys' fees and costs.

9.     Judgment against Daimler and in favor of Younessi as punitive damages.

10.    Pre- and post-judgment interest on the money due to Younessi by Daimler.

PAGE 20 - ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

Such other and additional relief as this Court deems just and proper.

DATED:  April 1, 2008

LATHAM & WATKINS LLP


By____/s/  Cameron R. Krieger_____
    Cameron R. Krieger, admitted *pro hac vice*
    Telephone: (312) 876-7700
Attorneys for Defendant Ramin Younessi

Mark S. Mester, admitted *pro hac vice*
mark.mester@lw.com
Alan Devlin, admitted *pro hac vice*
alan.devlin@lw.com
Robin M. Hulshizer, admitted pro hac vice
robin.hulshizer@law.com
**LATHAM & WATKINS LLP**
233 S. Wacker Drive, Suite 5800
Chicago, Illinois  60606

LANE POWELL PC

Bruce C. Hamlin, OSB No. 79254
Telephone:  503.778.2158

PAGE 21 - ANSWER, AFFIRMATIVE DEFENSES AND AMENDED COUNTERCLAIM

# EXHIBIT C

AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### Northern District of Illinois

Daimler Trucks North America LLC

V.

Ramin Younessi

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  Dist. Oregon CV-08-0031-HA

TO:  John D Rea Detective Agency
     1313 Drawbridge Ln
     Lemont, Illinois 60439

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   Latham & Watkins LLP, 233 S. Wacker, Suite 5800 Chicago, Illinois 60606 | DATE AND TIME 5/28/2008 9:00 am |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Please see attached Exhibit A.

| PLACE   Latham & Watkins LLP, 233 S. Wacker, Suite 5800 Chicago, Illinois, 60606 | DATE AND TIME 5/21/2008 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) _____, Attorney For Defendant | DATE 5/8/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Cameron R. Krieger, Latham & Watkins, 233 S. Wacker Drive, Suite 5800, Chicago, Illinois
(312) 876-7700

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
CASE NO. **CV-08-0031-HA**
AFFIDAVIT OF SPECIAL PROCESS SERVER

**Lewis Ellis**, being first duly sworn on oath deposes and says that he served process in the above mentioned cause.
That he served the within:

( ) Summons & Complaint
( ) Citation to Discover Assets
( ) Rule to Show Cause
( X ) Subpoena
( X ) Other: **Witness & Mileage Fee: $68.00**

1.    ( ) By leaving a copy with the named party, ------- personally on -------.
......................................................................................

2.    ( ) On the within named party, -------, by leaving a copy with -------, -------, who states that they are a member of the household on -------, and informed that person of the contents thereof, and that further he mailed a copy of same in a sealed envelope with postage prepaid addressed to the party on -------.
......................................................................................

3.    ( X ) On the within party, **John D Rea Detective Agency** by leaving a copy with **John D. Rea, Authorized Person**, on **May 9, 2008**, and informed that person of the contents thereof.
......................................................................................

4.    ( X ) That the sex, race and approximate age of the person with whom he left the documents were as follows:

SEX: **Male**            RACE: **Caucasian**            APPROXIMATE AGE: **50's**
......................................................................................

5.    ( X ) That the place where and the time of day when the documents were served were as follows:

PLACE: **1313 Drawbridge Ln., Lemont, IL 60439**
TIME OF DAY: **10:38 AM**
......................................................................................

6.    ( ) That he was unable to serve the within named party ------- located at -------- for the reason: -------

Signed and Sworn to before me
This **12**th day of **May 2008**.

OFFICIAL SEAL
FELICIA CONROY
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:11/19/11

_____
Lewis Ellis
Special Process Server
IT'S YOUR SERVE, INC.
Private Detective No. 117-000885

## EXHIBIT A

## DOCUMENTS TO BE PRODUCED

A.      Any documents related to surveillance conducted of or other actions taken by you regarding Ramin Younessi, including but not limited to photographs, videotapes, notes, or reports.

B.      Any documents related to surveillance conducted or other actions taken by you regarding Karla Younessi, including but not limited to photographs, videotapes, notes, or reports.

C.      Any documents related to surveillance conducted or other actions taken at or around 1312 Royal Saint George Drive, Naperville, Illinois by you, including but not limited to photographs, videotapes, notes, or reports.

D.      Any and all reports regarding your surveillance or other activities regarding Ramin and/or Karla Younessi and/or the property located at 1312 Royal Saint George Drive, Naperville, Illinois.

E.      Any materials gathered by you regarding Ramin or Karla Younessi, including but not limited to credit reports, research, background checks, transcripts, photographs, or videotapes.

F.      Any materials gathered by you from Ramin or Karla Younessi or from the area in or around 1312 Royal Saint George Drive, Naperville, Illinois, including but not limited to material that was discarded by either Ramin or Karla Younessi, transcripts, photographs, or videotapes.

G.      Any and all communications between you and Plaintiff Daimler Trucks North America LLC, f/k/a Freightliner LLC ("Daimler") from December 2007 until the present.

H.      Any and all documents related to the hiring of you by Daimler.

AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### Northern District of Illinois

Daimler Trucks North America LLC

V.

Ramin Younessi

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  Dist. Oregon CV-08-0031-HA

TO:  Alberto Gerena
5759 W. 64th Place
Chicago, Illinois 60638

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION    Latham & Watkins LLP, 233 S. Wacker, Suite 5800 Chicago, Illinois 60606 | DATE AND TIME 5/28/2008 1:00 pm |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Please see attached Exhibit A.

| PLACE    Latham & Watkins LLP, 233 S. Wacker, Suite 5800 Chicago, Illinois, 60606 | DATE AND TIME 5/21/2008 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)    *Attorney for Defendant* | DATE 5/8/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Cameron R. Krieger, Latham & Watkins, 233 S. Wacker Drive, Suite 5800, Chicago, Illinois
(312) 876-7700

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
CASE NO. **CV-08-0031-HA**
AFFIDAVIT OF SPECIAL PROCESS SERVER

**Christopher Moore**, being first duly sworn on oath deposes and says that he served process in the above mentioned cause.
That he served the within:

        (   ) Summons & Complaint
        (   ) Citation to Discover Assets
        (   ) Rule to Show Cause
        ( **X** ) Subpoena
        ( **X** ) Other: **Witness & Mileage Fee: $53.00**

1.    ( **X** ) By leaving a copy with the named party, **Alberto Gerena** personally on **May 9, 2008**.

2.    (   ) On the within named party, -------, by leaving a copy with -------, -------, who states that they are a member of the household on -------, and informed that person of the contents thereof, and that further he mailed a copy of same in a sealed envelope with postage prepaid addressed to the party on -------.

3.    (   ) On the within party, ------- by leaving a copy with  -------, on -------, and informed that person of the contents thereof.

4.    ( **X** ) That the sex, race and approximate age of the person with whom he left the documents were as follows:

SEX: **Male**        RACE: **Hispanic**        APPROXIMATE AGE: **50**

5.    ( **X** ) That the place where and the time of day when the documents were served were as follows:

PLACE: **5759 W. 64th Place, Chicago, IL 60638**
TIME OF DAY: **7:00 AM**

6.    (   ) That he was unable to serve the within named party ------- located at -------- for the reason: -------

Signed and Sworn to before me
This **12**th day of **May 2008**.

_____
Christopher Moore
Special Process Server
IT'S YOUR SERVE, INC.
Private Detective No. 117-000885

OFFICIAL SEAL
FELICIA CONROY
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:11/19/11

## EXHIBIT A

## DOCUMENTS TO BE PRODUCED

A.     Any documents related to surveillance conducted of or other actions taken by you regarding Ramin Younessi, including but not limited to photographs, videotapes, notes, or reports.

B.     Any documents related to surveillance conducted or other actions taken by you regarding Karla Younessi, including but not limited to photographs, videotapes, notes, or reports.

C.     Any documents related to surveillance conducted or other actions taken at or around 1312 Royal Saint George Drive, Naperville, Illinois by you, including but not limited to photographs, videotapes, notes, or reports.

D.     Any and all reports regarding your surveillance or other activities regarding Ramin and/or Karla Younessi and/or the property located at 1312 Royal Saint George Drive, Naperville, Illinois.

E.     Any materials gathered by you regarding Ramin or Karla Younessi, including but not limited to credit reports, research, background checks, transcripts, photographs, or videotapes.

F.     Any materials gathered by you from Ramin or Karla Younessi or from the area in or around 1312 Royal Saint George Drive, Naperville, Illinois, including but not limited to material that was discarded by either Ramin or Karla Younessi, transcripts, photographs, or videotapes.

G.     Any and all communications between you and Plaintiff Daimler Trucks North America LLC, f/k/a Freightliner LLC ("Daimler") from December 2007 until the present.

H.     Any and all documents related to the hiring of you by Daimler.

AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Northern District of Illinois

Daimler Trucks North America LLC

V.

Ramin Younessi

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] Dist. Oregon CV-08-0031-HA

TO:  LUIGI CASTILLO
2026 Juniper Ct
Glendale Heights, Illinois

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION    Latham & Watkins LLP, 233 S. Wacker, Suite 5800 Chicago, Illinois 60606 | DATE AND TIME 5/29/2008 9:00 am |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Please see attached Exhibit A.

| PLACE    Latham & Watkins LLP, 233 S. Wacker, Suite 5800 Chicago, Illinois, 60606 | DATE AND TIME 5/21/2008 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) _____, Attorney for Defendant | DATE 5/8/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Cameron R. Krieger, Latham & Watkins, 233 S. Wacker Drive, Suite 5800, Chicago, Illinois
(312) 876-7700

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
CASE NO. **CV-08-0031-HA**
AFFIDAVIT OF SPECIAL PROCESS SERVER

**Lewis Ellis**, being first duly sworn on oath deposes and says that he served process in the above mentioned cause.
That he served the within:

(   ) Summons & Complaint
(   ) Citation to Discover Assets
(   ) Rule to Show Cause
( **X** ) Subpoena
( **X** ) Other: **Witness & Mileage Fee: $70.00**

1.     ( **X** ) By leaving a copy with the named party, **Luigi Castillo** personally on **May 10, 2008**.

2.     (   ) On the within named party, -------, by leaving a copy with -------, -------, who states that they are a member of the household on -------, and informed that person of the contents thereof, and that further he mailed a copy of same in a sealed envelope with postage prepaid addressed to the party on -------.

3.     (   ) On the within party, ------- by leaving a copy with  -------, on -------, and informed that person of the contents thereof.

4.     ( **X** ) That the sex, race and approximate age of the person with whom he left the documents were as follows:

SEX: **Male**         RACE: **Caucasian**         APPROXIMATE AGE: **30**

5.     ( **X** ) That the place where and the time of day when the documents were served were as follows:

PLACE: **2026 Juniper Ct., Glendale Heights, IL**
TIME OF DAY: **12:48 PM**

6.     (   ) That he was unable to serve the within named party ------- located at ------- for the reason: -------

Signed and Sworn to before me
This **12**th day of **May 2008**.

OFFICIAL SEAL
FELICIA CONROY
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXPIRES:11/19/11

Lewis Ellis
Special Process Server
IT'S YOUR SERVE, INC.
Private Detective No. 117-000885

## EXHIBIT A

## DOCUMENTS TO BE PRODUCED

A.    Any documents related to surveillance conducted of or other actions taken by you regarding Ramin Younessi, including but not limited to photographs, videotapes, notes, or reports.

B.    Any documents related to surveillance conducted or other actions taken by you regarding Karla Younessi, including but not limited to photographs, videotapes, notes, or reports.

C.    Any documents related to surveillance conducted or other actions taken at or around 1312 Royal Saint George Drive, Naperville, Illinois by you, including but not limited to photographs, videotapes, notes, or reports.

D.    Any and all reports regarding your surveillance or other activities regarding Ramin and/or Karla Younessi and/or the property located at 1312 Royal Saint George Drive, Naperville, Illinois.

E.    Any materials gathered by you regarding Ramin or Karla Younessi, including but not limited to credit reports, research, background checks, transcripts, photographs, or videotapes.

F.    Any materials gathered by you from Ramin or Karla Younessi or from the area in or around 1312 Royal Saint George Drive, Naperville, Illinois, including but not limited to material that was discarded by either Ramin or Karla Younessi, transcripts, photographs, or videotapes.

G.    Any and all communications between you and Plaintiff Daimler Trucks North America LLC, f/k/a Freightliner LLC ("Daimler") from December 2007 until the present.

H.    Any and all documents related to the hiring of you by Daimler.

# EXHIBIT D

**FILED**

NF

MAR 2 3 2007

03-23-07

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

FREIGHTLINER LLC, a Delaware limited )
liability company, )
)
Plaintiff, )
)
v. )
)
RAMIN YOUNESSI, an individual, and )
INTERNATIONAL TRUCK & ENGINE )
CORPORATION, a Delaware corporation, )
)
Defendants. )
)
)
)

07CV1635

JUDGE SHADUR

MAGISTRATE JUDGE ASHMAN

**JURY DEMANDED**

### COMPLAINT

Plaintiff Freightliner LLC ("Freightliner") alleges its complaint against

Defendants Ramin Younessi ("Younessi") and International Truck & Engine Corporation

("International") as follows:

### NATURE OF THE ACTION

1.    This action arises out of Younessi's resignation from his employment with

Freightliner and his subsequent employment with Freightliner's direct competitor, International.

2.    As alleged in greater detail below, Younessi resigned as the Chief Testing

Engineer of Freightliner on March 12, 2007 in order to accept the position of Vice President of

Truck Strategy and Business Operations at International, reporting directly to the President of

International. As Chief Testing Engineer of Freightliner and in other positions held by Younessi

since his hire in 1994, Younessi acquired intimate and detailed knowledge of Freightliner's trade

secrets and confidential proprietary information relating to, among other things, Freightliner's

MILW_2264041.4

new generation of heavy duty truck, referred to for developmental purposes as the "P-3." Indeed, every single item relating to the engineering and development of the P-3 went through Younessi's hands in one way or another.

3.    International, too, is currently developing its latest generation of heavy duty truck, which it has named the ProStar. International's ProStar and Freightliner's P-3 are anticipated to compete directly for customers in the highly competitive heavy-duty truck market.

4.    Younessi agreed to maintain and not to disclose the confidentiality of all trade secrets and proprietary information acquired in connection with his employment with Freightliner pursuant to the terms of a Confidentiality and Proprietary Rights Agreement. However, Younessi's employment responsibilities as Vice President of Business Strategy of Freightliner's direct competitor, International, will inevitably result in the disclosure of Freightliner's trade secrets and proprietary information.

5.    Younessi's inevitable disclosure of Freightliner's proprietary and trade secret information violates the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*, and will inevitably lead to a breach of the confidentiality obligations that Younessi owes to Freightliner.

6.    This is an action by Freightliner against Younessi and International seeking injunctive and all other appropriate relief at law or equity to (*i*) prevent the inevitable disclosure of Freightliner's trade secrets by Younessi in violation of Illinois Trade Secrets Act 765 ILCS 1065/1 *et seq.*, and (*ii*) restrain and enjoin the anticipatory breach of contractual confidentiality obligations owed to Freightliner by Younessi.

## THE PARTIES

7.    Freightliner LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 4747 North Channel Avenue,

2

Portland, Oregon.  For purposes of diversity jurisdiction, Freightliner is wholly owned by its sole

member, DaimlerChrysler North America Holding Corporation, a Michigan corporation with its

principal place of business in Auburn Hills, Michigan.  Freightliner is North America's leading

manufacturer of heavy and medium duty trucks for over-the-road and vocational applications.

        8.      International Truck and Engine Corporation is a Delaware corporation

with its principal place of business at 4201 Winfield Road, Warrenville, Illinois.  International is

a respected manufacturer in competition with Freightliner in the heavy and medium duty truck

market segments.

        9.      Upon information and belief, Younessi is a citizen of the State of Oregon.

Younessi is a former employee of Freightliner and a current employee of International.

## JURISDICTION AND VENUE

        10.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiff Freightliner is a limited liability company wholly owned by its single member

DaimlerChrysler North America Holdings Corporation, a Michigan corporation with its principal

place of business in Michigan.  Defendant International is a Delaware corporation with its

principal place of business in Illinois.  Upon information and belief, Defendant Younessi is a

citizen of Oregon.

        11.      The amount in controversy exceeds $75,000 exclusive of interests and

costs, in that unless the actions of the defendants are enjoined as demanded herein, Freightliner

will suffer substantial competitive injury by the revelation of its confidential trade secrets to its

competitor for use against Freightliner in the market, causing lost sales revenue in excess of

$75,000.  Further, the investment made by Freightliner in the development of its new generation

of truck and the resultant trade secrets, as alleged herein, has amounted to hundreds of millions

3

of dollars. Were International to obtain some or all of the information described below, Freightliner would be harmed by the loss of its trade secret rights without its consent or compensation and such harm would greatly exceed $75,000, exclusive of interest and costs.

12.    This Court has personal jurisdiction over Defendant International as a corporation with its principal place of business in this District. This Court has personal jurisdiction over Defendant Younessi because he executed one or more employment-related agreements with International and because, in connection with his employment as Vice President of Business Strategy at International, he will inevitably commit wrongs in or directed into Illinois that directly relate to the subject matter of this action. On information and belief, Younessi is in the process of moving his residence to Illinois.

13.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims asserted herein occurred within the Northern District of Illinois.

## FACTUAL ALLEGATIONS

### Competition in the Truck Manufacturing Industry

14.    The trucking business, in general, and the over-the-road segment, in particular, is extremely competitive. As a result, truck buyers are attracted to the products of truck manufacturers that can make even a small difference in the efficiency of a customer's operations. Factors such as price, fuel economy and aerodynamics, reliability, design, driver comfort, and safety all are combined into the value proposition for the customer.

15.    Customers, especially large fleet buyers, almost always obtain competitive bids from dealers of multiple manufacturers for truck purchases.

4

16.     Thus, the market for the sale of heavy and medium duty trucks is also extremely competitive and any non-public information obtained by a truck manufacturer concerning, for example, the design, manufacturing, purchasing, testing, marketing, or pricing of another competitor's products would give that manufacturer a distinct advantage in the marketplace.

### Competition Between Freightliner and International

17.     From time to time, truck manufacturers undertake the development of a radically new truck incorporating entirely new designs and features.

18.     International has announced that it is currently engaged in this effort concerning a truck that it refers to as the ProStar. International has extensively advertised this truck in industry media, touting various aspects of the truck, including claims of aerodynamic advantage and fuel economy.

19.     Freightliner has also developed a new generation of heavy duty truck, referred to for developmental purposes as the "P-3." Freightliner has expended hundreds of millions of dollars in the design, testing, and manufacturing of the P-3 over 4 years. Freightliner is expected to begin accepting customer orders for the P-3 beginning in calendar year 2007.

20.     Freightliner anticipates that the P-3 will compete head-to-head with International's ProStar model truck for customer orders.

### Younessi's Confidentiality Agreement

21.     Freightliner hired Younessi in December 1994 as Project Engineer for Vehicle Systems Development. Over the past twelve years, Younessi held a variety of positions with the company, including Manager of Engineering Operations and Planning and Director of

MILW_2284041.4

Product Marketing. In November 2002, Younessi became Freightliner's Chief Testing Engineer, a position which he held until his resignation on March 12, 2007.

22.     On December 20, 1994, Younessi executed a Confidentiality and Proprietary Rights Agreement with Freightliner (the "Confidentiality Agreement"), a copy of which is attached hereto as Exhibit A. In the Confidentiality Agreement, Younessi promised to maintain the confidentiality of and not to disclose certain types of confidential information.

23.     By the terms of the Confidentiality Agreement and by operation of law, the obligations of Younessi continue to apply, notwithstanding his voluntary termination of employment with Freightliner on March 12, 2007.

### Development of the P-3

24.     Younessi's duties while employed with Freightliner included detailed and direct involvement in all aspects of the development of Freightliner's new P-3 truck.

25.     Younessi was integrally involved in the design of various aspects of the P-3, beginning from the start of the design process to the time of his departure from his employment with Freightliner. Among his responsibilities, Younessi was the head of Freightliner's Product Strategy Committee. In this capacity, he was responsible for coordinating all of Freightliner's engineering projects and for working with Freightliner's Senior Vice President of Engineering to present engineering projects to Freightliner's Operating Committee, as required. In his function as a Chief Engineer, Younessi, participated in Freightliner's Executive Product Committee and so had access to all presentations and discussions concerning Freightliner products. He worked on projects with other departments, including sales and marketing, finance and manufacturing.

6

26.   Younessi was also in charge of Freightliner's testing of all aspects of the P-3, including, but not limited to:

- Major purchased component performance;
- Aerodynamics;
- Fuel efficiency;
- Electronic controls
- Handling;
- Driver comfort and safety;
- Durability;
- Functionality.

27.   Heavy duty trucks, such as the P-3, are made using third-party supplied components, as well as proprietary manufactured items.  For example, Freightliner manufactures the cab and frame-rails of a heavy duty truck, but purchases certain other components, such as transmissions.

28.   Younessi also was involved in efforts to source components and materials for the P-3, including possessing knowledge as to the identity of suppliers and pricing for various materials and components.

29.   In connection with this work, Younessi was aware of the fact that Freightliner executed non-disclosure agreements with vendors concerning the development of technological advancements for components to be used in Freightliner trucks.  As a result of his participation in discussions in which confidential vendor-supplied information was revealed, Younessi is bound by the terms of the non-disclosure agreements not to reveal such information to others, including to his new employer International.

7

30.    Younessi was also centrally involved in discussions concerning the manufacturing processes for the P-3, as advances and changes in the typical processes evolved during the design and testing of the P-3.

31.    Younessi also was part of a team, and thus integrally involved in determining the marketing and pricing strategies for the P-3.  In fact, even the anticipated trade name of the P-3 has been kept a tightly guarded secret.  The marketing and pricing strategies arrived at by Freightliner for the P-3, if known by International or any other competitor, would give that competitor an advantage in competing against the P-3.

32.    Thus, every single item relating to the engineering and development of the P-3 went through Younessi's hands, in one way or another.

33.    Moreover, Younessi had extensive interaction with Freightliner's key customers on a regular basis, acquiring valuable information about customer requirements, preferences and contact information.

34.    In all of the areas of design, testing, manufacturing, sourcing, marketing, pricing and sales, Younessi has been integrally involved in confidential strategic discussions and efforts within Freightliner as to how Freightliner will compete with International's ProStar and the marketplace generally.  Freightliner will be irreparably harmed if Younessi discloses to his new employer International confidential information concerning design, testing, purchasing, manufacturing, marketing strategies, or pricing strategies for the P-3.

35.    Given the extremely competitive truck market, International could use this information to further sales of ProStar trucks or other International products and, conceivably, permit International to adopt new developments, product improvements, or strategies known only to those possessing the confidential information within Freightliner.

8

MILW_2264041.4

### Younessi's Involvement in Larger Corporate Developments

36.    One of the most significant future challenges for every United States heavy duty and medium duty truck manufacturer will be meeting 2010 EPA engine emission requirements.

37.    Freightliner, together with its affiliated DaimlerChrysler companies, has aggressively and actively pursued new technological strategies and designs for meeting the 2010 requirements.

38.    Younessi was an important part of Freightliner's efforts to address the 2010 standards and knows every aspect of Freightliner's strategy and current design status. Were Younessi to share with International Freightliner's plans, designs, concepts and strategies, this would work a substantial competitive disadvantage upon Freightliner and give International an unfair and unearned advantage.

39.    Younessi also knows the details about new engine families for both heavy duty and medium duty trucks that Freightliner plans to launch in the next three years. These engines will directly compete with engines developed by International. Testing of heavy duty engines is underway at Freightliner and plans are being laid out to start testing of the medium duty engines. The details of all of these plans are known to Younessi and he had direct supervision over the testing.

40.    Younessi knows about Freightliner's long range product plan, covering the next 10 years of product development. Were International to obtain this information, it would greatly harm Freightliner and give International an unfair advantage.

41.    Younessi has also been involved in working groups within DaimlerChrysler to create products across company lines in the future. For example, he has been involved in an international group to address developments in electrical controls for introduction

9

in 2011-13. Similarly, Younessi also led an international DaimlerChrysler Commercial Vehicle Division team in the area of testing and validation. All of these efforts are extremely confidential and proprietary to Freightliner and its affiliates and disclosure of these far-reaching efforts to International would be harmful to Freightliner's competitive position.

42.     Younessi has also been involved in development efforts with Freightliner's independent component suppliers in order to provide technological benefits on components supplied currently and in the future to Freightliner and its affiliates.

43.     As important as Freightliner's competitive strategy in competing with International is, Freightliner also competes with every other manufacturer of heavy and medium duty vehicles and has developed a competitive strategy for such competitors. Younessi has been integrally involved in the creation of these competitive strategies. Were he to share them with his new employer, International could use Freightliner's strategies to more effectively compete both against Freightliner and against the other manufacturers, all to Freightliner's detriment.

### Freightliner's Protection of Trade Secrets

44.     Information concerning Freightliner's design, testing, purchasing, manufacturing, marketing strategies, and pricing strategies for the P-3 and other products are closely guarded secrets, known only to an extremely limited number of Freightliner employees. Younessi was one of only a handful of Freightliner employees to be involved in each of these processes and who had access to this information.

45.     Each Freightliner employee, including Younessi, who deals with confidential information is required as a condition of employment with Freightliner to sign a confidentiality agreement. Freightliner takes great care to limit access to both paper and electronic confidential information by providing secure storage and limited password access.

10

46.     Freightliner also keeps its prototypes stored in secure, badge-controlled areas with access limited to key personnel.  All prototype trucks tested on the road have disguising features at all times.  No pictures of Freightliner's development trucks have ever been released publicly.

47.     All P-3 electronic files are stored on a secure server with limited access.

### Younessi's Hiring by International

48.     Freightliner has been unable to learn the details of Younessi's new employment responsibilities with International.  However, Younessi's new title, "Vice President of Business Strategy," suggests that a prime part of his duties will concern competition with other manufacturers, including Freightliner.

49.     International's president made the following announcement on March 20, 2007:

> In addition, I am pleased to announce that **Ramin Younessi** will be joining our Truck Team to lead the Truck Strategy and Business Operations, the position vacated by John Lamoureaux.  Ramin will also lead the development of tactical initiatives for the premium segment of our Heavy Vehicle Center including execution of a new breakthrough product.  Ramin will report directly to me with a matrixed relationship to Tom Baughman.

50.     International's announcement verifies both that Younessi will be integrally involved in the development of new products for International and that he will be in charge of truck strategies for International.  In these business matters, he will be in a position to and will inevitably advise International every step of the way as to Freightliner's strategies, products, technology and capabilities.

11

51.    In this position, it is inevitable that Younessi will disclose to International information that is protected under the Confidentiality Agreement and that constitute trade secrets of Freightliner.

## COUNT I

### Inevitable Violation of the Illinois Trade Secret Act 765 ILCS 1065/1 *et seq.*

52.    Freightliner incorporates by reference and realleges here the allegations contained in paragraphs 1 through 50 of this Complaint as though set forth in full here.

53.    By virtue of his employment with Freightliner, Younessi had access to and acquired knowledge of confidential and proprietary information that constitutes trade secrets within the meaning of Section 2(d) of the Illinois Trade Secrets Act, 765 ILCS § 1065/2(d). Freightliner's trade secrets include the information alleged in the foregoing paragraphs, including but not limited to: (a) Freightliner's design, testing, purchasing, manufacturing, marketing strategies, and pricing strategies for the P-3 new truck model; (b) information regarding Freightliner's strategies for responding to initiatives by its direct competitor, International; (c) Freightliner's long range product plan, new products and engine strategies; and (d) joint initiatives being undertaken within the DaimlerChrysler Commercial Vehicle division.

54.    Freightliner's trade secret information is unknown to others in the industry, and Freightliner has made reasonable efforts to maintain the secrecy of its trade secret information.

55.    At all relevant times, Younessi acquired Freightliner's trade secret information under circumstances giving rise to a duty to maintain the secrecy of such information.

12

56.     In performing his job responsibilities as Vice President of Business Strategy at International, Younessi will inevitably disclose or use Freightliner's trade secrets in performing work for International without the express or implied consent of Freightliner.

57.     As a direct, proximate, and foreseeable result of Younessi's inevitable disclosure of Freightliner's trade secret information, Freightliner will suffer irreparable injury unless Defendants are enjoined, including without limitation, loss of business and economic opportunities, client relationships, future business, goodwill, and commercial reputation, for which Freightliner's remedy at law is inadequate. At the time of International's hiring of Younessi as Vice President of Business Strategy, Defendants knew or reasonably should have known that, by virtue of his prior position at Freightliner and other information available to them, Younessi's employment would inflict such injury on Freightliner.

58.     Freightliner has a substantial likelihood of success on the merits of this claim under the Illinois Trade Secrets Act, 765 ILCS § 1065/1 *et seq.*, due to Younessi's inevitable disclosure of Freightliner's trade secrets for the benefit of International.

59.     The threat of harm to Freightliner in the absence of injunctive relief far outweighs the threat of any harm to the Defendants if an injunction is granted. Freightliner faces substantial but difficult to calculate financial loss and loss of goodwill, whereas the only hardship, if any, imposed on International would be to prevent it from reaping any illicit gain or benefit from the inevitable disclosure of Freightliner's trade secrets.

60.     A preliminary injunction enjoining Younessi from working for International pending final adjudication of Freightliner's claims on the merits will not disserve the public interest, as the potential injury to Younessi is substantially outweighed by the potential

13

injury to Freightliner resulting from the inevitable disclosure of its trade secrets to a direct

competitor, International.

61.    The public interest would be served by granting the relief sought in that

the public interest clearly favors preventing companies from profiting from the inevitable

disclosure of trade secrets by former employees of their direct competitors.

## COUNT II

### Anticipatory Breach of Contract – "Confidentiality and Proprietary Rights Agreement"

62.    Freightliner incorporates by reference and realleges here the allegations

contained in paragraphs 1 through 60 of this Complaint as though set forth in full here.

63.    The Confidentiality Agreement executed by Younessi is a valid and

enforceable contract, supported by adequate consideration, that imposes an obligation on

Younessi to maintain the confidentiality of, and not to disclose, Freightliner's confidential and

proprietary information.

64.    Freightliner has fully performed all of its obligations under the

Confidentiality Agreement with respect to Younessi.

65.    Younessi has anticipatorily breached the confidentiality obligations

imposed on him under the terms of the Confidentiality Agreement by accepting employment

with International as Vice President of Business Strategy under circumstances in which the

disclosure and/or use of Freightliner's confidential and proprietary information is inevitable.

66.    As a direct, proximate, and foreseeable result of Younessi's inevitable

breach of the Confidentiality Agreement, Freightliner will suffer irreparable injury unless

Defendants are enjoined, including without limitation loss of business and economic

opportunities, client relationships, future business, goodwill, and commercial reputation, for

14

which Freightliner's remedy at law is inadequate. At the time of International's hiring of

Younessi as Vice President of Truck Strategy and Business Operations, Defendants knew or

reasonably should have known that, by virtue of his prior positions at Freightliner and other

information available to them, Younessi's employment would inflict such injury on Freightliner.

67.     Freightliner has a substantial likelihood of success on the merits of this

claim due to the Younessi's inevitable disclosure of Freightliner's confidential and proprietary

information in clear breach of the Confidentiality Agreement.

68.     The threat of harm to Freightliner in the absence of injunctive relief far

outweighs the threat of any harm to the Defendants if an injunction is granted. Freightliner faces

substantial but difficult to calculate financial loss and loss of goodwill, whereas the only

hardship, if any, imposed on International would be to prevent it from reaping any illicit gain or

benefit from the inevitable breach of Younessi's contractual obligations under the

Confidentiality Agreement.

69.     A preliminary injunction enjoining Younessi from working for

International pending final adjudication of Freightliner's claims on the merits will not disserve

the public interest, as the potential injury to Younessi would be substantially outweighed by the

potential injury to Freightliner resulting from his inevitable breach of the Confidentiality

Agreement.

70.     The public interest would be served by granting the relief sought in that

the public interest clearly favors preventing companies from profiting from the inevitable

disclosure of trade secrets by former employees of their direct competitors.

15

## PRAYER FOR RELIEF

WHEREFORE, Freightliner respectfully requests that the Court enter judgment in

favor of Freightliner and against the Defendants, and enter an Order or Orders:

(a)  preliminarily and permanently enjoining each of the Defendants, and any persons acting by or under their authority or in privity or concert with any of them, from misappropriating, disclosing, or using any Freightliner trade secret information;

(b)  preliminarily and permanently enjoining each of the Defendants, and any persons acting by or under their authority or in privity or concert with any of them, from causing or inducing the breach of Younessi's contractual obligations under the Confidentiality Agreement;

(c)  preliminarily enjoining Younessi, for a period of six months from the date of the date of his hire by International, from performing services on behalf of International relating to the design, testing, purchasing, manufacturing of heavy duty or medium duty trucks or relating to marketing, pricing, or other business strategy for heavy duty or medium duty trucks;

(d)  any other and further relief as the Court deems just and appropriate.

Dated:  March 23, 2007.

MARTIN J. BISHOP (IL Bar #06269425)

Attorney for Plaintiff Freightliner LLC

FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL  60610-4764
Voice:  (312) 832-5154
Facsimile:  (312) 832-4700
E-Mail:  mbishop@foley.com

(pending *pro hac vice* admission)
Jon P. Christiansen
John E. Turlais
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
(414) 271-2400
(414) 297-4900 FAX

16

MILW_2264041.4

# EXHIBIT
## A

03/19/07  MON 12:30 FAX 503 745 5999     GENERAL COUNSEL FTL LLC     ☑002

## CONFIDENTIALITY AND PROPRIETARY RIGHTS AGREEMENT
### (New Freightliner Employee)

__RAMIN  YOUNESSI_____, (referred to as "Employee"), an applicant for employment by Freightliner Corporation ("Company"), acknowledges that in the course of employment Employee will have access to confidential information of Company or may perform work in which Company has proprietary rights which are entitled to protection.

Therefore, in consideration of employment by Company, Employee agrees as follows:

1. <u>Confidentiality</u>: Marketing, financial, statistical, engineering, personnel or technical data, plans, drawings, trade secrets, programs, source codes, tapes, diskettes, proposals, documents or information of any kind (collectively "Proprietary Information") relating to Company's business is proprietary and confidential, and disclosure to unauthorized parties may cause serious damage to Company; Employee shall not disclose Proprietary Information to competitors of Company or to other third parties, and shall take all necessary steps to keep all Proprietary Information confidential. Upon termination of Employee's services for Company for any reason, all documents or other materials containing Proprietary Information and in the possession of Employee shall be immediately delivered to Company.

2. <u>Proprietary Rights</u>:

   2.1  All material originated or prepared by Employee for Company including, without limitation, programs, memoranda, forms, proposals, letters, reports, studies, drawings, programs, source codes, technical data, or other material or other work product (collectively "Work Product") shall belong exclusively to Company. The ideas, inventions (whether patentable or not), concepts, or techniques (collectively "Know-how") relating to any analysis, procedure, or Work Product developed for Company in the course of Employee's services for Company shall belong exclusively to Company, and Employee agrees not to reveal or cause to be revealed such Work Product or Know-how to Company's competitors or to other third parties.

   2.2  Employee hereby assigns to Company all rights, title and interest in such Work Product and Know-how, and Employee agrees to execute any and all documents necessary to the assignment to Company of patent rights or copyrights or the filing or protection of any United States or foreign patent applications on any invention created or conceived by Employee as referred to above, and to execute any and all documents to formally convey to Company title thereto. This assignment does not include those inventions, discoveries or ideas, relating to business or products similar to those of Company, which were developed by Employee alone or in cooperation with others <u>prior</u> to employment with Freightliner, and which are identified in writing and attached to this Agreement. <u>Employee agrees that the attached identification, if any, contains no information which is confidential or proprietary to Employee or others.</u>

3. <u>Survival of Obligations</u>:  Employee's obligations under Sections 1 and 2 above shall continue to apply in the event Employee's services for Company for any reason terminate.

EMPLOYEE:

Signature: _____     Date: __·12/20/94__

c:\winword\forms\ALCEP10.doc
03/25/94(5C10)

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| FREIGHTLINER LLC, an Oregon limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 07C 1635 |
| v. | ) ) | Judge Milton I. Shadur |
| RAMIN YOUNESSI, an individual, and INTERNATIONAL TRUCK & ENGINE CORPORATION, a Delaware corporation, | ) ) ) ) | Magistrate Martin C. Ashman |
| Defendants. | ) ) | |

### RULE 41(a)(1)(i) NOTICE OF VOLUNTARY DISMISSAL

Plaintiff Freightliner LLC ("Freightliner"), through its attorneys, Foley & Lardner LLP, hereby moves this Court, pursuant to Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure, to voluntarily dismiss this action, the Defendants having not yet served Freightliner with an answer or motion for summary judgment.

Dated:  March 30, 2007

Respectfully submitted,

FREIGHTLINER LLC


_____/s/ Martin J. Bishop_____
Attorney for Plaintiff

Martin J. Bishop
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL  60610-4764
Voice:  (312) 832-5154
Facsimile:  (312) 832-4700

Jon P. Christiansen
John E. Turlais
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
(414) 271-2400
(414) 297-4900 FAX

# EXHIBIT F

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
CHANCERY DIVISION, DUPAGE COUNTY, ILLINOIS

| | | |
|---|---|---|
| FREIGHTLINER LLC, a Delaware limited liability company, | ) ) ) | **2007CH000815** |
| Plaintiff, | ) ) | Status Date: 07/30/07 |
| | ) | JURY |
| v. | ) ) | Assigned To: 2007 |
| | ) | |
| RAMIN YOUNESSI, an individual, and INTERNATIONAL TRUCK & ENGINE CORPORATION, a Delaware corporation, | ) ) ) | Case No. |
| Defendants. | ) ) | **JURY DEMANDED** |
| | ) ) ) ) | |

**FILED**
Apr 02 2007 - 11:47 AM

*Chus Kuhowlas*

CLERK OF THE
18TH JUDICIAL CIRCUIT
DU PAGE COUNTY ILLINOIS

## COMPLAINT FOR PRELIMINARY INJUNCTION

Plaintiff Freightliner LLC ("Freightliner") alleges its complaint against Defendants Ramin Younessi ("Younessi") and International Truck & Engine Corporation ("International") as follows:

## NATURE OF THE ACTION

1.    This action arises out of Younessi's resignation from his employment with Freightliner and his subsequent employment with Freightliner's direct competitor, International.

2.    As alleged in greater detail below, Younessi resigned as the Chief Testing Engineer of Freightliner on March 12, 2007 in order to accept the position of Vice President of Truck Strategy and Business Operations at International, reporting directly to the President of International. As Chief Testing Engineer of Freightliner and in other positions held by Younessi since his hire in 1994, Younessi acquired intimate and detailed knowledge of Freightliner's trade secrets and confidential proprietary information relating to, among other things, Freightliner's

CHIC_1431262.2

new generation of heavy duty truck, referred to for developmental purposes as the "P-3." Indeed, every single item relating to the engineering and development of the P-3 went through Younessi's hands in one way or another.

3.     International, too, is currently developing its latest generation of heavy duty truck, which it has named the ProStar. International's ProStar and Freightliner's P-3 are anticipated to compete directly for customers in the highly competitive heavy-duty truck market.

4.     Younessi agreed to maintain the confidentiality of all trade secrets and proprietary information acquired in connection with his employment with Freightliner pursuant to the terms of a Confidentiality and Proprietary Rights Agreement.  However, Younessi's employment responsibilities as Vice President of Business Strategy of Freightliner's direct competitor, International, will inevitably result in the disclosure of Freightliner's trade secrets and proprietary information.

5.     Younessi's inevitable disclosure of Freightliner's proprietary and trade secret information violates the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*, and will inevitably lead to a breach of the confidentiality obligations that Younessi owes to Freightliner.

6.     This is an action by Freightliner against Younessi and International seeking injunctive and all other appropriate relief at law or equity to (i) prevent the inevitable disclosure of Freightliner's trade secrets by Younessi in violation of the Illinois Trade Secrets Act 765 ILCS 1065/1 *et seq.*, and (ii) restrain and enjoin the anticipatory breach of contractual confidentiality obligations owed to Freightliner by Younessi.

## THE PARTIES

7.     Freightliner LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 4747 North Channel Avenue,

2

Portland, Oregon. Freightliner is North America's leading manufacturer of heavy and medium duty trucks for over-the-road and vocational applications.

8.     International Truck and Engine Corporation is a Delaware corporation with its principal place of business at 4201 Winfield Road, Warrenville, Illinois. International is a respected manufacturer in competition with Freightliner in the heavy and medium duty truck market segments.

9.     Upon information and belief, Younessi is in the process of moving or has moved to Illinois with the intention of changing his residence due to his employment with International.

10.     Venue is appropriate in this court because International maintains its headquarters in DuPage County, Illinois and because a substantial part of the events giving rise to the claims asserted herein have occurred and will occur in DuPage County.

## FACTUAL ALLEGATIONS

### Competition in the Truck Manufacturing Industry

11.     The trucking business, in general, and the over-the-road segment, in particular, are extremely competitive. As a result, truck buyers are attracted to the products of truck manufacturers that can make even a small difference in the efficiency of a customer's operations. Factors such as price, fuel economy and aerodynamics, reliability, design, driver comfort, and safety all are combined into the value proposition for the customer.

12.     Customers, especially large fleet buyers, almost always obtain competitive bids from dealers of multiple manufacturers for truck purchases.

13.     Thus, the market for the sale of heavy and medium duty trucks is also extremely competitive and any non-public information obtained by a truck manufacturer

3

concerning, for example, the design, manufacturing, purchasing, testing, marketing, or pricing of another competitor's products would give that manufacturer a distinct and unfair advantage in the marketplace.

## Competition Between Freightliner and International

14.     From time to time, truck manufacturers undertake the development of a radically new truck incorporating entirely new designs and features.

15.     International has announced that it is currently engaged in this effort concerning a truck that it refers to as the ProStar. International has extensively advertised this truck in industry media, touting various aspects of the truck, including claims of aerodynamic advantage and fuel economy.

16.     Freightliner has also developed a new generation of heavy duty truck, referred to for developmental purposes as the "P-3." Freightliner has expended hundreds of millions of dollars in the design, testing, and manufacturing of the P-3 over 4 years. Freightliner is expected to begin accepting customer orders for the P-3 beginning in calendar year 2007.

17.     Freightliner anticipates that the P-3 will compete head-to-head with International's ProStar model truck for customer orders.

## Younessi's Confidentiality Agreement

18.     Freightliner hired Younessi in December 1994 as Project Engineer for Vehicle Systems Development. Over the past twelve years, Younessi held a variety of positions with the company, including Manager of Engineering Operations and Planning and Director of Product Marketing. In November 2002, Younessi became Freightliner's Chief Testing Engineer, a position which he held until his resignation on March 12, 2007.

4

19.    On December 20, 1994, Younessi executed a Confidentiality and Proprietary Rights Agreement with Freightliner (the "Confidentiality Agreement"), a copy of which is attached hereto as Exhibit A. In the Confidentiality Agreement, Younessi promised to maintain the confidentiality of and not to disclose certain types of confidential information.

20.    By the terms of the Confidentiality Agreement and by operation of law, the obligations of Younessi continue to apply, notwithstanding his voluntary termination of employment with Freightliner on March 12, 2007.

### Development of the P-3

21.    Younessi's duties while employed with Freightliner included detailed and direct involvement in all aspects of the development of Freightliner's new P-3 truck.

22.    Younessi was integrally involved in the design of various aspects of the P-3, beginning from the start of the design process to the time of his departure from his employment with Freightliner. The design process included development of hundreds of new parts and components, the design, functionality and testing of each of which is maintained as a secret from Freightliner's competitors. Younessi was an integral participant in the process of developing all of these parts and components.

23.    Among his responsibilities, Younessi was the head of Freightliner's Product Strategy Committee. In this capacity, he was responsible for coordinating all of Freightliner's engineering projects and for working with Freightliner's Senior Vice President of Engineering to present engineering projects to Freightliner's Operating Committee, as required. In his function as a Chief Engineer, Younessi participated in Freightliner's Executive Product Committee and so had access to all presentations and discussions concerning Freightliner

CHIC_1431262.2

products. He worked on projects with other departments, including sales and marketing. finance and manufacturing.

24.     Younessi was also in charge of Freightliner's testing of all aspects of the P-3, including, but not limited to:

- Major purchased component performance;

- Aerodynamics;

- Fuel efficiency;

- Electronic controls;

- Handling;

- Driver comfort and safety;

- Durability; and

- Functionality.

25.     The test results in each of these areas are maintained as a secret from Freightliner's competitors. The design of a complex product like a heavy duty or medium duty truck involves necessary compromises in areas of performance, weight, cost and other factors. Such compromises, in large part, result from tests showing the performance of the components of the truck. Were a competitor, such as International, to have access to Freightliner's test results, it would know both the relative strengths and weaknesses of each design and component.

26.     Heavy duty trucks, such as the P-3, are made using third-party supplied components, as well as proprietary manufactured items. For example, Freightliner manufactures the cab and frame-rails of a heavy duty truck, but purchases certain other components, such as transmissions.

27.     Younessi also was involved in efforts to source components and materials for the P-3, including possessing knowledge as to the identity of suppliers and pricing for various

6

materials and components.   While the identity of most suppliers is known throughout the industry, the pricing and designs of components are tightly guarded secrets against Freightliner's competition in the industry.

28.     In connection with this work, Younessi was aware of the fact that Freightliner executed non-disclosure agreements with vendors concerning the development of technological advancements for components to be used in Freightliner trucks.  As a result of his participation in discussions in which confidential vendor-supplied information was revealed, Younessi is bound by the terms of the non-disclosure agreements not to reveal such information to others, including to his new employer, International.

29.     Younessi was also centrally involved in discussions concerning the manufacturing processes for the P-3, as advances and changes in the typical processes evolved during the design and testing of the P-3.  Changes in the manufacturing process create additional efficiencies and/or reduce costs.  The changes to the manufacturing processes of Freightliner are tightly guarded secrets and are not revealed to Freightliner's competitors.

30.     Younessi also was part of a team, and thus integrally involved in determining the marketing and pricing strategies for the P-3.  The pricing strategies for the P-3 are confidential within Freightliner and maintained as a secret from Freightliner's competitors.  In fact, even the anticipated trade name of the P-3 was kept a tightly guarded secret.  The marketing and pricing strategies arrived at by Freightliner for the P-3, if known by International or any other competitor, would give that competitor an advantage in competing against the P-3.  In the business of competing for fleet customers, all truck manufacturers grant to dealers additional competitive discounts.  Sometimes, manufacturers pursue "conquest accounts," meaning those where the manufacturer will use additional discounts to dealers in order to

7

convince a long-time customer of a competitor to switch its purchase to another brand. Were International to know Freightliner's pricing and discount strategies, International would have an undeniable advantage in competing for conquest accounts and other customers.

31. Thus, every single item relating to the engineering and development of the P-3 went through Younessi's hands, in one way or another.

32. Moreover, Younessi had extensive interaction with Freightliner's key customers on a regular basis, acquiring valuable information about customer requirements, preferences and contact information. While customers are free to divulge this information to other manufacturers, in many circumstances they do not, preferring that the manufacturer take its best "pricing shot." Such information gained from customers is not shared with Freightliner's competitors and were International to learn of such information, it would harm Freightliner in the market.

33. In all of the areas of design, testing, manufacturing, sourcing, marketing, pricing and sales, Younessi has been integrally involved in confidential strategic discussions and efforts within Freightliner as to how Freightliner will compete with International's ProStar and the marketplace generally. Freightliner will be irreparably harmed if Younessi discloses to his new employer, International, confidential information concerning design, testing, purchasing, manufacturing, marketing strategies, or pricing strategies for the P-3.

34. Given the extremely competitive truck market, International could use this information to further sales of ProStar trucks or other International products and, conceivably, permit International to adopt new developments, product improvements, or strategies known only to those possessing the confidential information within Freightliner.

8

**Younessi's Involvement in Larger Corporate Developments**

35.    One of the most significant future challenges for every United States heavy duty and medium duty truck manufacturer will be meeting 2010 EPA engine emission requirements.

36.    Freightliner, together with its affiliated DaimlerChrysler companies, has aggressively and actively pursued new technological strategies and designs for meeting the 2010 requirements.

37.    Younessi was an important part of Freightliner's efforts to address the 2010 standards and knows every aspect of Freightliner's strategy, current design status and the detailed technology that will be used to meet the standards.  This information is treated as a secret within Freightliner and not shared with any of its competitors.  Were Younessi to share with International Freightliner's plans, designs, concepts and strategies, this would work a substantial competitive disadvantage upon Freightliner and give International an unfair and unearned advantage in attempting to meet the 2010 standards with International's engines.

38.    Younessi also knows the details about new engine families for both heavy duty and medium duty trucks that Freightliner plans to launch in the next three years.  These engines will directly compete with engines developed by International.  Testing of heavy duty engines is underway at Freightliner and plans are being laid out to start testing of the medium duty engines.  The details of all of these tests and plans are known to Younessi, and he had direct supervision over the testing.  Such information is not known outside of Freightliner and its affiliate companies and were such information to be learned by International, it could be used to Freightliner's detriment.

9

39.     Younessi knows about Freightliner's long range product plan, covering the next 10 years of product development.  Were International to obtain this information, it would greatly harm Freightliner and give International an unfair advantage.

40.     Younessi has also been involved in working groups within DaimlerChrysler to create products across company lines in the future.  For example, he has been involved in an international group to address developments in electrical controls for introduction in 2011-13.  These developments in design and manufacture are maintained as secret within the DaimlerChrysler companies.  Similarly, Younessi also led an international DaimlerChrysler Commercial Vehicle Division team in the area of testing and validation.  All of these efforts are extremely confidential and proprietary to Freightliner and its affiliates and disclosure of these far-reaching efforts to International would be harmful to Freightliner's competitive position.

41.     Younessi has also been involved in development efforts with Freightliner's independent component suppliers in order to provide technological benefits on components supplied currently and in the future to Freightliner and its affiliates.  Many of these developments are proprietary to Freightliner and are not shared with Freightliner's competitors.  For example, Freightliner is working with the supplier of fuel pumps to provide new technology for use on engines.  This information is not shared with Freightliner's competitors and if the developments are successful, will provide Freightliner with a competitive advantage.

42.     As important as Freightliner's competitive strategy in competing with International is, Freightliner also competes with every other manufacturer of heavy and medium duty vehicles and has developed a competitive strategy for such competitors.  Younessi has been integrally involved in the creation of these competitive strategies.  Were he to share them with

CHIC_1431262.2

his new employer, International could use Freightliner's strategies to more effectively compete both against Freightliner and against the other manufacturers, all to Freightliner's detriment.

### Freightliner's Protection of Trade Secrets

43.     Information concerning Freightliner's design, testing, purchasing, manufacturing, marketing strategies, and pricing strategies for the P-3 and other products and components are closely guarded secrets, known only to an extremely limited number of Freightliner employees.  Younessi was one of only a handful of Freightliner employees to be involved in each of these processes and who had access to all of this information.

44.     Each Freightliner employee, including Younessi, who deals with confidential information is required as a condition of employment with Freightliner to sign a confidentiality agreement.  Freightliner takes great care to limit access to both paper and electronic confidential information by providing secure storage and limited password access.

45.     Freightliner also keeps its prototypes stored in secure, badge-controlled areas with access limited to key personnel.  All prototype trucks tested on the road have disguising features at all times.  No pictures of Freightliner's development trucks have ever been released publicly.

46.     All P-3 electronic files are stored on a secure server with limited access.

### Younessi's Hiring by International

47.     Freightliner has been unable to learn the details of Younessi's new employment responsibilities with International.  However, Younessi's new title, "Vice President of Business Strategy," suggests that a prime part of his duties will concern competition with other manufacturers, including Freightliner.

11

48.    International's president made the following announcement on March 20.
2007:

> In addition, I am pleased to announce that **Ramin Younessi** will be joining our Truck Team to lead the Truck Strategy and Business Operations, the position vacated by John Lamoureaux. Ramin will also lead the development of tactical initiatives for the premium segment of our Heavy Vehicle Center including execution of a new breakthrough product. Ramin will report directly to me with a matrixed relationship to Tom Baughman.

49.    International's announcement verifies both that Younessi will be integrally involved in the development of new products for International and that he will be in charge of truck strategies for International. In these business matters, he will be in a position to and will inevitably advise International every step of the way as to Freightliner's strategies, products, technology and capabilities.

50.    In this position, it is inevitable that Younessi will disclose to International information that is protected under the Confidentiality Agreement and that constitutes trade secrets of Freightliner.

## COUNT I

**Inevitable Violation of the Illinois Trade Secrets Act 765 ILCS 1065/1 *et seq.***

51.    Freightliner incorporates by reference and realleges here the allegations contained in paragraphs 1 through 50 of this Complaint as though set forth in full here.

52.    By virtue of his employment with Freightliner, Younessi had access to and acquired knowledge of confidential and proprietary information that constitutes trade secrets within the meaning of Section 2(d) of the Illinois Trade Secrets Act, 765 ILCS 1065/2(d). Freightliner's trade secrets include the information alleged in the foregoing paragraphs, including but not limited to: (a) Freightliner's design, testing, purchasing, manufacturing, marketing

12

strategies, and pricing strategies for the P-3 new truck model; (b) information regarding Freightliner's strategies for responding to initiatives by its direct competitor, International; (c) Freightliner's long range product plan, new products and engine strategies; and (d) joint initiatives being undertaken within the DaimlerChrysler Commercial Vehicle division.

53.    The foregoing information possessed by Freightliner is sufficiently secret such that Freightliner derives economic value from it not being known to others in the marketplace, including International.

54.    Freightliner's trade secret information is unknown to others in the industry, and Freightliner has made reasonable efforts to maintain the secrecy of its trade secret information.

55.    At all relevant times, Younessi acquired Freightliner's trade secret information under circumstances giving rise to a duty to maintain the secrecy of such information.

56.    In performing his job responsibilities as Vice President of Business Strategy at International, Younessi will inevitably disclose or use Freightliner's trade secrets in performing work for International without the express or implied consent of Freightliner.

57.    As a direct, proximate, and foreseeable result of Younessi's inevitable disclosure of Freightliner's trade secret information, Freightliner will suffer irreparable injury unless Defendants are enjoined, including without limitation, loss of business and economic opportunities, client relationships, future business, goodwill, and commercial reputation, for which Freightliner's remedy at law is inadequate. At the time of International's hiring of Younessi as Vice President of Business Strategy, Defendants knew or reasonably should have

13

known that, by virtue of his prior position at Freightliner and other information available to them, Younessi's employment would inflict such injury on Freightliner.

58.    Freightliner has a substantial likelihood of success on the merits of this claim under the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*, due to Younessi's inevitable disclosure of Freightliner's trade secrets for the benefit of International.

59.    The threat of harm to Freightliner in the absence of injunctive relief far outweighs the threat of any harm to the Defendants if an injunction is granted.  Freightliner faces substantial but difficult-to-calculate financial loss and loss of goodwill, whereas the only hardship, if any, imposed on International would be to prevent it from reaping any illicit gain or benefit from the inevitable disclosure of Freightliner's trade secrets.

60.    A preliminary injunction enjoining Younessi from working for International pending final adjudication of Freightliner's claims on the merits will not disserve the public interest, as the potential injury to Younessi is substantially outweighed by the potential injury to Freightliner resulting from the inevitable disclosure of its trade secrets to a direct competitor, International.

61.    The public interest would be served by granting the relief sought in that the public interest clearly favors preventing companies from profiting from the inevitable disclosure of trade secrets by former employees of their direct competitors.

## COUNT I – PRAYER FOR RELIEF

WHEREFORE, Freightliner respectfully requests that the Court enter judgment in favor of Freightliner and against the Defendants as to Count I, and enter an Order or Orders:

(a)    preliminarily and permanently enjoining each of the Defendants, and any persons acting by or under their authority or in privity or concert with any of them, from misappropriating, disclosing, or using any Freightliner trade secret information; and

14

CHIC_1431262.2

(b)  preliminarily enjoining Younessi, for a period of six months from the date of his hire by International, from performing services on behalf of International relating to the design, testing, purchasing, or manufacturing of heavy duty or medium duty trucks or relating to marketing, pricing, or other business strategy for heavy duty or medium duty trucks;

(c)  any other and further relief as the Court deems just and appropriate.

## COUNT II

**Anticipatory Breach of Contract – "Confidentiality and Proprietary Rights Agreement"**

62.  Freightliner incorporates by reference and realleges here the allegations contained in paragraphs 1 through 60 of this Complaint as though set forth in full here.

63.  The Confidentiality Agreement executed by Younessi is a valid and enforceable contract, supported by adequate consideration, that imposes an obligation on Younessi to maintain the confidentiality of, and not to disclose, Freightliner's confidential and proprietary information.

64.  Freightliner has fully performed all of its obligations under the Confidentiality Agreement with respect to Younessi.

65.  Younessi has anticipatorily breached the confidentiality obligations imposed on him under the terms of the Confidentiality Agreement by accepting employment with International as Vice President of Business Strategy under circumstances in which the disclosure and/or use of Freightliner's confidential and proprietary information is inevitable.

66.  As a direct, proximate, and foreseeable result of Younessi's inevitable and anticipatory breach of the Confidentiality Agreement, Freightliner will suffer irreparable injury unless Defendants are enjoined, including without limitation loss of business and economic opportunities, client relationships, future business, goodwill, and commercial reputation, for which Freightliner's remedy at law is inadequate. At the time of International's hiring of

15

Younessi as Vice President of Truck Strategy and Business Operations, Defendants knew or reasonably should have known that, by virtue of his prior positions at Freightliner and other information available to them, Younessi's employment would inflict such injury on Freightliner.

67.    Freightliner has a substantial likelihood of success on the merits of this claim due to Younessi's inevitable disclosure of Freightliner's confidential and proprietary information in clear breach of the Confidentiality Agreement.

68.    The threat of harm to Freightliner in the absence of injunctive relief far outweighs the threat of any harm to the Defendants if an injunction is granted. Freightliner faces substantial but difficult-to-calculate financial loss and loss of goodwill, whereas the only hardship, if any, imposed on International would be to prevent it from reaping any illicit gain or benefit from the inevitable breach of Younessi's contractual obligations under the Confidentiality Agreement.

69.    A preliminary injunction enjoining Younessi from working for International pending final adjudication of Freightliner's claims on the merits will not disserve the public interest, as the potential injury to Younessi would be substantially outweighed by the potential injury to Freightliner resulting from his inevitable breach of the Confidentiality Agreement.

70.    The public interest would be served by granting the relief sought in that the public interest clearly favors preventing companies from profiting from the inevitable disclosure of trade secrets by former employees of their direct competitors.

## <u>COUNT II - PRAYER FOR RELIEF</u>

WHEREFORE, Freightliner respectfully requests that the Court enter judgment in favor of Freightliner and against the Defendants as to Count II, and enter an Order or Orders:

16

(a)     preliminarily and permanently enjoining each of the Defendants, and any persons acting by or under their authority or in privity or concert with any of them, from causing or inducing the breach of Younessi's contractual obligations under the Confidentiality Agreement;

(b)     preliminarily enjoining Younessi, for a period of six months from the date of his hire by International, from performing services on behalf of International relating to the design, testing, purchasing, or manufacturing of heavy duty or medium duty trucks or relating to marketing, pricing, or other business strategy for heavy duty or medium duty trucks; and

(c)     any other and further relief as the Court deems just and appropriate.


Dated:  April 2, 2007                              FREIGHTLINER LLC


                                                   _____
                                                   Phillip A. Luetkehans, One of the
                                                   Attorneys for Plaintiff


Phillip A. Luetkehans
Schirott & Luetkehans PC
105 East Irving Park Road
Itasca, IL  60143
Attorney No. 8500
Telephone:  (630) 760-4601
Facsimile:  (630) 773-1006

Martin J. Bishop
Daniel M. Cordis
FOLEY & LARDNER LLP (#26330)
321 North Clark Street, Suite 2800
Chicago, IL  60610-4764
Telephone:  (312) 832-5154
Facsimile:  (312) 832-4700
E-Mail:  mbishop@foley.com

(pending *pro hac vice* admission)
Jon P. Christiansen
John E. Turlais
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
Telephone:  (414) 271-2400
Facsimile:  (414) 297-4900


CHIC_1431262.2                              17

# EXHIBIT A

CHIC_1431262.2

## CONFIDENTIALITY AND PROPRIETARY RIGHTS AGREEMENT
### (New Freightliner Employee)

_RAMIN YOUNESSI_____, (referred to as "Employee"), an applicant for employment by Freightliner Corporation ("Company"), acknowledges that in the course of employment Employee will have access to confidential information of Company or may perform work in which Company has proprietary rights which are entitled to protection.

Therefore, in consideration of employment by Company, Employee agrees as follows:

1. <u>Confidentiality</u>: Marketing, financial, statistical, engineering, personnel or technical data, plans, drawings, trade secrets, programs, source codes, tapes, diskettes, proposals, documents or information of any kind (collectively "Proprietary Information") relating to Company's business is proprietary and confidential, and disclosure to unauthorized parties may cause serious damage to Company; Employee shall not disclose Proprietary Information to competitors of Company or to other third parties, and shall take all necessary steps to keep all Proprietary Information confidential. Upon termination of Employee's services for Company for any reason, all documents or other materials containing Proprietary Information and in the possession of Employee shall be immediately delivered to Company.

2. <u>Proprietary Rights</u>:

   2.1  All material originated or prepared by Employee for Company including, without limitation, programs, memoranda, forms, proposals, letters, reports, studies, drawings, programs, source codes, technical data, or other material or other work product (collectively "Work Product") shall belong exclusively to Company. The ideas, inventions (whether patentable or not), concepts, or techniques (collectively "Know-how") relating to any analysis, procedure, or Work Product developed for Company in the course of Employee's services for Company shall belong exclusively to Company, and Employee agrees not to reveal or cause to be revealed such Work Product or Know-how to Company's competitors or to other third parties.

   2.2  Employee hereby assigns to Company all rights, title and interest in such Work Product and Know-how, and Employee agrees to execute any and all documents necessary to the assignment to Company of patent rights or copyrights or the filing or protection of any United States or foreign patent applications on any invention created or conceived by Employee as referred to above, and to execute any and all documents to formally convey to Company title thereto. This assignment does not include those inventions, discoveries or ideas, relating to business or products similar to those of Company, which were developed by Employee alone or in cooperation with others <u>prior</u> to employment with Freightliner, and which are identified in writing and attached to this Agreement. <u>Employee agrees that the attached identification, if any, contains no information which is confidential or proprietary to Employee or others.</u>

3. <u>Survival of Obligations</u>:  Employee's obligations under Sections 1 and 2 above shall continue to apply in the event Employee's services for Company for any reason terminate.

EMPLOYEE:

Signature: _____        Date: ___12/20/94___

# EXHIBIT G

# SETTLEMENT AGREEMENT

This settlement agreement is made this _____ day of April, 2007 among Freightliner LLC ("Freightliner"), International Truck & Engine Corporation ("International") and Ramin Younessi ("Younessi").

## RECITALS

A.    Younessi was employed by Freightliner as its Chief Testing Engineer until his resignation on March 12, 2007. While employed with Freightliner, Younessi signed a Confidentiality and Proprietary Rights Agreement ("the Confidentiality Agreement");

B.    Younessi has been employed by International since March 19, 2007 ("Employment Date") as its Vice President, Strategy and Business Operations;

C.    Freightliner commenced an action against International and Younessi in DuPage County, Illinois district court, case no. 207CH000815 (the "Litigation") claiming the inevitable disclosure of Freightliner's trade secrets;

D.    The parties wish to resolve their disputes and dismiss the Litigation, without admitting any liability;

## AGREEMENT

1.    The parties will cooperate to execute such documents as may be necessary to dismiss forthwith the Litigation without prejudice and without costs to either party.

2.    For a period of 6 months from the Employment Date, International will cause Younessi's employment to be devoted exclusively on the following areas:

a.    Sourcing of components globally and primarily from India and China;

b.    Addressing the order-to-delivery process within International and Navistar;

c.    Short term tactical measures to address order intake, but without contact with any customer with whom Younessi had direct contact during his employment with Freightliner.

d.    General business strategy, with the exceptions noted below.

During the same six month period, Younessi will not be involved in nor advise International in any aspect of:

a.    Truck or component design or testing;

b.    Engine design or testing;

c.      Marketing or pricing strategies;

d.      Compliance with regulatory standards;

e.      Product planning; or

f.      Manufacturing techniques or processes.

After the expiration of six months from the Employment Date, International may employ Younessi in any position and with any responsibility that it chooses.

3.      International agrees not to inquire of Younessi and Younessi agrees not to divulge information concerning Freightliner, as follows:

a.      Until March 12, 2009, the terms of the Confidentiality Agreement shall continue to apply, such that Younessi shall not disclose to International or any representative of any affiliate of International or any third party any information that was, at the time of his departure from employment with Freightliner, confidential within Freightliner. This obligation not to disclose confidential information, however, does not apply to information that becomes public without being disclosed by Younessi.

b.      Younessi will not at any time disclose to International or any representative of any affiliate of International or any third party any information concerning Freightliner that was, at the time of his departure from employment with Freightliner, a trade secret as that term is defined by Illinois law. The foregoing limitation, however, does not apply to information that becomes public without being disclosed by Younessi or that is otherwise not maintained as a trade secret by Freightliner in a manner consistent with Illinois law.

4.      Each person signing below represents and warrants that: (a) he or she has the authority to execute this Settlement Agreement. This Settlement Agreement and release shall be construed and interpreted according to the law of Illinois. In the event any litigation is commenced to enforce any provision of this Settlement Agreement, the prevailing party shall be entitled to award of reasonable attorney's fees and costs.

5.      This Agreement is contingent upon Younessi providing to Freightliner a sworn statement (the "Statement") in the form attached hereto as exhibit A.

6.      Freightliner, for itself and its officers, directors, shareholders, affiliates, employees, agents and assigns, hereby releases and forever discharges International and its officers, directors, shareholders, affiliates, employees, agents and assigns and Younessi and his spouse, agents and heirs from any and all claims rights and causes of action, of whatsoever kind or nature based upon any allegation that prior to the execution of the Statement Younessi disclosed confidential information or trade secrets of Freightliner to any representative of International. This release specifically does not cover any act by Younessi or International occurring after the execution of the Statement and does not cover any obligation created by this Agreement. This release is not general in scope and Freightliner maintains and preserves any other claim not so described.

2

7. This Agreement may be executed in fax counterpart with the same force and binding effect as if each person signing had signed the same original document.

8. Each party has had the benefit of counsel in the negotiation of this Agreement and neither party shall be deemed to have drafted this Agreement.

9. The parties have had the opportunity to investigate and determine all facts material to their decision to enter into this Agreement. This document contains all of the representations and agreements on the subject matter covered by this Agreement, and there are no other representations or warranties upon which the parties have relied in entering into this Agreement,

| FREIGHTLINER LLC | INTERNATIONAL TRUCK & ENGINE, CORPORATION |
|---|---|
| By: _____ | By: _____ |
| Title: _____ | Title: _____ |
| RAMIN YOUNESSI | |
| By: _____ | |
| Title: _____ | |

3

7.     This Agreement may be executed in fax counterpart with the same force and binding effect as if each person signing had signed the same original document.

8.     Each party has had the benefit of counsel in the negotiation of this Agreement and neither party shall be deemed to have drafted this Agreement.

9.     The parties have had the opportunity to investigate and determine all facts material to their decision to enter into this Agreement.  This document contains all of the representations and agreements on the subject matter covered by this Agreement, and there are no other representations or warranties upon which the parties have relied in entering into this Agreement.

| FREIGHTLINER LLC | INTERNATIONAL TRUCK & ENGINE CORPORATION |
|---|---|
| By: _____ | By: _____ 4/24/07 |
| Title: _____ | Title: PRESIDENT, TRUCK GROUP |
| RAMIN YOUNESSI | |
| By: _____ 4/21/07 | |
| Title: VP Strategy and Business Operation | |

3

# EXHIBIT H

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

FREIGHTLINER LLC, a Delaware limited
liability company,

        Plaintiff,

        v.

RAMIN YOUNESSI, an Illinois resident,

        Defendant.

**SUMMONS IN A CIVIL ACTION**

Case No.:

## CV '08 - 0 0 3 1 -   ST

TO:   RAMIN YOUNESSI
      International Truck & Engine Corporation
      4201 Winfield Road
      Warrenville, IL  60555

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEYS

Susan K. Eggum, OSB No. 824576
Internet e-mail:eggum@cvk-law.com
Paul A. C. Berg, OSB No. 062738
Internet e-mail: pberg@cvk-law.com
COSGRAVE VERGEER KESTER LLP
805 SW Broadway, 8th Floor
Portland, Oregon 97205
Telephone:   (503) 323-9000
Facsimile:    (503) 323-9019

an answer to the **Complaint** which is being served on you with this Summons, within twenty days after service of this Summons, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You are additionally being served hereby with: Motion for Temporary Restraining Order; Memorandum In Support of Motion for Temporary Restraining Order; a proposed Temporary Restraining Order and Order to Show Cause; a proposed Order Setting Security ; Declarations of Elmar Boeckenhoff, Bobbi Felix, Richard Macken, Hannes Moeller, Dieter Haban, James Horsley and Patricia Bell; Motion for Leave to Serve Expedited Discovery, a proposed Order on Motion for Leave to Serve Expedited Discovery; First Request For Production to Defendant; Notices of Deposition for the depositions of you, D.T. (Dee) Kapur, Tom Baughman, International's designee(s), International's custodian of records, and D.J.K. Custom Homes' custodian of records; Deposition Subpoenas for D.T. (Dee) Kapur, Tom Baughman, International Truck & Engine Corporation's ("International") designee(s), International's custodian of records, and D.J.K. Custom Homes' custodian of records.

SHERYL S. McCONNELL

1/7/08

Clerk

(By) Deputy Clerk

Date

503400

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me[1] | DATE |
|---|---|
| | 1/7/2008 |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|
| Robert D Fairbanks | Process Server |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

　　Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☑ Other (specify):
　　Left copies with JUDY BACHLEDA / Receptionist at the defendants place of business, International Truck & Engine Corporation.

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| $0.00 | $25.00 | $25.00 |

## DECLARATION OF SERVER

　　I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____1/7/2008_____　　　　_____
　　　　　　　　　Date　　　　　　　　　　　Signature of Server

　　　　　　　　　　　　　　　　JUDICIAL ATTORNEY SERVICES, INC.
　　　　　　　　　　　　　　　　2100 MANCHESTER RD., STE. 900
　　　　　　　　　　　　　　　　WHEATON, IL 60187
　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# EXHIBIT I

**Bruce C. Hamlin**, OSB No. 79254
hamlinb@lanepowell.com
**LANE POWELL** PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone:  503.778.2100
Facsimile:  503.778.2200

Attorneys for Defendant Ramin Younessi

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **FREIGHTLINER LLC,** a Delaware limited liability company, | No. 08-CV-0031-ST |
| Plaintiff, | Defendant Ramin Younessi's **EMERGENCY MOTION FOR A PROTECTIVE ORDER** |
| v. | |
| **RAMIN YOUNESSI,** an Illinois resident, | |
| Defendant. | |

Defendant Ramin Younessi ("Mr. Younessi"), by and through his attorneys, hereby moves this Court for a protective order prohibiting Freightliner LLC ("Freightliner") from harassing and oppressing him through the use of private investigators surveilling his home, following him, and following members of his immediate family on a continuous basis.[1]  In support thereof, Mr. Younessi submits the attached Memorandum in Support of His Motion for a Protective Order.

---

[1]    Because Mr. Younessi has concurrently moved to replace Judge Stewart because of a potential conflict of interest, he asks that this Court hear his Motion at the previously-scheduled January 16, 2008, hearing.

PAGE 1 -   EMERGENCY MOTION FOR A PROTECTIVE ORDER

WHEREFORE, Mr. Younessi respectfully requests that this Court enter an order requiring Freightliner to cease any and all surveillance of Mr. Younessi, any member of his immediate family, and his house; immediately remove any of its agents currently engaged in surveilling or following Mr. Younessi or any member of his family; and any other relief this Court deems necessary.

DATED:  January 14, 2008

LANE POWELL PC


By____/s/_Bruce C. Hamlin_____
    Bruce C. Hamlin, OSB No. 79254
    Telephone:  503.778.2158
    Attorneys for Defendant Ramin Younessi

Mark S. Mester, *pro hac vice* pending
mark.mester@lw.com
Cameron R. Krieger, *pro hac vice* pending
cameron.krieger@lw.com
**LATHAM & WATKINS LLP**
233 S. Wacker Drive, Suite 5800
Chicago, Illinois  97205

PAGE 2 -   EMERGENCY MOTION FOR A PROTECTIVE ORDER

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

**Bruce C. Hamlin**, OSB No. 79254
hamlinb@lanepowell.com
**LANE POWELL** PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone:  503.778.2100
Facsimile:  503.778.2200

Mark S. Mester, *pro hac vice* pending
mark.mester@lw.com
Cameron R. Krieger, *pro hac vice* pending
cameron.krieger@lw.com
**LATHAM & WATKINS LLP**
233 S. Wacker Drive, Suite 5800
Chicago, Illinois  97205
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Attorneys for Defendant Ramin Younessi

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **FREIGHTLINER LLC,** a Delaware limited liability company**,** | No. 08-CV-0031-ST |
| Plaintiff, | Defendant Ramin Younessi's **MEMORANDUM IN SUPPORT OF HIS EMERGENCY MOTION FOR A PROTECTIVE ORDER** |
| v. | |
| **RAMIN YOUNESSI,** an Illinois resident**,** | |
| Defendant. | |

In support of his Emergency Motion for a Protective Order, Defendant Ramin Younessi

("Mr. Younessi"), by and through his attorneys, states as follows:

PAGE 1 -   MEMORANDUM IN SUPPORT OF HIS EMERGENCY MOTION FOR A
           PROTECTIVE ORDER

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

# I.  INTRODUCTION

Freightliner LLC ("Freightliner") has taken steps in this litigation designed solely to harass and embarrass Mr. Younessi and his family, with no conceivable legitimate purpose.  On information and belief, Freightliner has engaged private detectives to sit outside Mr. Younessi's house on a twenty-four basis, to follow Mr. Younessi and to follow Mr. Younessi's wife.  Accordingly, Mr. Younessi asks this Court to enter a protective order barring Freightliner from any further harassment and intimidation of either Mr. Younessi or any member of his family.[1]

# II.  FACTUAL BACKGROUND

On Monday, January 7, 2008, the day this litigation was filed, Mr. Younessi observed a person sitting in a car outside his house.[2]  *See* Decl. of K. Younessi, Ex. 1 hereto, at ¶ 2. This person remained outside Mr. Younessi's residence, watching the house, for hours.  *Id.*  At some point a second car with a second man replaced the first car.  *Id.*  These individuals, who sat in the cars with open laptop computers, remained in continuous cycle observing Mr. Younessi's house for at least several days.  *Id.*

On Tuesday, January 8, 2008, a neighbor of the Younessis approached the car to ask the occupant what he was doing.  *Id.* at ¶ 3.  The man told the Younessis' neighbor that he was a private detective.  *Id.*  He indicated that the Naperville, Illinois police were aware of his activities.  *Id.*  Mr. Younessi, in turn, called the Naperville police department, which confirmed that a private detective had informed them of surveillance in the area.  *Id.*

On Wednesday, January 9, 2008, Mr. Younessi's wife was followed by a man while going to a doctor's appointment.  *Id.* at ¶ 4.  When she left the house, the car sitting outside made a u-turn to follow her, and followed her all the way to her doctor's office.  *Id.*  When she

---

[1] Mr. Younessi reserves all rights to pursue any and all other remedies in addition to this Motion in response to Freightliner's actions.

[2] Mr. Younessi is currently traveling out of the country on business and thus it was not possible to obtain a sworn statement from him supporting this Motion.  On Mr. Younessi's return, however, a sworn declaration can be provided to the Court in further support of all factual statements made herein.

PAGE 2 -    MEMORANDUM IN SUPPORT OF HIS EMERGENCY MOTION FOR A
                  PROTECTIVE ORDER

returned home, the same car was sitting outside the Younessis' house again.  *Id.*  On that same

day, Mr. Younessi informed his employer of his and his wife's fear for their personal safety due

to the foregoing harassment.  *Id.*

Mr. Younessi's wife was frightened and intimidated by the man following her and

remaining outside the house.  *Id.* at ¶ 5.  She has also been embarrassed by the tactics, because

her neighbors were worried about the presence of the men and the Younessis felt obligated to

inform their neighbors that the private detectives were observing them.  *Id.*

On Thursday, January 10, 2008, counsel for Mr. Younessi called counsel for Freightliner

to discuss these intimidation tactics.  *See* Jan. 13, 2007 Corresp. fr. C. Krieger to S. Eggum, Ex.

2 hereto.  A voicemail message was left, but was not returned.  *See id.*  Freightliner's counsel

also did not respond to a letter addressing the same issues.  *Id.*

### III.  ARGUMENT

Under Federal Rule of Civil Procedure 26(c)(1), a court may enter a protective order to

prevent a party or person from suffering undue "annoyance, embarrassment, [or] oppression."

*See* Fed. R. Civ. P. 26(c)(1); *see also*, *e.g.*, *Pintos v. Pacific Creditors Ass'n*, 504 F.3d 792, 801

(9th Cir. 2007); *U.S. for the Benefit of P.W. Berry Co, Inc. v. General Electric Corp.*, 158 F.R.D.

161, 163 (D. Or. 1994).  Good cause exists for entry of the requested order due to the

unnecessary harassment to which Freightliner has subjected Mr. Younessi and his family.

Freightliner has alleged that Mr. Younessi took confidential information from

Freightliner nearly a year ago.  As Freightliner and its counsel are aware, Freightliner has already

litigated this issue, settled it and released its claims related against Mr. Younessi.  *See* Younessi's

Response to Freightliner's Motion for TRO.  In addition to the settlement agreement in which he

agreed to maintain the confidentiality of any Freightliner information, Mr. Younessi signed a

sworn statement that he had not and would not disclose any confidential information of

Freightliner's.  *See* Settlement Agreement, Ex. 3.  Tellingly, Freightliner has *not* alleged that

PAGE 3 -    MEMORANDUM IN SUPPORT OF HIS EMERGENCY MOTION FOR A
                    PROTECTIVE ORDER

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

Mr. Younessi violated the earlier settlement agreement or that he has disclosed any Freightliner confidential information to any third-party.  *See* Complaint at *passim*.

In response to inquiries from Mr. Younessi's counsel, Freightliner has not offered a single legitimate reason as to why surveillance of Mr. Younessi's home and family is necessary or reasonable nor is any such explanation apparent.[3]   Instead, Freightliner's only apparent purpose is to annoy, embarrass and harass Mr. Younessi.

Furthermore, Mrs. Younessi is not a party to this litigation.  Freightliner has not alleged that Mrs. Younessi has done anything, or that she is even a potential witness in this litigation. *See id.*  There can be no conceivable purpose for Freightliner having its agents tailing her for twenty-four hours a day.  In fact, it would appear that the Oregon Rules of Professional Conduct prohibit such actions.  Oregon Rule of Professional Conduct 4.4(a) states as follows:

> In representing a client or the lawyer's own interests, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, harass or burden a third person, or knowingly use methods of obtaining evidence that violate the legal rights of such a person.

O.R.P.C. 4.4(a).  To the extent that Freightliner claims that Mrs. Younessi is a potential witness, their tactics are even more inexcusable, as the only purpose can be to intimidate Mrs. Younessi. And these tactics appear to be working, as Mrs. Younessi is in fear for her personal safety.[4]

---

[3] As Mr. Younessi was served with process at his place of business, there is simply no need for a private detective to be stationed outside his house around the clock days after service was effectuated.

[4] The stalking statutes of both Oregon and Illinois also prohibit the actions of Freightliner's agents.  For example, Oregon's stalking statute defines "stalking" as "intentionally, knowingly or recklessly engag[ing] in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person."  *See* ORS 30.866(1).  "Contact" is defined as "coming into the visual or physical presence of the other person; following the other person…[or] waiting outside the home, property, place of work or school of the other person or of a member of that person's family or household."  *See* ORS 163.730; *see also Schiffner v. Banks*, 33 P.3d 701, 706 (Or. Ct. App. 2001) (finding that a person who followed the victim to her house, waited for her outside and then watched her leave both "followed" and "came within his visual or physical presence" for the purpose of ORS 163.730 and thus had engaged in "contact").

PAGE 4 -   MEMORANDUM IN SUPPORT OF HIS EMERGENCY MOTION FOR A
                  PROTECTIVE ORDER

Mr. Younessi has every reason to believe that Freightliner will continue its tactics for the foreseeable future unless this Court intervenes.  Freightliner's harassment of both Mr. Younessi and his wife serves no purpose other than improper oppression and intimidation under the law.

### IV.  CONCLUSION

WHEREFORE, Mr. Younessi respectfully requests that this Court enter a protective order requiring Freightliner to cease any and all surveillance of Mr. Younessi, any member of his immediate family, and his house; immediately remove any of its agents currently engaged in surveilling or following Mr. Younessi or any member of his family; and any other relief this Court deems necessary.

DATED:  January 14, 2008

LANE POWELL PC


By___/s/  Bruce C. Hamlin_____
    Bruce C. Hamlin, OSB No. 79254
    Telephone:  503.778.2158
Attorneys for Defendant Ramin Younessi

Mark S. Mester, *pro hac vice* pending
mark.mester@lw.com
Cameron R. Krieger, *pro hac vice* pending
cameron.krieger@lw.com
**LATHAM & WATKINS LLP**
233 S. Wacker Drive, Suite 5800
Chicago, Illinois  97205


PAGE 5 -   MEMORANDUM IN SUPPORT OF HIS EMERGENCY MOTION FOR A
                PROTECTIVE ORDER

# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF OREGON

FREIGHTLINER LLC, a Delaware limited
liability company,

          Plaintiff,

    v.

RAMIN YOUNESSI,

          Defendant.

No. CV 08-0031 ST

**DECLARATION OF KARLA YOUNESSI**

I, Karla Younessi, under penalty of perjury, declare pursuant to 28 U.S.C. § 1746 as
follows:

1.     I am the wife of Ramin Younessi.

2.     On Monday, January 7, 2008, my husband observed a man sitting in a car
opposite the residence I share with my husband in Naperville, Illinois. The man remained sitting
in the car, watching our house, for hours. At some point a different car with a different person
took over from the first man. Over the next several days, a car with an individual in it remained
outside our house twenty-four hours a day. The individuals had laptops open in the car with
them.

3.     On the evening of Tuesday, January 8, 2008, a neighbor of ours approached the
man sitting in the car to ask what he was doing. He told her that he was a private detective. He
also stated that he had informed the Naperville, Illinois, police department that he was
conducting surveillance in the area. That same night, my husband contacted the Naperville

police, who confirmed that a private detective had informed them he would be conducting surveillance.

4.     On Wednesday, January 9, 2008, I left the house to go to a doctor's appointment. As I left the house, the man in the car made a U-turn to follow me.   He followed me to the doctor's office.  When I returned home from the doctor's office, this same man who had followed me was again outside our house.  I was so alarmed by the man following me that my husband informed his employer of our fear for our personal safety.

5.     Since the surveillance of my home and myself has begun, I have felt afraid, harassed, and intimidated.  I have felt embarrassed because all my neighbors have been aware of the surveillance and were themselves concerned about the presence of a series of unknown men sitting in cars on our street twenty-four hours a day.

I declare under penalty of perjury that the foregoing is true and correct and that I am prepared to testify to the matters contained herein.

Executed this _14_th day of January, 2008

Karla Younessi

Subscribed and sworn to before me
this __14th__ day of __January__, 2008

_____
Notary Public

```
OFFICIAL SEAL
JOAN M MICHELI
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/30/10
```

CH\999661.1

# EXHIBIT K

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DAIMLER TRUCKS NORTH AMERICA LLC, a Delaware limited liability company,**<br><br>Plaintiffs,<br><br>v.<br><br>**RAMIN YOUNESSI, an Illinois resident,**<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**No. 08-CV-0031-HA**

**Judge Ancer L. Haggerty**

### YOUNESSI'S OBJECTIONS AND RESPONSES TO DAIMLER'S FIRST SET OF INTERROGATORIES REGARDING YOUNESSI'S RACE COUNTERCLAIM

Ramin Younessi ("Defendant" or "Younessi"), by and through his attorneys, hereby responds to Daimler Trucks North America LLC's ("Daimler's") First Set of Interrogatories as set forth below.

### GENERAL OBJECTIONS

1.    Younessi objects to the Definitions and Instructions set forth by Daimler to the extent that they purport to impose duties or obligations on Younessi that are greater than or inconsistent with the applicable requirements of the Federal Rules of Civil Procedure or any other applicable laws or rules.

2.    Younessi objects to the Interrogatories to the extent that they seek information and identification of facts not in the possession, custody or control of Younessi.

3.    Younessi further objects to the Interrogatories served by Daimler on the grounds that the documents and/or information sought by said Interrogatories can be obtained from other sources that are more convenient, less burdensome and/or less expensive.

4.   Younessi further objects to the Interrogatories served by Daimler to the extent said Interrogatories seek documents and/or information already in the possession, custody and control of Daimler.

5.   Younessi objects to the Interrogatories to the extent that they seek information protected from disclosure by the attorney-client privilege and/or other applicable privileges.

6.   Younessi further objects to the Interrogatories to the extent that they seek information and/or material prepared in anticipation of litigation and/or for trial, including but not limited to information or material containing or reflecting the mental impressions, conclusions, opinions and/or legal theories of attorneys and/or other representatives of Younessi.

7.   Younessi objects to the Interrogatories to the extent that they seek information that is not relevant to the subject matter of this action, not admissible at trial, and/or not reasonably calculated to lead to the discovery of admissible evidence.

8.   Younessi objects to the Interrogatories to the extent that they call for the identification of "all" documents "concerning" a particular subject matter, on the grounds that they are overbroad, unduly burdensome, not relevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

9.   Younessi objects to the Interrogatories to the extent that they are vague, ambiguous, and/or otherwise incapable of reasonable ascertainment.

10. Younessi objects to the Interrogatories to the extent that they assume facts that do not exist or are otherwise incorrect.

11. Younessi further objects to the Interrogatories served by Daimler to the extent said Interrogatories seek to require Younessi to provide any information and/or documents beyond what is available to Younessi at present from a reasonable search of those locations

where responsive information and/or documents can reasonably be expected to be located, on the grounds that such discovery would be unreasonably cumulative and unduly burdensome.

12. Younessi further objects to the Interrogatories served by Daimler on the grounds that Daimler entered into a settlement agreement with Younessi on April 24, 2007, the purpose of which was to resolve this dispute. Younessi has, in turn, fully complied with its obligations under that settlement agreement, and the instant Interrogatories and underlying new lawsuit are inconsistent with the settlement agreement to which the parties previously agreed.

13. Younessi reserves the right to amend or supplement these objections and responses as further information is gathered during discovery, and Younessi makes these objections and responses without prejudice to such future amendment or supplementation.

## SPECIFIC OBJECTIONS AND RESPONSES

Younessi incorporates each of his General Objections as and for his objections to the Interrogatories served by Daimler. Subject to and without waiving those objections, International further objects and responds to Daimler's Interrogatories as follows:

**INTERROGATORY NO. 1:** **State each fact** that supports in turn each allegation appearing in ¶¶ 20, 21, 22, 23, 24, 25, 26, 27 and 53 of your amended counterclaim.

**RESPONSE NO. 1:**

Younessi objects to Interrogatory No. 1 on the grounds that it is compound and unduly burdensome, seeks information that is solely within Daimler's possession, custody and control, and seeks information that is protected by the attorney-client and work product privileges.

Subject to his General Objections and the foregoing specific objections, Younessi states that over the years of his career at Daimler he was told on several occasions by the Chief Executive Officer of Daimler, Chris Patterson, and by Daimler's former Chief Executive Officer, Jim Hebe, that Younessi would not be promoted because he is not German and because

3

Daimler's parent company, Daimler AG, wanted to limit the number of individuals of non-German descent in Daimler's more senior management. For example, Younessi was told by Jim Hebe that the management of Daimler AG thought of him as a "Turk" and that "Turks" were perceived negatively by the Germans. Daimler's former CEO Jim Hebe told Younessi that, during high-level meetings in Germany where candidates for promotion were nominated, members of the Executive Management Development team, including Andreas Renschler, of Daimler AG referred to Younessi as a "Turk," used derogatory racial slurs when discussing Younessi, and indicated that he was not promotable because of his ethnic background. These meetings always involved discussions of a candidate's race, gender, or age. When Hebe objected to these discussions, he was told that it was Germany, not America, and therefore Daimler AG was allowed to take those factors into consideration. Hebe was also told by Dieter Zetsche, CEO of Daimler AG, that Hebe could not promote an American into Daimler's then-open Chief Financial Officer position because either the CEO or the CFO of Daimler had to be German. Daimler's current Chief Operating Officer, Roger Nielsen, also told Younessi that the Germans at Daimler's parent company did not like and "looked down on Turks."

Younessi was the only ethnic or racial minority of the approximately forty individuals at the E2 level at Daimler Trucks. Of the eight individuals at the E1 level, none were racial minorities and four or more were of German descent. Above the E1 level were three individuals, none of whom were racial minorities and at least two of which were of German descent.

In 2005, Younessi was qualified for a promotion into the senior management of Daimler as Senior Vice President of Engineering and Technology. The Chief Executive Officer of Daimler, Chris Patterson, told him that he was qualified and indicated that he was being considered for the promotion. Other employees at Daimler considered Younessi the "heir

apparent" to that position and it was expected that he would be promoted into the position. However, later in 2005, Patterson told Younessi that Younessi would not be promoted because Daimler wanted more Germans as part of the executive management team and would not allow any more non-Germans to be part of that elite group. Instead, the position was filled by a German, Elmar Boeckenhoff, who was less qualified than Younessi for the position. Both during and after Younessi's employment at Daimler, Patterson on many occasions expressed verbally and in writing his frustration with and distaste of the German ownership of Daimler.

In late 2006 or early 2007, Elmar Boeckenhoff and, later, the head of Daimler Truck Group Germany's Human Resources Department, Otto Arens, told Younessi that Daimler wanted to transfer Younessi to Japan, to work for more than three years as the Senior Vice President of Engineering for Mitsubishi-Fuso. He was told by Otto Arens, in the presence of a second German human resources representative, that it would "look good" to send a non-German to Japan in a management role.

Because Daimler refused to promote Younessi based on his race and ethnicity, Younessi was forced to resign from Daimler and obtain employment at a company that offered greater opportunity for advancement, rather than a "glass ceiling."

In 2007, on information and belief, Daimler replaced Younessi with a German citizen, Hannes Moeller.

On or about January 8, 2008, Younessi and his wife became aware that a series of strange men were sitting in vehicles twenty-four hours a day outside the Younessi's home on a quiet suburban street.

Younessi contacted the Naperville, Illinois, police to report the series of men watching his home. The Naperville police told Younessi that a private detective had informed the police that he would be operating in the area on a "workers' compensation" matter.

On or about January 10, 2008, Karla Younessi left her home to go to a doctor's appointment. At the time she left the house, one private detective was parked across the street in front of the home. As she pulled away, a second private detective, who had previously been seen at the house, approached. On seeing Mrs. Younessi driving away, the first detective did a u-turn and followed Mrs. Younessi to her doctor's office. When Mrs. Younessi returned home, that second private detective was again parked outside the Younessi's home.

Between at least January 7 and January 10, 2008, the private detectives surveilled the Younessi's residence from cars parked outside the home. During that time, they operated laptop computers and, on information and belief, took surveillance footage and photographs of the Younessis and their home. This behavior caused the Younessis great personal stress and embarassment as it was an invasion into the private space of their home. Furthermore, since the Younessis had just recently moved into their quiet suburban neighborhood, they suffered emotional distress from worrying about what the neighbors thought of them and fearing that their reputation would be tarnished.

On March 23, 2007, Daimler sued Younessi in the Northern District of Illinois and alleged violations of trade secrets law and breach of a confidentiality agreement between Daimler and Younessi. On March 30, 2007, Daimler voluntarily dismissed that lawsuit due to the fact that it had misstated its own citizenship for purposes of diversity jurisdiction. On April 2, 2007, Daimler sued Younessi in the Circuit Court for DuPage County, Illinois, alleging violations of trade secrets law and breach of a confidentiality agreement between Daimler and

Younessi.  The parties negotiated a settlement of that lawsuit, under which Daimler agreed to

release its claims; that agreement was executed by the parties as of April 22, 2007.  Daimler filed

this lawsuit on January 7, 2008, in breach of that agreement.

**INTERROGATORY NO. 2:**   For each fact described in response to Interrogatory No. 1,
**identify** all documents you relied on in preparing your response and **identify** all documents that
reflect or relate to the allegations of ¶¶ 20, 21, 22, 23, 24, 25, 26, 27 and 53 of your amended
counterclaim.

**RESPONSE NO. 2:**

Younessi objects to Interrogatory No. 2 on the grounds that it is overly burdensome and

unnecessarily duplicative of Daimler's Second Set of Requests for Production, and that it is

compound.

Subject to his General Objections and the foregoing specific objections, to the extent

documents responsive to Daimler's Second Set of Requests for Production are within the

possession, custody and control of Younessi, they will be produced.

**INTERROGATORY NO. 3:**   **Identify** all persons with knowledge of the allegations in ¶¶ 20,
21, 22, 23, 24, 25, 26, 27 and 53 of your amended counterclaim.

**RESPONSE NO. 3:**

Younessi objects to Interrogatory No. 3 on the grounds that it is compound in that it

requests detailed responses to allegations that are unrelated to each other, seeks information that

is solely within the possession, custody and control of Daimler, and seeks information that is

subject to the attorney-client and work product privileges.

Subject to his General Objections and the foregoing specific objections, Younessi states

he has knowledge of all the allegations in his Amended Counterclaim.  He further states that

Dieter Zetsche, Andreas Renschler, Chris Patterson, Elmar Boeckenhoff, Otto Arens, the second

German human resources representative who attended the meeting with Arens and Younessi, Jim

Hebe, and Roger Nielsen have knowledge of the allegations contained in Paragraphs 20-22 of the

Amended Counterclaim.

Younessi further states that Karla Younessi, Tim Smith, Luigi Castillo, Alberto Gerena,

the John Rea Detective Agency, and the Naperville police department have knowledge of the

allegations contained in Paragraphs 23-27 of the Amended Counterclaim.

Younessi further states that Chris Patterson has knowledge of the allegations contained in

Paragraph 53 of the Amended Counterclaim.

**INTERROGATORY NO. 4:**  For each person listed in response to Interrogatory No. 3,
describe in detail the nature and/or substance of the information you believe that person
possesses, **identify** relevant oral communications you and any others on your behalf have had
with the person(s) listed, **identify** all documents you relied upon in preparing your response, and
**identify** all documents that reflect or relate to communications with the person(s) listed.

**RESPONSE NO. 4:**

Younessi objects to Interrogatory No. 4 on the grounds that it is compound, vague,

unduly burdensome, seeks information that is irrelevant and is not calculated to lead to the

discovery of admissible evidence, and seeks information that is protected by the attorney-client

and work product privileges.

Subject to his General Objections and the foregoing specific objections, Younessi states

that Dieter Zetsche, Andreas Renschler, Chris Patterson, Elmar Boeckenhoff, Otto Arens, the

second German human resources representative who attended the meeting with Arens and

Younessi, Jim Hebe, and Roger Nielsen have personal knowledge of Daimler's discriminatory

policies and practices based on race, ancestry and ethnic characteristics, as described in response

to Interrogatory No. 1.

Younessi further states that he, Karla Younessi, Tim Smith, Luigi Castillo, Alberto

Gerena, the John Rea Detective Agency, and the Naperville police department have personal

knowledge of the invasive actions of the private investigators hired by Daimler and/or Daimler's

agents.  The information possessed by Younessi and Karla Younessi is described in response to

Interrogatory No. 1.  The information possessed by the third-parties will be developed during

discovery.

**INTERROGATORY NO. 5:**  For each oral communication identified in response to
Interrogatory No. 3, **identify** all witnesses to the oral communications, describe in detail the
nature and/or substance of the information you believe that witness possesses, **identify** relevant
oral communications you or others on your behalf have had with the witness(es) listed, **identify**
all documents you relied upon in preparing your response, and **identify** all documents that reflect
or relate to the communication described.

**RESPONSE NO. 5:**

Younessi objects to Interrogatory No. 5 on the grounds that it is compound, vague,

unduly burdensome, seeks information that is irrelevant and is not calculated to lead to the

discovery of admissible evidence, and seeks information that is protected by the attorney-client

and work product privileges.

Subject to his General Objections and the foregoing specific objections, Younessi states

that witnesses to communications described in response to Interrogatory No. 1 include Younessi,

Dieter Zetsche, Andreas Renschler, Chris Patterson, Elmar Boeckenhoff, Otto Arens, the second

German human resources representative who attended the meeting with Arens and Younessi, Jim

Hebe, and Roger Nielsen, Karla Younessi, Tim Smith, Luigi Castillo, Alberto Gerena, the John

Rea Detective Agency, and the Naperville police department.

**INTERROGATORY NO. 6:**  **Identify** all persons employed by, or formerly employed by,
Daimler Trucks and Daimler Chrysler AG who communicated orally or in writing with you, or
with anyone else, on the subject of your race or ethnicity, or on the subject of Daimler Trucks'
alleged preference for promoting Germans.

**RESPONSE NO. 6:**

Younessi objects to Interrogatory No. 6 on the grounds that it is overly broad, unduly

burdensome, seeks information that is solely in the possession, custody and control of Daimler,

and that is duplicative of other interrogatories.

Subject to his General Objections and the foregoing specific objections, Younessi states that Elmar Boeckenhoff, Otto Arens, Jim Hebe, Roger Nielsen, and Chris Patterson told Younessi that Daimler AG had negative perceptions of "Turks" and that he would not be promoted because he is not German because Daimler AG did not want any more non-Germans in management roles. Tim Smith has knowledge of Daimler's discrimination in favor of Germans.

**INTERROGATORY NO. 7:** For each person listed in response to Interrogatory No. 6, describe in detail the nature and/or substance of the information you believe that person possesses, **identify** relevant oral communications you and others on your behalf have had with the person(s) listed, **identify** all documents you relied upon in preparing your response, and **identify** all documents that reflect or relate to communications with the person(s) listed.

**RESPONSE NO. 7:**

Younessi objects to Interrogatory No. 7 on the grounds that it is unduly burdensome, seeks information that is protected by the attorney-client and work product privileges and that it seeks information that is solely in the possession, custody and control of Daimler.

Subject to his General Objections and the foregoing specific objections, Younessi incorporates his responses to Interrogatories 1, 2, 3, and 4. In addition, Younessi states that Chris Patterson came to Younessi's house to explain that Younessi would not receive the promotion that Boeckenhoff was eventually given because of Younessi's race, and during that conversation begged Younessi not to leave because he was not receiving the promotion. Younessi agreed to stay at Daimler Trucks for one additional year. Patterson also indicated that Younessi could potentially have some of Daimler's dealerships since he was not receiving the promotion. Younessi never was given the opportunity to own any Daimler dealership.

**INTERROGATORY NO. 8:** **Identify** all documents you relied upon in preparing your response to Interrogatory No. 6, and **identify** all documents that reflect or relate to the facts you describe in response to Interrogatory No. 6.

**RESPONSE NO. 8:**

Younessi objects to Interrogatory No. 8 on the grounds that it seeks information protected by the attorney-client and work product privileges, seeks information that is solely in the possession, custody and control of Daimler, and is duplicative of Daimler's Second Set of Requests for Production.

Subject to his General Objections and the foregoing specific objections, Younessi states that responsive documents, to the extent such documents are in his possession, custody and control, will be produced.

**INTERROGATORY NO. 9:**  **Identity** all witnesses to any oral communications you describe in response to Interrogatory No. 6, and **identify** all witnesses with knowledge of any oral or written communications that relate to your race or ethnicity.

**RESPONSE NO. 9:**

Younessi objects to Interrogatory No. 9 on the grounds that it is compound, vague, unduly burdensome, seeks information that is irrelevant and is not calculated to lead to the discovery of admissible evidence, seeks information that is solely in the possession, custody and control of Daimler, and is duplicative of Daimler's other requests.

Subject to his General Objections and the foregoing specific objections, and to the extent such knowledge is in his personal possession, Younessi incorporates by reference his response to Interrogatories No. 5 and No. 6.

**INTERROGATORY NO. 10:**  Describe in detail any and all available promotions you contend you were qualified for, and/or wished to receive but did not receive, in violation of law, including dates you contend the promotion(s) was/were available, the job duties, reporting responsibilities, the total compensation of the promotion(s) you claim you should have received, and **identify** the person who received the promotion(s) instead of you.

**RESPONSE NO. 10:**

Younessi objects to Interrogatory No. 10 on the grounds that it seeks information that is solely in the possession, custody and control of Daimler.

11

Subject to his General Objections and the foregoing specific objections, Younessi states that he was qualified for the position of Senior Vice President of Engineering and Technology when that position was available in 2005. He spoke with Chris Patterson, Daimler's Chief Executive Officer, about the position, and Patterson agreed he was qualified and told him that he was being considered for promotion. Other Daimler employees assumed and expected that Younessi would receive the position when the individual who vacated it (also German) retired. Later, however, Patterson told Younessi that he would not be promoted because of his race and ethnicity. Elmar Boeckenhoff, a native of Germany, was given the position instead. Boeckenhoff was not only less qualfied than Younessi, but ill-suited to the position.

**INTERROGATORY NO. 11:** Describe all efforts you made to obtain any promotions you claim were unlawfully denied, state each reason given to you for Daimler Trucks' alleged decision not to promote you, and **identify** all documents that reflect your efforts and communications.

**RESPONSE NO. 11:**

Younessi objects to Interrogatory No. 11 on the grounds that it seeks information that is solely in the possession, custody and control of Daimler.

Subject to his General Objections and the foregoing specific objections, Younessi states that in 2005 he spoke with Chris Patterson about the promotion to Senior Vice President of Engineering and Technology. Although Patterson stated that he was qualified for the promotion, Patterson told him that he would not be promoted because of his race and ethnicity. No other reason was given for Daimler's failure to promote Younessi.

**INTERROGATORY NO. 12: Identify** all persons with knowledge of the facts you described in response to Interrogatory Nos. 10 and 11, and identify all oral communications that reflect or relate to those facts.

**RESPONSE NO. 12:**

Younessi objects to Interrogatory No. 12 on the grounds that it is duplicative of

Daimler's other requests, and that it seeks information that is already in the possession, custody

and control of Daimler.

Subject to his General Objections and the foregoing specific objections, Younessi

incorporates by reference his responses to Interrogatory No. 5 and No. 6.

**INTERROGATORY NO. 13:** **Identify** all documents you relied upon in preparing your response to Interrogatory Nos. 10 and 11, and **identify** all documents that reflect or relate to the facts you describe in your response to Interrogatory Nos. 10 and 11.

**RESPONSE NO. 13:**

Younessi objects to Interrogatory No. 13 on the grounds that it is duplicative of

Daimler's other requests, including its Second Set of Requests for Production and seeks

information that is solely within the possession, custody and control of Daimler.

Subject to his General Objections and the foregoing specific objections, Younessi states

that responsive documents, to the extent such documents are in his personal possession, custody

and control, will be produced.

**INTERROGATORY NO. 14:** **Identify** all oral communications with Elmar Boeckenhoff and Otto Arens that support your contention that Daimler Trucks wished to transfer you to Japan and that it would "look good" to send a "non-German."

**RESPONSE NO. 14:**

Younessi objects to Interrogatory No. 14 on the grounds that it is duplicative of

Daimler's other requests and seeks information that is in the possession, custody and control of

Daimler.

Subject to his General Objections and the foregoing specific objections, Younessi

incorporates by reference his response to Interrogatory No. 4.

**INTERROGATORY NO. 15:** **Identify** all documents you relied upon in preparing your response to Interrogatory No. 14, and **identify** all documents that reflect or relate to Elmar

13

Boeckenhoff's and/or Otto Arens' alleged statements that Daimler Trucks wished to transfer you to Japan and that it would "look good" to send a "non-German."

**RESPONSE NO. 15:**

. Younessi objects to Interrogatory No. 15 on the grounds that it is duplicative of

Daimler's other requests, including its Second Set of Requests for Production and seeks

information that is solely within the possession, custody and control of Daimler.

Subject to his General Objections and the foregoing specific objections, Younessi states

that responsive documents, to the extent such documents are in his personal possession, custody

and control, will be produced.

**INTERROGATORY NO. 16:** **Identify** all witnesses with knowledge of your contention that Elmar Boeckenhoff and Otto Arens stated that Daimler Trucks wished to transfer you to Japan and that it would "look good" to send a "non-German."

**RESPONSE NO. 16:**

Younessi objects to Interrogatory No. 14 on the grounds that it is duplicative of

Daimler's other requests and seeks information that is in the possession, custody and control of

Daimler.

Subject to his General Objections and the foregoing specific objections, Younessi

incorporates by reference his response to Interrogatories No. 3 and 4.

**INTERROGATORY NO. 17:** Describe with particularity the amount of wages and or compensation you seek in paragraph two of your prayer for relief, including the hourly rate you claim in your prayer for relief, the start date from which you allege the hourly rate is calculated, and the basis for the hourly rate chosen by you in claiming such a judgment.

**RESPONSE TO NO. 17:**

Younessi objects on the grounds that Interrogatory No. 17 seeks information that is solely

within the possession, custody and control of Daimler.  Discovery is on-going and Younessi will

supplement his response accordingly.

**INTERROGATORY NO. 18:**     **Identify** all documents that establish the amount of all compensation you have earned at Daimler Trucks from the date you claim you should have been given a promotion and the amount of all compensation you have earned at International Truck & Engine Corporation, including your hourly rates at International, from March 2007 to the current time.

**RESPONSE NO. 18:**

Younessi objects to Interrogatory No. 12 on the grounds that it seeks information that is

in the possession, custody and control of Daimler and is duplicative of Daimler's other requests.

Subject to his General Objections and the foregoing specific objections, Younessi states

that responsive documents, to the extent not already produced and to the extent such documents

are within his possession, custody and control, will be produced.

**INTERROGATORY NO. 19:**     **Identify** all documents you relied upon in preparing your responses to Interrogatory No. 18, and **identify** all documents that support your responses to Interrogatory No. 18.

**RESPONSE NO. 19:**

Younessi objects to Interrogatory No. 19 on the grounds that it is duplicative of

Daimler's other requests and seeks information that is protected by the attorney-client and work

product privileges.

Subject to his General Objections and the foregoing specific objections, Younessi states

that responsive documents, to the extent not already produced and to the extent such documents

are within his possession, custody and control, will be produced.

**INTERROGATORY NO. 20:**  **Identify** every medical, psychiatric, psychological,  therapeutic or other health care practitioner of any kind from whom care was sought and/or received for the last ten years to the current time, and for each and every illness, psychiatric, psychological, emotional or medical condition that you have experienced within that past ten (10) years, describe with particularity the illness, psychiatric, psychological, emotional or medical condition, and **identify** the dates of treatment, and the resolution and/or prognosis.

**RESPONSE NO. 20:**

15

Younessi objects to Interrogatory No. 20 on the grounds that it is overbroad and unduly burdensome, and seeks information that is irrelevant and is not calculated to lead to the discovery of admissible evidence.

Dated:  May 15, 2008

Respectfully submitted,

One of the Attorneys for Defendant Ramin Younessi

Mark S. Mester
Robin M. Hulshizer
Cameron R. Krieger
LATHAM & WATKINS LLP
233 South Wacker Drive
Suite 5800 Sears Tower
Chicago, Illinois 60606
(312) 876-7700

## ATTESTATION

I, Ramin Younessi, state under oath and under the penalties of perjury as provided by law that I have reviewed the Response to Daimler's First Set of Interrogatories and confirm that based upon information available to me these answers are true and correct.

Ramin Younessi

Sworn and subscribed to me
this 15th day of May, 2008

Notary Public

My Commission Expires:

[Notorial Seal]

OFFICIAL SEAL
JO - ELLA CICERO
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 2/24/2010

16

## <u>CERTIFICATE OF SERVICE</u>

I, Robin M. Hulshizer, hereby certify that I caused a copy of the foregoing

**YOUNESSI'S OBJECTIONS AND RESPONSES TO DAIMLER'S FIRST SET OF**

**INTERROGATORIES REGARDING YOUNESSI'S RACE COUNTERCLAIM** to be

served by electronic mail and pre-paid U.S. Mail upon:

> Susan K. Eggum
> Cosgrave Vergeer Kester LLP
> 805 SW Broadway, 8th Floor
> Portland, Oregon 97205

on this 15th day of May, 2008.

Robin M. Hulshizer

## ATTESTATION

I, Ramin Younessi, state under oath and under the penalties of perjury as provided by law that I have reviewed the Response to Daimler's First Set of Interrogatories and confirm that based upon information available to me these answers are true and correct.

_____
Ramin Younessi

Sworn and subscribed to me
this 15th day of May, 2008

_____
Notary Public

My Commission Expires:

[Notorial Seal]

"OFFICIAL SEAL"
JO - ELLA CICERO
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 2/24/2010

16

# EXHIBIT L

**Bruce C. Hamlin**, OSB No. 79254
hamlinb@lanepowell.com
**LANE POWELL PC**
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone:  503.778.2100
Facsimile:  503.778.2200

Mark S. Mester, admitted *pro hac vice*
mark.mester@lw.com
Cameron R. Krieger, admitted *pro hac vice*
cameron.krieger@lw.com
Alan Devlin, admitted *pro hac vice*
alan.devlin@lw.com
Robin M. Hulshizer, admitted *pro hac vice*
Robin.hulshizer@lw.com
**LATHAM & WATKINS LLP**
233 S. Wacker Drive, Suite 5800
Chicago, Illinois  60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Attorneys for Defendant Ramin Younessi

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **DAIMLER TRUCKS NORTH AMERICA LLC,** a Delaware limited liability company**,** | No. 08-CV-0031-HA |
| Plaintiff, | Defendant Ramin Younessi's **RESPONSE TO PLAINTIFF'S RULE 12(B)(6) MOTION TO DISMISS COUNT V OF YOUNESSI'S AMENDED COUNTERCLAIM** |
| v. | |
| **RAMIN YOUNESSI,** an Illinois resident**,** | |
| Defendant. | |

PAGE 1 -   RESPONSE TO PLAINTIFF'S RULE 12(B)(6) MOTION TO DISMISS COUNT V
OF YOUNESSI'S AMENDED COUNTERCLAIM

Defendant Ramin Younessi ("Younessi"), by and through his attorneys, hereby responds as follows to the Motion to Dismiss Count V of Younessi's Amended Counterclaim filed by Plaintiff Daimler Trucks North America LLC ("Daimler").

# I. **INTRODUCTION**

This Court should deny Daimler's motion to dismiss on any of three separate grounds.

First, as this case is in federal court, only notice pleading is required. *See Erikson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). Daimler's Motion is premised on its position that Younessi has failed to state sufficient facts giving rise to his claim. As its support, Daimler emphasizes a single Illinois state case, where a different, heightened pleading standard was applied. Thus, Daimler asks this Court to compare apples to oranges.

Unlike the federal courts, Illinois is a fact-pleading jurisdiction that requires a plaintiff to allege actual facts stating all the elements of the asserted cause of action. *See Kumar v. Bornstein*, 354 Ill. App. 3d 159, 164-65 (2004). Of course, there is no such requirement in federal court, which requires notice pleading and only a "short and plain statement of the claim." *See* Fed. R. Civ. P. 8(a)(2). Thus, the Illinois case does not support Daimler's argument and the lone federal case cited by Daimler, namely *Acuff v. IBP, Inc.*, 77 F. Supp. 2d 914, 918, 924 (C.D. Ill. 1999), does not address the sufficiency of pleadings.

Second, and contrary to Daimler's arguments, ample authority demonstrates that Younessi *has* adequately pled a cause of action for invasion of privacy. *See* disc. *infra* at 3-9.

Third, even if the Illinois case relied on by Daimler were illuminative on the standard to be applied by this Court -- which it is not -- it is nonetheless distinguishable.[1] Other cases setting

---

[1] Additionally, it is not at all clear why Daimler cited Illinois law. Unless there is an actual conflict between Illinois and Oregon law on the issue of intrusion upon seclusion, the latter applies in this Court. *See Lilienthal v. Kaufman*, 395 P.2d 543, 544 (Or. 1964) (" Before entering the choice-of-law area . . . we must determine whether the laws of the states . . . are in conflict"). If Daimler believes that there is a conflict and that Illinois law applies, it is incumbent on Daimler to identify material differences in the law. *See Angelini v. Delaney*, 966 P.2d 223, 227 (Or. Ct. App. 1998) ("Oregon courts first look to whether there is a material difference between Oregon substantive law and the law of the other forum. If there is no material

(continued . . .)

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

forth the elements for a claim for invasion of privacy based on intrusion upon seclusion provide more appropriate guidance to this Court.

And finally, because Daimler has resisted all discovery to date regarding the private detectives, it is not appropriate to dismiss this count at this stage.  At a minimum, discovery should be allowed.  *See, e.g.*, *Huskey v. National Broadcasting Co., Inc.* 632 F. Supp. 1282, 1288 (N.D. Ill. 1986) (determining whether an area is sufficiently private to support a claim for intrusion on seclusion is a factual question for trial); *Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.2d 208, 213 (9th Cir. 1957) (noting the importance of "discovery procedures . . . [in] the sifting of allegations and the determination of the legal sufficiency of an asserted claim"); *Hickman v. Taylor*, 329 U.S. 495, 501 (1947); *Libas Ltd. v. Carillo*, 329 F.3d 1128, 1130 (9th Cir. 2003).

## II.  <u>STANDARD OF REVIEW</u>

In reviewing a Rule 12(b)(6) motion to dismiss, this Court must accept as true all well-pleaded facts in the counterclaim and draw all inferences in Younessi's favor.  *See Everest and Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994).  Since Daimler's motion to dismiss confuses the relevant pleading standards, it is important to clarify the pertinent law. In federal court, a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  In other words, federal courts, unlike Illinois state courts, merely require notice-pleading.  *See Erikson v. Pardus*, 127 S. Ct. 2197, 2200 (2007); *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 863 (7th Cir. 2002) (in assessing a 12(b)(6) motion, "federal pleading rules, which require that a complaint only give notice the plaintiff's claim, and not that it spell out the facts underlying the claim,…govern even in diversity suits").

_____

(. . . continued)
difference . . . Oregon law applies.  Thus, it was incumbent on . . . the proponents of [the other forum's] law, to identify material differences in the applicable substantive law").  Daimler has not even attempted to elucidate for the Court why it chose to rely exclusively on Illinois law.

PAGE 3 -    RESPONSE TO PLAINTIFF'S RULE 12(B)(6) MOTION TO DISMISS COUNT V
            OF YOUNESSI'S AMENDED COUNTERCLAIM

In light of last year's Supreme Court decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), to survive a Rule 12(b)(6) motion, a complaint need only do two things. First, it must describe the claim in sufficient detail to grant the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *See Twombly*, 172 S. Ct. at 1964. Second, its allegations must plausibly suggest that the defendant has a right to relief, raising that possibility above a "speculative level." *See id.* at 1965. Younessi's count for invasion of privacy clearly meets and exceeds the federal pleading standard.[2]

## III.  DISCUSSION

Daimler argues that Younessi has failed to plead sufficient facts to state a claim, in particular by omitting facts demonstrating invasion of "any private place or activity." In support of this claim, Daimler focuses on a single Illinois state case, *Schiller v. Mitchell*, 357 Ill. App. 3d 435 (2d Dist. 2005).

## A.    Schiller is Inapposite Procedurally

Illinois is a fact-pleading state. *See*, *e.g.*, *Kumar v. Bornstein*, 354 Ill. App. 3d 159, 164-65 (2d Dist. 2004). As a result, a complainant in an Illinois court "must allege sufficient facts to state all the elements of the asserted cause of action" -- a requirement made clear by the very case Daimler seeks to rely on. *See Schiller*, 357 Ill. App. 3d at 439. Such a fact-pleading standard has no role in the federal courts, however, as has been emphasized by the Supreme Court. *See Erikson*, 127 S. Ct. at 2200; *see also*, *e.g.*, *Vincent v. City Colleges of Chicago*, 485 F.3d 919, 923-924 (7th Cir. 2007) ("Facts that substantiate the claim ultimately must be put into evidence, but the rule 'plaintiff needs to prove Fact Y' does not imply 'plaintiff must allege Fact Y at the outset.' That's the difference between fact pleading (which the courts of Illinois use) and claim pleading under Rule 8."); *Niemeyer v. Williams*, 2008 WL 906051 at *17, Case No. 07-1103 (March 31, 2008, C.D. Ill.) (comparing the Illinois and federal standards and stating that

---

[2] Post-*Twombly*, the Supreme Court has taken pains to emphasize that notice pleading remains the relevant standard in federal court. *See Erikson*, 127 S. Ct. at 2200.

PAGE 4 -    RESPONSE TO PLAINTIFF'S RULE 12(B)(6) MOTION TO DISMISS COUNT V
           OF YOUNESSI'S AMENDED COUNTERCLAIM

"in federal court, unlike state court, the Rules require notice pleading, not extensive fact pleading."). Indeed, post-*Twombly*, the Supreme Court has stressed that "specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and grounds upon which it rests.'" *Id.*

In *Schiller*, the Illinois court dismissed the claim for intrusion upon seclusion due to the factual inadequacy of the complaint. There is no question, however, that the court's decision was driven by the requirement of fact-pleading. In relevant part, and after stressing that "private facts must be alleged," the court held as follows:

> [P]laintiffs . . . have not pleaded that defendants' surveillance camera captured any private activity . . . the complaint does not explain why a passerby on the street . . . could not see what the camera saw only from a different angle. We conclude that plaintiffs have not pleaded facts that satisfy the privacy element of the tort of intrusion upon seclusion of another.

*Schiller*, 357 Ill. App. 3d at 441.

In federal court, a plaintiff does <u>not</u> have to state all factual elements of the asserted cause of action. *See* disc. *supra* at 2. Thus, the factual "inadequacies" identified in *Schiller* in fact provide no ground for dismissal under federal pleading standards. *See Vincent*, 485 F.3d at 923-924. Rather, all that is required is "a short and plain statement of the claim." *See* Fed. R. Civ. P. 8(a)(2).

Younessi easily meets this standard. Younessi has pled such facts as relevant dates and specific accounts of the offending behavior that he and his wife personally witnessed. *See* Younessi Counterclaim at ¶¶ 18, 28-32, 54-57. Given the circumstances of a stake-out of Younessi's house, likely involving at least surveillance by video and/or still photography, one can expect that discovery will demonstrate additional offending behavior. Under federal notice-pleading standards, Younessi has unquestionably granted Daimler "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S. Ct. at 1964. The claim is for intrusion upon seclusion, and the claim gives Daimler full notice of the grounds upon which it

PAGE 5 -   RESPONSE TO PLAINTIFF'S RULE 12(B)(6) MOTION TO DISMISS COUNT V
          OF YOUNESSI'S AMENDED COUNTERCLAIM

rests, namely the hiring and subsequent described conduct of the private investigators throughout and around the denoted period.[3]   Younessi's counterclaim most certainly meets the standard enunciated by the Ninth Circuit, in that it specifies "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).

**B.      Schiller is Inapposite Factually**

Younessi has also pleaded sufficient facts suggesting more than a "speculative" possibility of the right to relief.  *See Twombly*, 127 S. Ct. at 1965.   Even if *Schiller* were somehow applicable to the proceedings now before this Court,[4] however, the facts there at issue are highly distinguishable.  *Schiller* involved a feud between neighbors, one of whom set up a stationary video camera to film the exterior of the other's house.   That situation bears no resemblance to Daimler's actions, in which a series of strange men sat in vehicles outside the Younessi's home twenty-four hours a day for a series of days and followed Mrs. Younessi on daily errands.

This is also not a case involving a defendant investigating a personal injury or workers' compensation claim, where one could argue that the plaintiff has to some degree waived a right to privacy by bringing such a claim.[5]   *See, e.g., McLain v. Boise Cascade Corp.*, 271 Or. 549 (1975).   Younessi did not sue Daimler (quite the opposite, of course, since this lawsuit is the

---

[3] Younessi also believes that the investigators breached his privacy in additional ways known only to Daimler. This does not detract in any way from the legitimacy of his claim, however, because "[u]nder federal notice pleading, appellants are allowed to vary their theory to conform to proof presented." *See Johnson* v. *Barker*, 799 F.2d 1396, 1401 (9th Cir. 1986).

[4] As noted above, substantive Illinois law does not apply absent a showing by Daimler that material differences exist between Illinois and Oregon law with respect to the tort of intrusion upon exclusion. *See* disc. *supra* at 2, n.1.   And, of course, *Schiller* is obviously irrelevant as procedural authority.

[5] Interestingly, the private investigators hired by Daimler represented to the local police department in the town where Mr. Younessi lives (*i.e.*, Naperville, Illinois) that the purpose of and reasons for their surveillance of Mr. Younessi was to investigate a workers' compensation claim. *See* Younessi Counterclaim at ¶ 30. That, however, was a false representation, and the surveillance itself of Daimler's investigators was conducted under false pretenses. *See id.*

PAGE 6 -    RESPONSE TO PLAINTIFF'S RULE 12(B)(6) MOTION TO DISMISS COUNT V
            OF YOUNESSI'S AMENDED COUNTERCLAIM

third one filed by Daimler against Younessi in less than a year). In this lawsuit, similar to the previous lawsuits, Daimler alleges that in March 2007 Younessi removed documents from his office at Daimler. Daimler has never attempted to explain why it believes that having private detectives conduct twenty-four hour surveillance on Younessi was required. In fact, as this Court itself noted, "in this type of case [there is no] logical reason to have a private detective sitting outside the defendant's home and thereafter actually following the defendant's wife."[6] *See* Jan. 16, 2008 Hearing Tr. at 2.

Younessi also believes discovery may show that these detectives trespassed on the Younessi's property, followed Younessi and took still or video footage of Younessi inside his home and/or garage. These activities are certainly an intrusion into a person's privacy in a manner "highly offensive to a reasonable person." In any event, the question is one of fact, not of law, and thus is not appropriate for disposition on the pleadings. *See, e.g., Ruzicka Electric & Sons, Inc. v. Int'l Brotherhood of Electrical Workers*, 427 F.3d 511, 524 (8th Cir. 2005); *Huskey*, 632 F. Supp. at 1288 (denying motion to dismiss because whether plaintiff was "secluded" while in a public place is a question of fact for the jury).

## C. Case Law Shows That Younessi Has Stated a Valid Claim

As an initial matter, the body of cases on this tort demonstrate that the inquiry is highly factual and thus not amenable to summary disposition. *See, e.g., Ruzicka*, 427 F.3d at 524. Here, Younessi is entitled to discovery in order to determine what actions the private detectives took during their surveillance of him.

Even if it were determined after appropriate discovery that the detectives surveilled the Younessis' home from the street, did not watch or record the Younessis while they were inside the home and only followed the Younessis in public places, Younessi can still state a claim for

---

[6] As the Court may recall, Daimler's counsel refused to confirm or deny that Daimler had hired a private investigator to follow Mr. Younessi, even though counsel was able to comment on the scope and duration of the surveillance itself. *See id*.

PAGE 7 -    RESPONSE TO PLAINTIFF'S RULE 12(B)(6) MOTION TO DISMISS COUNT V
OF YOUNESSI'S AMENDED COUNTERCLAIM

intrusion upon seclusion.    The Restatement of Torts, which Oregon has adopted, defines "intrusion upon seclusion" as:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement of Torts at § 652B.  The comments to the Restatement go on to clarify that, in addition to a physical intrusion, intrusion upon seclusion

> may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires. It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents. The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined.

Restatement of Torts at § 652B(b).  Cases interpreting this language have held that an intrusion upon seclusion claim does not need to show that the expectation of privacy was "absolute or complete."  *See Sanders v. American Broadcasting Co.*, 978 P.2d 67, 71-72 (Cal. 1999).  As the court in *Sanders* held, the tort has been found even in cases where the complainant was followed in a public place or observed in a public place.  *See id.* (collecting cases).  The Northern District of Illinois stated that "[t]he mere fact a person can be seen by others does not mean that person cannot legally be 'secluded.'  [Plaintiff's] visibility to some people does not strip him of the right to remain secluded from others."  *Huskey*, 632 F. Supp. at 1288.

The Oregon case of *McLain v. Boise Cascade Corp.*, 271 Or. 549 (1975), while not directly on point with the current situation, is instructive.  There, the Oregon Supreme Court held that if "surveillance is conducted in an unreasonable and obtrusive manner, the defendant will be liable for invasion of privacy."  *See McLain*, 271 Or. at 555.  The facts of that case show that Younessi has without question adequately pled his claim here.  First, unlike the plaintiff in

PAGE 8 -    RESPONSE TO PLAINTIFF'S RULE 12(B)(6) MOTION TO DISMISS COUNT V
OF YOUNESSI'S AMENDED COUNTERCLAIM

*McLain*, Younessi did not initiate the current legal action between Daimler and him. *Compare McLain*, 271 Or. at 555, *with* Daimler's Complaint. As a result, he has not "waive[d] his right to privacy to the extent of a reasonable investigation." *McLain*, 271 Or. at 555. Second, the surveillance at issue in *McLain* was "done in such an unobtrusive manner that plaintiff was not aware that he was being watched . . . [and] was done during daylight hours." *Id.* at 556. Younessi, however, has pleaded facts showing that the opposite is true here -- the private detectives did little to hide their presence from the Younessis and were visibly present to Mr. Younessi and his wife outside the Younessis' house around the clock for several days.[7]

Moreover, it is possible that after discovery Younessi will be capable of showing further instances of intrusion upon a private matter. There may be a wide range of intrusive, tortious acts committed by Daimler and the private investigators they hired, which Younessi has the right to explore in discovery -- they may have trespassed on Younessi's property and peered in his windows (*see McLain*, 271 Or. at 556), employed surveillance technology to artificially enable them to watch Younessi and his wife inside their house (*see* Restatement (Second) of Torts § 652, Comment b), tapped his phone wires (*id.*), opened his private and personal mail (*id.*), viewed Younessi and his wife in their home using binoculars (*id.*), placed cameras or listening devices within Younessi's property and so on. A party alleging intrusion on seclusion, need not have personally witnessed all the ways in which his privacy was violated in order to state a recoverable claim. *See Ruzicka*, 427 F.3d 511.

Without discovery, Younessi cannot know the full extent of the invasion of his privacy, which is a crucial point -- the entire purpose of the federal notice-pleading standard is to allow deserving claimants to conduct the discovery that will facilitate their recovery. *See Hickman v. Taylor*, 329 U.S. 495, 501 (1947); *Libas Ltd. v. Carillo*, 329 F.3d 1128, 1130 (9th Cir. 2003)

---

[7] All well-pleaded facts in a complaint are assumed true for the purpose of a motion to dismiss. *See Everest and Jennings*, 23 F.3d at 228.

PAGE 9 -    RESPONSE TO PLAINTIFF'S RULE 12(B)(6) MOTION TO DISMISS COUNT V
            OF YOUNESSI'S AMENDED COUNTERCLAIM

(holding that a Rule 12(b)(6) motion will be granted only if the plaintiff "can prove no set of facts to support its claims").

What is certain is that Younessi's counterclaim for intrusion upon seclusion gives "the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *See Twombly*, 127 S. Ct. at 1964.  Thus, this Court should deny Daimler's Rule 12(b)(6) motion to dismiss.

WHEREFORE, Younessi respectfully requests that this Court deny Daimler's Motion to Dismiss Count V of Younessi's Amended Counterclaim.  Younessi further respectfully requests whatever other relief the court deems appropriate.

DATED:  April 24, 2008

LANE POWELL PC

By___/s/  Bruce C. Hamlin_____
    Bruce C. Hamlin, OSB No. 79254
    Telephone:  503.778.2158
Attorneys for Defendant Ramin Younessi

Mark S. Mester, admitted *pro hac vice*
mark.mester@lw.com
Cameron R. Krieger, admitted *pro hac vice*
cameron.krieger@lw.com
Alan Devlin, admitted *pro hac vice*
alan.devlin@lw.com
Robin M. Hulshizer, admitted pro hac vice
robin.hulshizer@law.com
**LATHAM & WATKINS LLP**
233 S. Wacker Drive, Suite 5800
Chicago, Illinois  60606

PAGE 10 -  RESPONSE TO PLAINTIFF'S RULE 12(B)(6) MOTION TO DISMISS COUNT V
    OF YOUNESSI'S AMENDED COUNTERCLAIM

# EXHIBIT M

Cameron R. Krieger
Direct Dial: (312) 876-7612
cameron.krieger@lw.com

Sears Tower, Suite 5800
233 S. Wacker Dr.
Chicago, Illinois 60606
Tel: +1.312.876.7700  Fax: +1.312.993.9767
www.lw.com

# LATHAM & WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Frankfurt | Orange County |
| Hamburg | Paris |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Shanghai |
| Madrid | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| Munich | Washington, D.C. |

File No. 010255-0315

February 21, 2008

**VIA E-MAIL AND FIRST CLASS MAIL**

Susan K. Eggum, Esq.
Cograve Vergeer Kester LLP
805 SW Broadway, 8th Floor
Portland, Oregon 97205

Re:    Daimler Trucks v. Ramin Younessi

Dear Ms. Eggum:

We have received and reviewed your response of February 18, 2008, regarding Daimler's deficient production. See Feb. 18 Corresp. fr. S. Eggum to A. Devlin. We find your response inadequate and write this follow-up letter in a further effort to resolve the outstanding issues without the need for Court involvement. To that end, we respectfully request a written response to this letter by the close of business tomorrow, February 22, 2008. If we are not able to resolve these issues informally, then we will have no choice but to raise them with the Court. We trust and hope, however, that that will not be necessary.

On the first issue, which was Daimler's failure to produce a privilege log despite claiming privilege in response to virtually all of Mr. Younessi's document requests, you and your client plainly have a duty to produce such a log for responsive documents on which you claim a privilege, such as communications with the private investigators hired by Daimler or by you, as well as other responsive documents on which you claim a privilege. See Fed. R. Civ. P. 26(b)(5); see also D. Or. L.R. 26.7 (providing that although a party may preserve its privilege without simultaneously providing a 'privilege log,' "such a 'privilege log' or description of the claims of privilege . . . required by Fed. R. Civ. P. 26(b)(5) shall be provided within a reasonable time after service of timely objections to a discovery request"). We have complied with the requirements of Federal Rule of Civil Procedure 26(b)(5) and produced such a log to you with International's original production. You have not done the same, and we respectfully request receipt of an appropriate privilege log by the close of business tomorrow.

As to our document requests regarding Daimler's hiring of private investigators, we do not believe the relevance of these materials is properly in dispute, and indeed, the only explanation you previously provided for not providing them was a claim of privilege, which we have separately addressed. The requirement to produce is plainly set forth in the Federal Rules of Civil Procedure. We are entitled to the information because we have requested it in conformance with the Rules, and it is directly relevant to this lawsuit. We stated our reasons for

Susan K. Eggum, Esq.
February 21, 2008
Page 2

LATHAM&WATKINS LLP

believing the information is relevant in our original letter of February 15, but I will repeat them here since you claim we did not "offer any suggestion as to why such discovery might bear some conceivable relevance" to this lawsuit: "We can only surmise that you hoped to 'catch' Mr. Younessi doing something that would support your case, an effort that obviously failed. Thus, all evidence gathered by your private investigators is directly relevant to the factual bases for your claims." See Feb. 15, 2008 Corresp. fr. C. Krieger to S. Eggum. You have not offered any valid objections to these requests, and so we again request immediate production of all responsive documents.

As to Document Requests No. 10 and 13, please provide us with some legal authority to support your objection that they are "impermissibly phrased as an interrogatory." That is not, to our knowledge, a valid objection and in any event those requests are not "phrased as an interrogatory." There are any number of documents that would tend to show access to Mr. Younessi's office, as well as any number of documents showing that the information you allege Mr. Younessi appropriated was a trade secret. It is our understanding that the office was not kept locked, and thus, any documents showing individuals with access to the building in which he worked are responsive to our request. You have produced only a few days' worth of electronic door entry records in March 2007, while our request specified a time period of January 1, 2007, until September 1, 2007. You have furthermore not produced any other documents responsive to this request, such as any security footage of entries or exits to the buildings, if such footage exists, visitor logs or similar documents. We are entitled to these documents, and therefore, we again request that they be promptly produced.

Please confirm that your initial production, as well as the 14,000 pages that you produced on Tuesday, February 19, 2008, contain every trade secret that your client alleges Mr. Younessi misappropriated. Please further confirm that you have produced every document that you contend shows that such information was, in fact, a trade secret.

As stated in our letter of February 15, 2008, we would, of course, prefer to work out these issues without resorting to the Court. We are prepared, however, to file a motion to compel if full and complete responses to our requests are not immediately produced.

Thank you for your attention to this matter.

Sincerely,

Cameron R. Krieger
of LATHAM & WATKINS LLP

cc:     Paul Berg, Esq.
        Bruce Hamlin, Esq.
        Mark Mester, Esq.

# EXHIBIT N

**From:**    Paul Berg [pberg@cvk-law.com]
**Sent:**    Wednesday, April 30, 2008 5:24 PM
**To:**      Krieger, Cameron (CH)
**Cc:**      Hulshizer, Robin (CH); Mester, Mark (CH); Devlin, Alan (CH); Susan K. Eggum; Noreen M. Murphy;
            Maryann Ivie; Sonja M. Bialy; HamlinB@LanePowell.com; Evans, Kelley (CH)
**Subject:** RE: Outstanding Document Production Owed By Daimler

Cameron,

Our client contact has been out of state on business. However, progress has been made in locating and
producing documents. We spoke with him this morning, and the following items are a priority.

**DOOR ENTRY DATA**

Now that Mr. Younessi has identified the buildings that he considers "within walking distance" of his primary office
at Daimler Trucks, we will produce, in an electronic format, the door entry data for the buildings listed below from
March 9, 2007, through March 12, 2007, as requested in Younessi's second RFP. In addition, we will produce the
door entry data for Corp 2 from January 1, 2007 through September 1, 2007, in electronic format, as previously
agreed. We hope to be able to provide you with these records by Friday, May 9, 2008.

**PRIVILEGE LOG RE DAIMLER TRUCKS' INTERNAL 2006 INVESTIGATION**

A privilege log regarding Daimler Trucks' in-house counsel's investigation into Younessi's conduct is being
prepared. We hope to be able to provide you that log by Friday, May 9, 2008.

**COMMUNICATIONS WITH DAIMLER TRUCKS' IT EMPLOYEES**

Although not mentioned in your email below, Daimler Trucks also agreed to produce any IT help desk tickets from
March 9, 2007, through March 12, 2007, as requested in Younessi's second RFP. We hope to be able to provide
responsive documents, if any exist, by Friday, May 9, 2008.

In addition, Daimler Trucks agreed to produce documents relating to any other contacts between Younessi and
Daimler Trucks' IT employees during that time period if Younessi would identify the specific Daimler Trucks' IT
employees he communicated with. To date, you have not provided us with that information.

Respectfully,

Paul A. C. Berg

---

**From:** Cameron.Krieger@lw.com [mailto:Cameron.Krieger@lw.com]
**Sent:** Friday, April 25, 2008 8:17 AM
**To:** Paul Berg
**Cc:** Susan K. Eggum; MARK.MESTER@lw.com; ROBIN.HULSHIZER@lw.com; HamlinB@LanePowell.com; Maryann
Ivie; Kelley.Evans@lw.com
**Subject:** Outstanding Document Production Owed By Daimler

Paul,

I am writing to inquire about the status of various responsive documents Daimler indicated on March 11 and April
11 that it was willing to produce. Thus far, we have not received these documents. Although we recognize
unforseen delays can occur when the client is assembling the information for production, it was our understanding

that some of the below items were available and ready for immediate production.  Please let us know when we can expect to receive these documents.  To refresh your memory, detailed below are the documents that are still missing.

**Door Entry Data**

In one of our conferences you told us that you weren't sure which buildings we considered within "walking distance" of Mr. Younessi's building at Daimler in order to narrow the scope of our request for electronic gate entry data for those buildings.  It was your understanding that all other Daimler buildings were at least a mile away from Mr. Younessi's building.  We've conferred with our client to better define the request and here are the buildings within walking distance, all of which had electronic entry scanners:

Corp2 (Mr. Younessi's building)
Corp5 (across the street about 100 yards from Corp2, with both an electronic and key-pad entry)
Corp3 (down the street from Corp2 about a five minute walk, with electronic card entry)
Corp22 (across the street from Corp3, with electronic card entry)

You also had mentioned that this could be a large number of boxes of documents.  As we indicated during our converstaion, we have asked that electronic data be produced in its native format as required by the rules (and to save a few trees).  Since it seems highly unlikely that Daimler maintains this type of data in hard-copy format rather than electronically, we ask again that the data to be produced electronically and searchable electronically, thus alleviating any burden of production.

With this additional information, please let us know if Daimler is now willing to respond to Mr. Younessi's document request.

**Privilege Log**

Although the parties reached agreement on the appropriate way in which to handle the privilege log issue, we have not yet received your privilege log, nor have we gotten any indication of when we might expect it. Please advise.

**Electronic Production, Including Metadata**

We will respond in more detail to your last letter regarding this issue, but we do reiterate that we expect all electronic documents to be produced in their native format, with all embedded data intact.

Please let me know as soon as possible when we can expect to receive these outstanding items.  Finally, we ask again that you produce all documents to our office, not to Mr. Hamlin's office.

Thanks,
Cameron

**Cameron R. Krieger**

**LATHAM & WATKINS** LLP
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Direct Dial: +1.312.876.7612
Fax: +1.312.993.9767

# EXHIBIT O

**From:**    Paul Berg [pberg@cvk-law.com]
**Sent:**    Friday, May 09, 2008 6:05 PM
**To:**    Krieger, Cameron (CH)
**Cc:**    Hulshizer, Robin (CH); Mester, Mark (CH); Devlin, Alan (CH); Susan K. Eggum; Noreen M. Murphy; Maryann Ivie; Sonja M. Bialy
**Subject:** RE: Outstanding Document Production Owed By Daimler

Cameron,

I am unclear what documents you were expecting last Friday. As stated in my email of April 30, 2008, we hoped to produce documents referenced in that email by today, Friday, May 9, 2008.

**Door Entry Data**

Based on Younessi's identification of the specific buildings at issue, Daimler Trucks has now produced all documents responsive to Request No. 14 of Younessi's second set of document requests. However, you will note that no records were included for Corp. 22. I have been advised that no such building exists. However, based on your description, ("across the street from Corp 3") we have produced documents relating to Corp 33.

Daimler Trucks has also now produced some documents responsive to Request No. 10 of Younessi's first set of document requests. We hope to be able to produce the remaining responsive documents next week.

**Communications with Daimler Trucks' IT Personnel**

As we have explained previously, Daimler Trucks IT department consists of hundreds, if not thousands of employees and contractors. We agreed to search for, and produce, all records reflecting Younessi's contacts with Daimler Trucks' IT help desk from March 9, 2007 through March 12, 2007. That search has now been completed and no responsive documents exist.

We also agreed to search for any other communications Younessi may have had with IT employees if Younessi would provide us the names of those employees. We understood there to have been an agreement on this point and I was surprised to read your comments below.

**All Documents on Daimler Trucks' Common Servers**

Daimler Trucks' position remains unchanged. To request that Daimler Trucks produce the millions of pages of documents that can be found on its common servers is overbroad and unduly burdensome. However, to date, Daimler Trucks has produced more than 14,000 pages of documents to which Younessi had access.

**Documents Relating to the Work Performance of Bobbi Felix and Hannes Moeller**

After giving additional consideration to these requests, Daimler Trucks agrees to produce documents in its possession, custody, or control that are responsive to Request No. 5 and Request No. 6 of Younessi's second set of document requests.

**Privilege Log Regarding Daimler Trucks' Internal 2006 Investigation**

Efforts have been undertaken to create a privilege log regarding Daimler Trucks' internal 2006 investigation. Those efforts are ongoing and we hope to be able to produce the privilege log in the next ten days.

Respectfully,

Paul A. C. Berg

# EXHIBIT P

**Bruce C. Hamlin**, OSB No. 79254
hamlinb@lanepowell.com
**LANE POWELL** PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone:  503.778.2100
Facsimile:  503.778.2200

Mark S. Mester, admitted *pro hac vice*
mark.mester@lw.com
Cameron R. Krieger, admitted *pro hac vice*
cameron.krieger@lw.com
Alan Devlin, admitted *pro hac vice*
alan.devlin@lw.com
**LATHAM & WATKINS LLP**
233 S. Wacker Drive, Suite 5800
Chicago, Illinois  60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Attorneys for Defendant Ramin Younessi


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON


| | |
|---|---|
| **DAIMLER TRUCKS NORTH AMERICA LLC,** a Delaware limited liability company, | No. 08-CV-0031-HA |
| Plaintiff, | Defendant Ramin Younessi's **MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| v. | |
| **RAMIN YOUNESSI,** an Illinois resident, | |
| Defendant. | |

Defendant Ramin Younessi ("Younessi") hereby moves the Court to compel Plaintiff

Daimler Trucks North America LLC ("Daimler") to produce documents requested by Younessi

and to provide a required privilege log.


PAGE 1 -   MOTION TO COMPEL PRODUCTION OF DOCUMENTS

The document requests and responses at issue are set forth below in full, in compliance with Local Rule 7.1:

**DOCUMENT REQUEST 2:**

Any and all documents supporting or tending to support the Declarations of Patricia Bell, James Horsely, Dieter Haban, Richard Macken, Bobbi Felix, Hannes Moeller, and Elmar Boeckenhoff.

**RESPONSE:**

Request No. 2 is overbroad, vague and ambiguous.  Document Request No. 2 does not set forth the documents to be produced, nor does it describe each document to be produced with reasonable particularity.  Request No. 2 seeks documents protected by the attorney-client and work product privileges.  Without waiving the foregoing objection, responsive, non-privileged documents will be produced.

**DOCUMENT REQUEST 3:**

Any and all documents referred to by Patricia Bell, James Horsely, Dieter Haban, Richard Macken, Bobbi Felix, Hannes Moeller, and Elmar Boeckenhoff in connection with the preparation of their declarations.

**RESPONSE:**

Request No. 3 is overbroad, vague, and ambiguous as to any document "referred to by" a declarant "in connection with the preparation of their declarations."  Plaintiff further objects to Document Request No. 3 to the extent it seeks documents protected by the attorney-client and work product privileges.   Plaintiff further objects to Defendant's request for expert discovery prior to such discovery being scheduled by the Court.  Without waiving the foregoing objections, responsive, non-privileged documents will be produced.

**DOCUMENT REQUEST 4:**

Any and all documents, communications or reports pertaining to the investigation taken by Daimler of Younessi's alleged collecting, copying, printing and taking of Daimler's

PAGE 2 -   MOTION TO COMPEL PRODUCTION OF DOCUMENTS

confidential data, information, files notes, and documents. These are to include any and all documents or reports relating to and/or supporting the conclusions reached by said investigation.

**RESPONSE:**

Request No. 4 is overbroad, vague and ambiguous. Request No. 4 does not set forth the documents to be produced, nor does it describe each document to be produced with reasonable particularity. Request No. 4 seeks documents protected by the attorney-client and work product privileges. Request No. 4 further seeks expert discovery which has not yet been scheduled by the Court. Without waiving the foregoing objections, responsive, non-privileged documents will be produced.

**DOCUMENT REQUEST 5:**

Any and all documents and communications relating to the hiring by Daimler, its counsel or other agent, of private investigators to watch and follow Younessi, his wife or others related thereto.

**RESPONSE:**

Request No. 5 calls for documents, which may be subject to the attorney-client and work product privileges, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence.

**DOCUMENT REQUEST 6:**

Any and all documents related to the investigation and conclusions of the private investigators hired by Daimler, its counsel or other agent to investigate, watch and follow Younessi, his wife or others related thereto.

PAGE 3 -   MOTION TO COMPEL PRODUCTION OF DOCUMENTS

**RESPONSE:**

Request No. 6 seeks documents which, if they exist, are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Request No. 6 calls for documents that are subject to the attorney-client and work product privileges.

**DOCUMENT REQUEST 10:**

Any documents showing or tending to show all individuals who had access to Younessi's office between January 1, 2007 and September 1, 2007.

**RESPONSE:**

Document Request No. 10 is impermissibly phrased as an interrogatory.

**DOCUMENT REQUEST 13:**

Any and all documents that relate to the alleged status as trade secrets of the documents and information Daimler claims were misappropriated by Younessi.

**RESPONSE:**

Request No. 13 does not set forth the documents to be produced, nor does it describe each document to be produced with reasonable particularity.  Request No. 1 [*sic*] seeks documents protected by the attorney-client and work product privileges.  Request No. 13 is impermissably phrased as an interrogatory.

In support of this Motion, Younessi provides the accompanying Memorandum in Suppport of His Motion to Compel Production of Documents.  For the reasons contained in that

PAGE 4 -   MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Memorandum, Younessi respectfully requests that the Court grant his Motion to Compel

Production of Documents.  Younessi seeks whatever other relief the Court deems appropriate.

DATED:  February 26, 2008

LANE POWELL PC


By      /s/  Bruce C. Hamlin
      Bruce C. Hamlin, OSB No. 79254
      Telephone:  503.778.2158
      Attorneys for Defendant Ramin Younessi

Mark S. Mester, admitted *pro hac vice*
mark.mester@lw.com
Cameron R. Krieger, admitted *pro hac vice*
cameron.krieger@lw.com
Alan Devlin, admitted *pro hac vice*
alan.devlin@lw.com
**LATHAM & WATKINS LLP**
233 S. Wacker Drive, Suite 5800
Chicago, Illinois  60606

PAGE 5 -   MOTION TO COMPEL PRODUCTION OF DOCUMENTS

**Bruce C. Hamlin**, OSB No. 79254
hamlinb@lanepowell.com
**LANE POWELL PC**
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone:  503.778.2100
Facsimile:  503.778.2200

Mark S. Mester, admitted *pro hac vice*
mark.mester@lw.com
Cameron R. Krieger, admitted *pro hac vice*
cameron.krieger@lw.com
Alan Devlin, admitted *pro hac vice*
alan.devlin@lw.com
**LATHAM & WATKINS LLP**
233 S. Wacker Drive, Suite 5800
Chicago, Illinois  60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Attorneys for Defendant Ramin Younessi


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON


| | |
|---|---|
| **DAIMLER TRUCKS NORTH AMERICA LLC,** a Delaware limited liability company, | No. 08-CV-0031-HA |
| Plaintiff, | Defendant Ramin Younessi' **MEMORANDUM IN SUPPORT OF** |
| v. | **MOTION TO COMPEL PRODUCTION** |
| **RAMIN YOUNESSI,** an Illinois resident, | |
| Defendant. | |

Defendant Ramin Younessi ("Younessi"), by and through his attorneys, hereby submits

this memorandum in support of his motion to compel production from Daimler Trucks North

America LLC ("Daimler").  Pursuant to Local Rule 7.1, Younessi's counsel have attempted to

PAGE 1 -   MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION

708689.0001/693316.1

meet and confer with counsel for Plaintiff Daimler Trucks North America LLC ("Daimler"), but have not received an adequate response.

In support of his motion, Younessi states as follows:

## I. FACTUAL BACKGROUND

On January 22, 2008, Younessi served his First Set of Document Requests on Daimler. *See* Younessi's First Set of Document Requests, Ex. 1 hereto. Daimler agreed that it would produce documents in response to those document requests on February 6, 2008. *See* Jan. 30, 2008 E-mail fr. S. Eggum to C. Krieger, Ex. 2 hereto.

At Daimler's request, Younessi agreed to a protective order to be entered in this Court. The parties negotiated such an order, and Younessi provided his signature to Daimler on February 6, 2008. *See* Feb. 6, 2008 E-mail fr. C. Krieger to S. Eggum, Ex. 3. In reliance on that order, Younessi produced documents in response to Daimler's document requests on February 6, 2008. *See id.*

On February 6, 2008, Daimler served Younessi with objections to the document requests. *See* Daimler's Objections, Ex. 4. Virtually all of these objections included an objection that the document request purportedly sought attorney-client or work product privileged documents. *See id.* Daimler, however, did not produce any documents on February 6, 2008, nor did Daimler produce the privilege log required under Federal Rule of Civil Procedure 26(a)(5)(A) and Local Rule 26.7(b). *See* Fed. R. Civ. Pro. 26(a)(5)(A); Local Rule 26.7(b).

Daimler delayed entering the protective order with the Court until February 8, 2008. *See* Feb. 8, 2008 Order. Daimler did not produce *any* documents whatsoever to Younessi until February 11, 2008, in spite of Daimler's earlier agreement. *See* Jan. 30, 2008 Email fr. S. Eggum to C. Krieger, Ex. 2. Documents were finally produced by Daimler on February 11, 2008, but that production was substantially incomplete. On February 15, 2008, Younessi informed Daimler that its production was inadequate. *See* Feb. 15, 2008 Corresp. fr. C. Krieger to S. Eggum, Ex. 5 hereto.

PAGE 2 -   MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION

Specifically, although Daimler claimed virtually every document request sought privileged information and although Daimler refused to answer Document Request Nos. 5 and 6 altogether on the basis of privilege, Daimler did not produce the required privilege log. *See id.*; Fed. R. Civ. P. 26(a)(5)(A); L.R. 26.7(b).

Second, Daimler refused to respond fully to Document Request Nos. 3 and 4 because they supposedly sought "expert discovery." *See* Feb. 15, 2008 Corresp. fr. C. Krieger to S. Eggum, Ex. 5 hereto. As addressed in the motion Defendant filed on February 25, 2008, however, Daimler has simply refused to engage in the necessary Rule 26 conference so that such discovery may be had and has not identified any "experts" on which it intends to rely. *See* Younessi's Feb. 25, 2008 Motion to Compel Rule 26 Conference. Document Request Nos. 3 and 4 requested documents related to the declarations on which Daimler relied in filing its unsuccessful motion for a temporary restraining order on January 7, 2008; none of those declarations set forth expert opinions, but instead set forth fact testimony. *See* Younessi's First Set of Document Requests at Nos. 3 and 4; *see also, e.g.*, Declaration of R. Macken, Ex. 6 and Declaration of J. Horsley, Ex. 7.

Third, Daimler did not produce any documents reflecting the "investigation" of Younessi's activities that it referenced in its Complaint. *See* Feb. 15, 2008 Corresp. fr. C. Krieger to S. Eggum, Ex. 5 hereto. For example, its production did not include any electronic files, although its Complaint and the declarations of Richard Macken and James Horsley that it submitted in support of its unsuccessful motion for a temporary restraining order indicated that electronic investigation was done. *See* Complaint, Ex. 10 at ¶ 19; Declaration of R. Macken at *passim*, Ex. 6; Declaration of J. Horsley at *passim*, Ex. 7. Those documents, however, were specifically requested in Document Request Nos. 2 and 4. *See* Younessi's First Set of Document Requests, Ex. 1 hereto, at Doc. Req. Nos. 2 and 4. Daimler's production also did not include any documents reflecting notes from the employee interviews that Daimler's moving papers indicate were done. *See* Compl. at *passim*.

PAGE 3 -   MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION

Fourth, Daimler refused to respond to Document Request Nos. 5 and 6, which requested documents relating to Daimler's hiring of private investigators to follow Younessi and his wife, on the purported grounds that any information about the private investigators, including whether Daimler even hired them, was somehow "privileged" and "irrelevant."  *See* Feb. 15, 2008 Corresp. fr. C. Krieger to S. Eggum, Ex. 5 hereto.

Fifth, Daimler refused to respond to Document Request No. 10, which requested documents identifying individuals with access to Younessi's office during a defined time period, and Document Request No. 13, which requested documents relating to Daimler's claim that Younessi appropriated "trade secrets," on the grounds that they were "impermissibly phrased as an interrogatory."[1]  *See* Daimler's Objections, Ex. 4.  In response to Document Request No. 10, Daimler produced only electronic door entry records for March 9, 2007 until March 12, 2007. Document Request No. 10, however, specified a time period of January 1, 2007 until September 1, 2007.  *See* Younessi's First Set of Document Requests, Ex. 1 hereto, at Doc. Req. No. 10.

On February 18, 2008, Daimler responded to Younessi's February 15, 2008 correspondence, but refused to reconsider any of its objections or positions, and continued to refuse to produce a privilege log.  *See* Feb. 18, 2008 Corresp. fr. S. Eggum to A. Devlin, Ex. 8. In response to Younessi's position that Daimler had not provided all responsive documents, Daimler stated that its investigation was "on-going."  *Id.*  On February 19, 2008, Daimler produced supplemental documents, but those documents did not address the issues raised by Younessi's February 15, 2008 correspondence.

On February 21, 2008, Younessi's counsel again wrote to Daimler in an attempt to resolve the dispute without court intervention.  *See* Feb. 21, 2008 Corresp. Fr. C. Krieger to S. Eggum, Ex. 9 hereto.  Daimler's counsel, however, did not respond to that correspondence.

---

[1]    As the Court may recall, Younessi left Freightliner on March 12, 2007.  <u>See</u> Compl. at ¶ 13.  Freightliner, however, did not fill Mr. Younessi's position until August 6 2007, some five months later and during that period, Younessi's office was apparently not secured in any way whatsoever.  <u>See</u> Compl. at ¶ 18.

PAGE 4 -    MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION

## II. <u>ARGUMENT</u>

Daimler's production in response to Younessi's First Set of Document Requests was inadequate, and Daimler's objections are without merit. Thus, Daimler should be compelled to respond fully to Younessi's requests and to produce as soon as possible the required privilege log.

**A.    Daimler's Refusal to Product a Privilege Log or Documents Responsive to Document Request Nos. 5 and 6**.

It is undisputed that Federal Rule of Civil Procedure 26 and Local Rule 26 require a party that withholds documents on the basis of privilege to provide the requesting party with a privilege log which specifically describes "the nature of the documents, communications, or tangible things not produced or disclosed -- and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *See* Fed. R. Civ. P. 26(a)(5)(A)(ii). Daimler, however, has refused to produce such a log and has provided no basis for its refusal. *See* Feb. 18, 2008 Corresp. fr. S. Eggum to A. Devlin, Ex. 8 hereto.

Correspondingly, Daimler has refused to provide any documents responsive to Younessi's requests No. 5 and 6 on the grounds that the information sought is privileged and irrelevant. *See* Daimler's Objections, Ex. 4. Daimler, however, is simply incorrect. <u>First</u>, Daimler's position that the question of whether it hired private detectives is somehow privileged is untenable under the law. *See, e.g., State of Oregon v. Riddle*, 8 P.3d 980, 984 (Or. 2000) ("[OEC 503(2)] protects communications, not relationships"). Similarly, while communications between counsel and private detective may be privileged -- and, given the fact that no privilege log has been produced, it is impossible to assess this claim -- facts uncovered by the private detectives are certainly <u>not</u> privileged. *See Anderson v. Equifax Information Svcs.*, No. 05-1741-ST, 2007 WL 2412249, at *1 (D. Or. Aug. 20, 2007) ("The attorney-client privilege . . . does not protect disclosure of the underlying facts by those who communicated with the attorney.").

PAGE 5 -   MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

Second, Daimler's objection that the information is "irrelevant" is also without merit. If Daimler hired the private detectives who followed Younessi and his wife -- which its counsel has tacitly admitted by stating that the detectives are no longer following the Younessis -- the only reason could have been that Daimler hoped to "catch" Younessi doing something that would support its case. This attempt, however, was obviously unsuccessful. Therefore, any such evidence gathered by Daimler's private detectives is directly relevant to Younessi's defenses in this case.

## B.    Daimler Refuses to Product "Expert" Documents.

Daimler has refused to produce documents on the basis that the documents relate to "expert discovery." *See* Feb. 18, 2008 Corresp. fr. S. Eggum to A. Devlin, Ex. 8 hereto. As Daimler has refused to participate in a Rule 26 conference, however, and has not identified any "experts" on which it intends to rely, Younessi cannot even be sure what Daimler is referring to. *See* Younessi's Feb. 25, 2008 Motion to Compel Rule 26 Conference. None of the declarants who provided declarations in support of Daimler's unsuccessful motion for a temporary restraining order were identified as "experts." *See, e.g.,* Declarations of R. Macken and J. Horseley, Exs. 6 and 7. Rather, each provided declarations of fact, not opinion. *See, e.g., id*. As such, Daimler should be required to produce all documents responsive to Younessi's requests. *See, e.g.*, Fed. R. Civ. Pro. 34. An objection that the discovery sought relates to unidentified "experts" is without merit.

## C.    Daimler Refuses to Product Documents Related to Its Supposed Investigation.

Daimler has refused to produce documents relating to the "investigation" referenced in its Complaint and earlier moving papers. *See* Complaint at *passim*. Such documents would include things like notes of employee interviews, memoranda or reports generated by the alleged investigation, electronic records of computer searches or hard drives of computers that Daimler alleges Younessi used during his employment. None of those documents, however, has been produced. Daimler has provided no reason as to why these documents have not been produced,

PAGE 6 -    MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

but only states that its investigation is "on-going."  *See* Feb. 18, 2008 Corresp. fr. S. Eggum to A. Devlin, Ex. 6 hereto.  It is nevertheless now nearly three weeks since these documents were due to be produced, yet Daimler has provided no indication of when (if at all) Younessi can expect to receive the documents.

**D.     Daimler Refuses to Produce Documents in Response to Document Request Nos. 10 and 13.**

Daimler's only objection to Document Request No. 10 was that it was "impermissibly phrased as an interrogatory;" Daimler also objected to Document Request No. 13 on the same grounds, and refused to produce documents responsive to either request.  *See* Daimler's Objections, Ex. 4.  Daimler, however, has provided no legal support for this "objection," and Younessi has not found any such support.  To the contrary, Younessi is allowed to use various discovery methods in whichever order he sees fit.  *See, e.g.*, Fed. R. Civ. P. 26(d) ("[M]ethods of discovery may be used in any sequence").

More to the point, neither request is "phrased as an interrogatory."  Both requests clearly seek documents.  *See* Younessi's First Set of Document Requests at Nos. 10 and 13, Ex. 1.  Document Request No. 10 requests documents identifying individuals who had access to Younessi's office between January 1, 2007 and September 1, 2007.  *See* Younessi's First Set of Document Requests, Ex. 1 hereto, at No. 10.  During Younessi's tenure at Daimler, his office was not kept locked.  Thus, responsive documents would reasonably include electronic door entry records to the building for that period, as well as visitor logs and any security camera footage that might exist of the entries and exits to the building.  With the exception of three days' worth of hard-copy records of door entry information, however, Daimler has produced <u>none</u> of these documents.

On the same grounds, Daimler also refused to provide documents responsive to Document Request No. 13, which requested documents that support Daimler's claim that the information it alleges Younessi removed from his office contained "trade secrets."  *See*

PAGE 7 -   MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION

Younessi's First Set of Document Requests, Ex. 1 hereto, at No. 13.  Daimler has also refused to confirm that its failure to respond to this request is an admission that no such documents exist. *See* Feb. 15, 2008 Corresp. fr. C. Krieger to S. Devlin, Ex. 5 hereto; Feb. 21, 2008 Corresp. fr. C. Krieger to S. Eggum, Ex. 9 hereto.  Such documents, however, are obviously relevant to Daimler's claim that Younessi removed trade secrets from Daimler, and Daimler has not voiced any valid objection to the request.

### III.  CONCLUSION

WHEREFORE, and in light of the above, Younessi respectfully requests that the Court compel Daimler to fully respond to Younessi's First Set of Document Requests and to produce the privilege log required by both Federal and Local Rules.  Younessi further requests whatever other relief the Court deems appropriate.

DATED:  February 26, 2008

LANE POWELL PC


By_____/s/  Bruce C. Hamlin_____
    Bruce C. Hamlin, OSB No. 79254
    Telephone:  503.778.2158
    Attorneys for Defendant Ramin Younessi

    Mark S. Mester, admitted *pro hac vice*
    mark.mester@lw.com
    Cameron R. Krieger, admitted *pro hac vice*
    cameron.krieger@lw.com
    Alan Devlin, admitted *pro hac vice*
    alan.devlin@lw.com
    **LATHAM & WATKINS LLP**
    233 S. Wacker Drive, Suite 5800
    Chicago, Illinois  60606


PAGE 8 -    MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION

# EXHIBIT Q

Robin M. Hulshizer
Direct Dial: (312) 876-7620
Robin.Hulshizer@lw.com

Sears Tower, Suite 5800
233 S. Wacker Dr.
Chicago, Illinois 60606
Tel: +1.312.876.7700  Fax: +1.312.993.9767
www.lw.com

# LATHAM&WATKINSLLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Frankfurt | Orange County |
| Hamburg | Paris |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Shanghai |
| Madrid | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| Munich | Washington, D.C. |

March 21, 2008

File No. 010255-0315

## VIA E-MAIL AND FIRST CLASS MAIL

Susan K. Eggum, Esq.
Cograve Vergeer Kester LLP
805 SW Broadway, 8th Floor
Portland, Oregon 97205

Re:    <u>Daimler Trucks v. Ramin Younessi</u>

Dear Susan:

I write to follow up on our discovery telephone conference March 19, 2008 wherein we discussed Daimler's outstanding production to Mr. Younessi, as well as Mr. Younessi's production to Daimler.

### Daimler's Discovery Obligations

We walked through the various document requests at issue in Mr. Younessi's February 26, 2008 motion to compel.

### Document Requests 2, 3, 4 and 10

Subject to potential privilege claims, we now understand Daimler is willing to produce all documents responsive to requests 2, 3, 4 and 10.[1]  In this regard, you agreed Mr. Younessi was entitled to all underlying facts/records uncovered in the investigation (request 4). You further confirmed that Daimler will produce all gate entry data requested  (request 10). You also confirmed that although there was security footage, Daimler erases such footage on a five-day rotation.  We accept your representations, subject of course to confirmation by an appropriate

---

[1] You did indicate Daimler takes the position that Mr. Macken is an expert and that therefore, Daimler does not believe it has the obligation to produce at this time the documents relied on or referred to by Mr. Macken in drafting his declaration (and as required by requests 2 and 3).  However, you also indicated that the documents Mr. Macken reviewed, in the form of a "forensic image" of Mr. Younessi's computer, will be produced in response to Mr. Younessi's Second Set of Document Requests.  Accordingly, since Mr. Younessi will very shortly obtain the records at issue, it also appears this issue can be put on hold.

**LATHAM&WATKINS**LLP

custodian of records. We did not discuss, but request a response, as to whether Daimler will produce the visitor logs for the defined time period.

You indicated Daimler is still in the process of locating all such documents referenced above but that production would likely occur in about a week's time. Mr. Younessi will evaluate the material produced in response to these requests and if there are any future discovery issues related to these requests, will meet and confer.

Document Requests 5, 6 and 13

We remain at issue on these requests and will await the court's decision on our Motion to Compel.

Privilege Log

We continued to confer on Mr. Younessi's request that Daimler produce a privilege log for its production to date (and any future production). As you know, we proposed in our March 17, 2008 letter that full logs be produced with one exception, that neither party need log privileged communications between outside counsel and the client directly concerning the first or second litigation. You further proposed that neither party log communications between in-house counsel and the client. Given our concerns related to the internal investigation at Daimler, you agreed to approach your client about logging any privileged communications and work product related to the internal investigation of Mr. Younessi which began approximately September 2007. Assuming Daimler agrees to log all such material, we suspect our client will be comfortable with your additional proposal. Although it appears this solution may be acceptable to both sides, we agreed that both sides needed to first obtain client approval.

Your March 19, 2008 letter regarding Production of Electronic Records

As to your letter of March 19 regarding electronic discovery, we will respond under separate cover to your arguments presented in that letter. As we indicated during our call, it is our position that Daimler was always required to produce electronic documents in the manner in which they are ordinarily kept. Nonetheless, we did make clear that Mr. Younessi desires all electronic documents to be produced in their native format.

Mr. Younessi's Discovery Obligations

You indicated that certain of Mr. Younessi's home phone records were missing, as well the records of his wife's cell phone. We confirmed that Mr. Younessi has requested those records and that they will be produced. You also asked for the production of any further credit card statements responsive to existing requests. Mr. Younessi has produced all statements for the two credit cards in his possession during the responsive period that he has received from the third parties that control those documents. If any additional statements are received from the third parties, we will produce those. From our review of the records, it appears that you have received all responsive credit card statements, but please let us know if you believe there is a time period that has not yet been produced.

**LATHAM&WATKINS**LLP

Extension to Discovery Cut deadline

    We discussed the need for an extension to the discovery cut.  You indicated Daimler would not oppose a request for an extension of 3-4 months.

               Sincerely,

               Robin M. Hulshizer
               of LATHAM & WATKINS LLP

CH\1014907.2