**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

DAIMLER TRUCKS NORTH AMERICA
LLC, a Delaware limited liability company,
f/k/a FREIGHTLINER LLC, a Delaware
limited liability company,

        Plaintiff,

v.

RAMIN YOUNESSI, an Illinois resident,

        Defendant.

Case No. 08 CV 2893

The Honorable Joan H. Lefkow

Magistrate Judge Denlow

### PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO QUASH THIRD-PARTY SUBPOENAS OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Plaintiff Daimler Trucks North America LLC, f/k/a Freightliner LLC ("Daimler Trucks"), by its attorneys, Foley & Lardner LLP, hereby respectfully submits the following reply in support of its motion to quash.

### Introduction

On May 9, 2008, Younessi attempted to circumvent the effect of two anticipated decisions by the United States District Court for the District of Oregon ("District of Oregon")[1] by serving subpoenas, without notice to Daimler Trucks, on three investigators who were hired by Daimler Trucks to conduct surveillance of the Younessis and their home. Daimler Trucks filed a motion pursuant to Fed. R. Civ. P. 45(c) to quash the subpoenas or in the alternative to postpone the Court's decision until the District of Oregon has ruled on the currently pending motions.

---

[1] First, through a motion to compel, Younessi has tested Daimler Trucks' objections to discovery related to the surveillance on the grounds of relevance and privilege. Second, Daimler Trucks has filed a motion to dismiss Younessi's counterclaim for violation of privacy. Both motions have been fully briefed by the parties and are pending decision in the District of Oregon.

Younessi responded to Daimler Trucks' motion by arguing that: (a) Daimler Trucks should have conferred on the Rule 45 motion; (b) the subpoenas seek relevant non-privileged documents; (c) Daimler Trucks' request that this Court allow the District of Oregon to resolve the underlying issues before ruling on these subpoenas is inappropriate; and (d) Younessi's concealment of the subpoenas until two business days before the documents were due, in clear violation of Rule 45(b)(1), should be ignored. For the reasons set forth below, the Court should reject each of these arguments and grant Daimler Trucks' motion.

## Argument

### A.     There Is No Duty To Confer Before Filing A Motion Under Fed. R. Civ. P. 45

There is no duty to confer under Fed. R. Civ. P. 45, the Rule pursuant to which Daimler Trucks' motion was brought.[2] See Fed. R. Civ. P. 45. Daimler Trucks plainly brought the Motion pursuant to Rule 45. (Daimler Trucks' Motion to Quash, p. 1.) That Rule allows a party, like Daimler Trucks, from whom discovery has not been sought, to bring a motion asserting a "'personal right or privilege' regarding the documents sought." Minn. Sch. Bds. Ass'n Ins. Trust v. Employers Ins. Co. of Wausau, 183 F.R.D. 627, 629 (N.D. Ill. 1999) (citing Hunt Int'l Res. Corp. v. Binstein, 98 F.R.D. 689, 690 (N.D. Ill. 1983)). Accordingly, Younessi's argument that the parties had a duty to confer before Daimler Trucks brought its Motion is a red herring.

### B.     Two Currently Pending Motions Before The District Of Oregon Will Determine Whether The Discovery Sought In The Subpoenas Is Permissible

Contrary to Younessi's suggestion, it is entirely appropriate for an issuing court to postpone resolution of subpoena-related motions until the trial court has rendered decisions on

---

[2] Daimler Trucks titled its motion as a Motion to Quash Subpoenas Served on John D. Rea, Alberto Gerena and Luigi Castillo Or, In The Alternative, For A Protective Order. Despite the term "protective order" it was clear that Daimler Trucks "respectfully move[d] this court pursuant to Federal Rule of Civil Procedure 45(c)…." Perhaps the alternative relief sought could have been titled "modification" rather than "protective order" to have avoided any ambiguity.

the relevant issues.[3]  See Solaia Tech., LLC v. Rockwell Automation, Inc., 2003 WL 22597611

(N.D. Ill. 2003) (a copy of this decision is attached as Exhibit A); Kearney v. Jandernoa, 172

F.R.D. 381 (N.D. Ill. 1997); In re Sealed Case, 141 F.3d 337, 343 (D.C. Cir. 1998); Hartz

Mountain Corp. v. Chanelle Pharm. Veterinary Prods. Mfg. Ltd., 235 F.R.D. 535 (D. Maine

2006).  In each of the cases cited above, the issuing court postponed the resolution of subpoena-

related motions to allow relevant issues to be first decided by the court presiding over the

underlying action.  Courts in this jurisdiction have held that staying local proceedings to abide by

decisions of the district court in which the underlying action is pending, "foster[s] uniformity and

judicial economy."  Kearney, 172 F.R.D. at 383.

        For example, in Solaia, this Court was asked to reserve ruling on a motion to quash

because of the "questionable viability" of one of the claims in the underlying lawsuit in the

District of Wisconsin.  2003 WL 22597611, at *2.  If the claim in question was dismissed, the

scope of discovery would be limited.  Id.  Accordingly, even though it was not clear that a

motion to dismiss was pending at the time, this Court postponed ruling on the motion to quash

until further developments took place in the underlying action.  Id. at *3.

        Here, two pending motions directly relate to the issue of whether the discovery sought by

these subpoenas is discoverable.  First, the District of Oregon has full briefing from both parties

on the issue of whether or not the discovery is privileged.  Obviously, the existence (or non-

---

[3] Younessi asserts that "ignoring appropriate jurisdiction is actually a pattern for Daimler," and
suggests that Daimler Trucks refuses to recognize the authority of this Court because Daimler
Trucks brought a motion to compel against Younessi and International Truck and Engine
Corporation ("International") in the District of Oregon.  (Younessi's Response, p. 12, FN 5).
However, what Younessi fails to mention is that the motion to compel was based on a January
16, 2008 order from the District of Oregon, which was issued following representations made in
open court by a Latham & Watkins attorney who represents both International and Younessi that
both International and Younessi would produce certain documents on an expedited basis.
Younessi also fails to mention that Daimler Trucks motion to compel was granted as to Younessi
and his current employer, International.

existence) and the scope of a privilege would impact resolution of these subpoenas. It would be anomalous – to say the least – for this Court and the District of Oregon to reach different conclusions regarding the applicability or scope of the asserted privilege.

Second, the District of Oregon has full briefing from both parties on the "questionable viability" of Younessi's violation of privacy counterclaim in the form of Daimler Trucks' 12(b)(6) motion to dismiss.[4] Without that claim, the documents sought by subpoena are irrelevant, as acknowledged by Younessi's memorandum in support of an emergency protective order, a copy of which is attached hereto as Exhibit C. In that memorandum Younessi represented to the District of Oregon that there was no legitimate discovery purpose for the surveillance. (Ex. C.)

At a minimum, this court should postpone resolution of this dispute until the District of Oregon has ruled on Younessi's motion to compel and Daimler Trucks' motion to dismiss.

## C.    On The Merits, The Documents Are Neither Relevant Nor Discoverable

Even if the above referenced cases had not been decided Younessi still would not be entitled to the documents as they are irrelevant and not discoverable. Younessi filed an "emergency" motion on January 14, 2008, for a protective order to bar surveillance of defendant's home in the District of Oregon. In his supporting memorandum of January 14, 2008, Younessi represented to the Oregon Court that ". . . the **only** purpose [of the surveillance] can be to intimidate Mrs. Younessi." (Ex. C. at p. 4) (emphasis added) Based on that representation, the Court granted the protective order sought. (January 16, 2008 transcript, attached hereto as

---

[4] Younessi argues that Daimler Trucks' motion to dismiss is without merit, and attaches his response brief. (Younessi's Response, p. 6-7, FN 6). However, Younessi misunderstands Daimler Trucks' reliance on Illinois case law. To the extent that the Court is interested in reviewing the complete briefing of Daimler Trucks' motion to dismiss, the Reply In Support of Plaintiff's 12(b)(6) Motion to Dismiss Count V of Younessi's Counterclaim is attached hereto as Exhibit B.

Exhibit D)  Now, Younessi contends something quite different: that any information from the detectives "is substantial evidence that goes directly to Daimler's allegations and Younessi's Defenses."  (Younessi's Response to Daimler's Motion to Quash ("Younessi's Response"), p. 5-6).  Younessi should not be allowed to switch his position whenever the sands of the litigation shift.  Moreover, any evidence about the "intimidation" of **Mrs. Younessi** by a detective in a car with a camera would not be relevant to any claim or defense pled in this action between Daimler Trucks and Younessi.

Setting aside Younessi's inability under the facts alleged to plead a claim for invasion of his privacy as a matter of law, any communications between a party and an investigator are privileged.  Oregon Evidence Code ("OEC") 503(2) ("A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client"); OEC 503(1)(b) (a confidential communication is one that is "not intended to be disclosed to third persons"); Klamath County School District v. Teamey, 140 P.3d 1152, 207 Or. Ct. App. 250 (2006) (noting that reports generated by a private investigator are privileged).

For the foregoing reasons, Mr. Younessi has no right to any communications between a party and an investigator, or to the reports generated by the investigators, unless that party elects to waive the privilege by offering the results of any findings into evidence.

**D.    Younessi's Concealment Of The Subpoenas Should Not Be Allowed**

Younessi admits that he failed to serve Daimler Trucks as required by Fed. R. Civ. P. 45(b)(1).  However, without explanation, Younessi attempts characterize his concealment as some unknown variety of "administrative error."  (Younessi's Response, p. 13).  This bald statement should be rejected.  Further, Younessi incorrectly claims that Daimler Trucks was not

prejudiced.   (Id.)  Younessi's concealment prevented Daimler Trucks from enjoying the very

benefit intended by Rule 45(b)'s notice requirement: "to allow opposing parties to object **prior**

to service and move to quash or for a protective order."   9A Wright & Miller, § 2454 (citations

omitted) (emphasis supplied).  Younessi's failure to abide by this Rule should, standing alone,

cause this Court to quash the subpoenas.

## Conclusion

For all of the reasons stated in plaintiff's motion to quash and in this reply, this Court

should quash the subpoenas at issue.  In the alternative, this Court should enter an order

postponing resolution on these issues until the District of Oregon has ruled on Younessi's

pending motion to compel, and Daimler Trucks' pending motion to dismiss.

Dated: June 9, 2008                              Respectfully submitted,

                                                 DAIMLER TRUCKS NORTH AMERICA
                                                 LLC, f/k/a FREIGHTLINER LLC

                                                 ___/s/ Daniel M. Cordis_____
                                                 One of its Attorneys

                                                 Martin J. Bishop (IL Bar No. 06269425)
                                                 Daniel M. Cordis (IL Bar No. 6285963)
                                                 FOLEY & LARDNER LLP
                                                 321 North Clark Street
                                                 Suite 2800
                                                 Chicago, Illinois  60610
                                                 312.832.4500 (t)
                                                 312.832.4700 (f)

                                                 Susan K. Eggum, OSB No. 824576
                                                 Paul A. C. Berg, OSB No. 062738
                                                 COSGRAVE VERGEER KESTER LLP
                                                 805 SW Broadway, 8th Floor
                                                 Portland, Oregon  97205
                                                 503.323.9000 (t)
                                                 503.323.9019 (f)
                                                 *Admitted Pro Hac Vice*

CERTIFICATE OF SERVICE

I, Daniel M. Cordis, hereby certify that on June 9, 2008 I caused to be served a true and correct copy of the foregoing **Plaintiff's Reply In Support Of Its Motion To Quash Third-Party Subpoenas Or, In The Alternative, For A Protective Order** through the ECF filing system of the Northern District of Illinois on the following individuals:

Robin Hulshizer
Cameron Krieger
Latham & Watkins LLP
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Attorneys for Defendant Ramin Younessi

I, Daniel M. Cordis, hereby certify that on June 9, 2008 I caused to be served a true and correct copy of the foregoing **Plaintiff's Reply In Support Of Its Motion To Quash Third-Party Subpoenas Or, In The Alternative, For A Protective Order** by depositing the same in the U.S. mail chute at 321 North Clark Street, Chicago, Illinois 60610, postage prepaid, and addressed to the following individual:

Bruce C. Hamlin
Lane Powell PC
601 SW 2nd Ave., Suite 2100
Portland, OR 97204
Attorneys for Defendant Younessi

/s/ Daniel M. Cordis
Daniel M. Cordis

# Exhibit A

Not Reported in F.Supp.2d, 2003 WL 22597611 (N.D.Ill.), 31 Media L. Rep. 2518

Motions, Pleadings and Filings

United States District Court,
N.D. Illinois, Eastern Division.
SOLAIA TECHNOLOGY, LLC, Plaintiff,
v.
ROCKWELL AUTOMATION, INC., Rockwell Software, Inc., OPC Foundation, Arvinmeritor and John
Does, Defendants.
No. 03 C 6904.
Nov. 10, 2003.

Frederick J. Sperling, Sondra A. Hemeryck, Schiff, Hardin & Waite, Chicago, IL, for Plaintiff.

*MEMORANDUM OPINION AND ORDER*

LEFKOW, J.

**\*1** Before the court is the motion of non-party Specialty Publishing Company ("Specialty") to quash the subpoena duces tecum served on it by plaintiff, Solaia Technology, LLC, ("Solaia"), in the above captioned case now pending in the Eastern District of Wisconsin, case number 03 C 0939. This case was originally brought by Solaia against the defendants in this court on January 24, 2003 alleging, *inter alia,* violation of federal antitrust laws. The case was assigned to the Honorable Joan B. Gottschall. On July 18, 2003, Solaia served the subpoena duces tecum at issue on Specialty. On August 1, 2003, Specialty filed a motion under Federal Rule of Civil Procedure 45(c)(3)(A) to quash Solaia's subpoena duces tecum on grounds that the documents sought are protected by the reporter's privilege. Thereafter, on September 2, 2003, Judge Gottschall issued an order transferring the case to the Eastern District of Wisconsin and denying all pending motions (including Specialty's motion to quash) as moot. Specialty then brought this ancillary action on September 30, 2003, asking the court first to reinstate its motion to quash the subpoena duces tecum because the Eastern District of Wisconsin has no authority either to enforce or quash the subpoena. This court granted Specialty's motion to reinstate and further gave the parties leave to complete briefing of the issues. Currently, the motion to quash is fully briefed and ready for decision.

Specialty is the publisher of *Start* magazine, which reports on issues of interest to manufacturers. Solaia is the owner of United States Patent No. 5,038,318 and has sued several manufacturers for infringement of that patent. Beginning in April 2002, Specialty published in *Start* a number of articles and an anonymously published letter to the editor concerning this patent litigation and a related antitrust suit that was brought by Rockwell Automation Inc. ("Rockwell") against Solaia and its counsel. The underlying case now pending in Wisconsin was brought by Solaia against Rockwell and others alleging violations of federal antitrust laws and supplemental state law claims.[FN1] In conjunction with this litigation Solaia served the subpoena duces tecum at issue here on Specialty seeking production of

> FN1. Solaia has also filed suit against Specialty in the Circuit Court of Cook County, Illinois, alleging defamation and tortious interference. The defamation claim was dismissed by the Illinois court, while the tortious interference claim is still pending.

1. All documents, including any tape recordings, notes or email constituting or relating to correspondence with Rockwell Automation, Rockwell Software, ArvinMeritor, Conoco, Inc., Conoco, Inc., the OPC Foundations and/or any of their attorneys relating to (a) Solaia; (b) Solaia's 318 patent; and/or (c) Solaia's claims for patent infringement.

2. All communications with the author of the letter regarding Solaia titled, "Solaia Mess", published in the January 2003 issue of Start Magazine, including all documents relating to the author's identity

(including any e-mail address and/or telephone numbers).

(Speciality Ex. 3.)

Specialty believes that the subpoena duces tecum should be quashed because the documents and information sought are protected either by the Illinois statutory reporter's privilege, 735 ILCS 5/8-901, or federal privilege law grounded in the First Amendment. Moreover, Specialty argues that to the extent federal privilege law does not apply and the Illinois reporter's privilege is inapplicable to any federal claims, the court should defer ruling until after any motions to dismiss the federal antitrust claims are decided in the underlying action.

**\*2** Starting with Specialty's claim under the Illinois reporter's privilege, the Seventh Circuit has recently spoken on the applicability of the Illinois reporter's privilege in federal question cases. In *McKevitt v. Pallasch*, 339 F.3d 530 (7th Cir.2003), the court confirmed that "State-law privileges are not 'legally applicable' in federal-question cases like this one." *Id . at 533.* Therefore, since Specialty brings antitrust claims which arise under federal law, the Illinois statutory reporter's privilege cannot serve to protect Specialty from disclosure in this case.

With respect to Specialty's claim that disclosure is protected under federal privilege law rooted in the First Amendment, this issue was also addressed in *McKevitt.* The Seventh Circuit stated that,

It seems to us that rather than speaking of privilege, courts should simply make sure that a subpoena duces tecum directed to the media, like any other subpoena duces tecum, is reasonable in the circumstances, which is the general criterion for judicial review of subpoenas.

*McKevitt,* 339 F.3d at 533. The court further explained that "[w]hen the information in the reporter's possession does not come from a confidential source, it is difficult to see what possible bearing the First Amendment could have on the question of compelled disclosure." *Id.; see also, Gonzales v. NBC,* 155 F.3d 618, 626 (2d Cir.1998) ("Our holding today is that there is no journalists' privilege for nonconfidential information.").

The information sought to be disclosed in Solaia's subpoena duces tecum consists of some confidential and some non-confidential information. For example, there can be no dispute that tapes of communications between *Start* and defendants Rockwell and OPC Foundation are not confidential, as the sources of any information would be known. The same applies to written communications between Start, Rockwell and OPC. This information is not from a confidential source and would not be protected under the First Amendment, nor can any subpoena dues tecum requesting disclosure of such information be viewed as unreasonable. As such, Specialty's claim on this ground to quash the subpoena duces tecum as it relates to any information from a nonconfidential source is denied.[FN2]

> FN2. In its reply Specialty also argues that any communication between Specialty, Conoco or ArvinMeritor should not be disclosed because Solaia has not established how these documents are relevant. Speciality notes that Solaia in its response argues only that Rockwell and the OPC Foundation used *Start* magazine and enlisted *Start's* cooperation and that no such assertion is made for either Conoco or ArvinMeritor. Solaia's response, however, states that all defendants were part of a plan to misinform the public about the Solaia patent and that the companies planned to bond together to refuse to deal with Solaia. Thus, the court believes Solaia has made out the minimal showing necessary to establish the relevance of materials in discovery. *See* Fed.R.Civ.P. 26(b)(1) ( "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.").

There is, however, the matter of the anonymously published letter, for which there can be little question the source is confidential. Indeed, Solaia glosses over the confidentiality of the author's identity in its argument and presents no persuasive reason to suggest that the identity is not protected. Accordingly, the identity of the author of the unpublished letter, and any documents related thereto, are properly protected from disclosure and the subpoena duces tecum will be

quashed to the extent it seeks such disclosure.

The court must also address, however, Specialty's argument that at the very least the court should reserve ruling on the motion to quash because of what Specialty's calls "the questionable viability of Solaia's purported antitrust claims." While this case was pending before Judge Gottschall, the defendants filed a motion to dismiss. The motion was fully briefed and awaiting ruling when Judge Gottschall transferred this case to the Eastern District of Wisconsin, thereby denying the motion as moot. Specialty expects the defendants to renew their motion before the transferee court, and states that if the motion is granted the only remaining claims that relate to *Start* magazine would be Solaia's state-law claims for defamation and tortious inference. Specialty represents that if the federal claims are dismissed, this case would then become a diversity action where the Illinois statutory reporter's privilege would apply. *E.g., Abbott Labs. v. Alpha Therapeutic Corp., 200 F.R.D. 401, 404 (N.D.Ill.2001)* ("[I]n civil actions or proceedings with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness shall be determined in accordance with State law.") (quoting Fed.R.Evid. 501). Specialty illustrates the significance of such a development because it reasons that the Illinois statutory privilege would protect all sources from disclosure, not simply those that are confidential. *See People v. Slover, 323 Ill.App.3d 620, 623, 257 Ill.Dec. 359, 753 N.E.2d 554, 556-57 (2001)* ("In Illinois, reporters have a statutory, qualified privilege protecting their sources, whether confidential or nonconfidential, from compelled disclosure.").

**\*3** It is currently unclear whether defendants have in fact moved to dismiss. Nevertheless, the court can discern no prejudice to Solaia in reserving ruling on the motion to quash until it is established that the federal antitrust claims properly state a claim. The question as presented here is significantly changed based on whether the suit is one arising under federal or state law. If the federal antitrust suit is valid, then as stated above the Illinois statutory privilege is inapplicable and all non-confidential information is not protected from disclosure. If the suit is one not arising under federal law, then there is an argument to be made that the Illinois privilege may be applicable, and both confidential and non-confidential information may be protected. Accordingly, the court will reserve ruling on this ancillary action until further developments take place in the underlying action in Wisconsin. This case will be called for status on December 11, 2003 at 9:30 a.m., at which time the parties shall report on the status of the Wisconsin action, including whether a motion to dismiss the federal antitrust claims has been filed. If such a motion has been filed and is awaiting ruling, the court will enter a stay on this ancillary action pending ruling on that motion. If a motion to dismiss has not been filed, this motion to quash will be granted in part and denied in part as set out above.

N.D.Ill.,2003.
Solaia Technology, LLC v. Rockwell Automation, Inc.
Not Reported in F.Supp.2d, 2003 WL 22597611 (N.D.Ill.), 31 Media L. Rep. 2518


Motions, Pleadings and Filings (Back to top)

• 1:03CV06904 (Docket) (Sep. 30, 2003)
END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# Exhibit B

Susan K. Eggum, OSB No. 824576
Internet e-mail: eggum@cvk-law.com
Paul A. C. Berg, OSB No. 062738
Internet e-mail:pberg@cvk-law.com
COSGRAVE VERGEER KESTER LLP
805 SW Broadway, 8th Floor
Portland, Oregon 97205
Telephone:   (503) 323-9000
Facsimile:   (503) 323-9019
Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

|  |  |
|---|---|
| DAIMLER TRUCKS NORTH AMERICA LLC, a Delaware limited liability company, fka FREIGHTLINER LLC, a Delaware limited liability company,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>RAMIN YOUNESSI, an Illinois resident,<br><br>　　　　　　Defendant. | Case No.: CV-08-0031-HA<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S 12(b)(6) MOTION TO DISMISS COUNT V OF YOUNESSI'S AMENDED COUNTERCLAIM**<br><br>(ORAL ARGUMENT REQUESTED) |

**PRELIMINARY STATEMENT**

On April 10, 2008, Daimler Trucks North America LLC, fka Freightliner LLC

("Daimler Trucks"), filed a Motion to dismiss Ramin Younessi's ("Younessi's")

counterclaim for "Violation of Privacy" because he has not and cannot allege an

intrusion into a private matter - an essential element.  On April 24, 2008, Younessi filed

a response, primarily arguing that such an allegation is unnecessary because "it is

Page 1 - **REPLY IN SUPPORT OF PLAINTIFF'S 12(b)(6) MOTION TO DISMISS COUNT V OF YOUNESSI'S AMENDED COUNTERCLAIM**

possible" that after discovery Younessi may be able to find facts that would allow him to plead the essential element of this claim.

## MEMORANDUM

Younessi's response misconstrues *Schiller v. Mitchell*, 357 Ill App 3d 435 (2005). Of course *Schiller*, an Illinois state case, does not control the pleading standards in this federal suit.  However, *Schiller* does establish that a critical element of Younessi's counterclaim - in fact "the core of this tort" - is the prying or intrusion into a **private** matter.[1]  *Id.* at 439-40, quoting *Lovgren v. Citizens First National Bank of Princeton*, 126 Ill 2d 411, 416 (1989) (emphasis added).  And, *Schiller* establishes that surveillance of those things that can be seen by a "passerby on the street, or a roofer, or a tree trimmer" is not an intrusion into a private matter.  *Id.* at 441.  Younessi has not alleged surveillance of anything that could not be seen from a public location.  Younessi's Counterclaim, ¶¶ 18, 28-32, 54-57.  Therefore, Younessi has omitted the "core of the tort" from his pleading.

For that reason, Younessi's counterclaim fails Under Fed. R. Civ. P. Rule 8.  As recently stated by the United States Supreme Court, "[w]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should be * * * exposed at the point of minimum expenditure of time and

---

[1] Younessi also argues, in a footnote, that Illinois law does not govern this tort counterclaim, on the grounds that there may be no material difference between Oregon substantive law and the law of Illinois. If there is not a substantive difference in the laws of the two states, then *Schiller* accurately represents both Oregon and Illinois law.  If there is a substantive difference in the laws of the two states, then Illinois law would control under Oregon's "most significant relationship" test, because: (1) the alleged injury occurred in Illinois, (2) the conduct allegedly causing the injury occurred in Illinois (3) Daimler Trucks is a Delaware LLC with a principal place of business in Michigan, while Younessi is a resident of Illinois, and (4) aside from this lawsuit, the parties have no current relationship.  See *Portland Trailer & Equipment, Inc. v. A-1 Freeman Moving & Storage, Inc.*, 49 P3d 803, 810, 182 Or App 347 (2002) (listing the contacts to be taken into account in choice of law analysis for tort).  Moreover, Younessi's response to Daimler Trucks' motion to dismiss cites only one Oregon case, and acknowledges that it is not on point.

COSGRAVE VERGEER KESTER LLP
Attorneys
805 SW Broadway, 8th Floor
Portland, OR 97205
(503) 323-9000

559548

money by the parties and the court.'" *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955,

1967 (2007) quoting 5 Wright & Miller, § 1216, at 233-234, quoting *Daves v. Hawaiian

Dredging Co.*, 114 F Sup 643, 645 (D. Hawaii 1953) (ellipses in original). *Twombly*

specifically rejects Younessi's argument that a claim should survive because the

pleadings leave "open the possibility that a plaintiff might later establish some set of

undisclosed facts to support recovery." *Id.* at 1968 (internal quotations omitted). And,

under well established Ninth Circuit precedent, "a [counterclaim] may be dismissed as a

matter of law for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient

facts under a cognizable theory." *Johnson v. Executive Protection Agency K-9 &

Investigative Services, Inc.*, WL 1755853 (SD Cal) citing *Navarro v. Block*, 250 F3d 729,

732 (9th Cir 2001). The latter applies here.

In sum, Younessi's argument that his claim should proceed because discovery

could possibly reveal a fact that would permit him to plead the "core of the tort" is

contrary to established law.

CONCLUSION

For all of the reasons stated, this Court should dismiss Count V of Younessi's

Amended Counterclaim with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

DATED: May 8, 2008.

COSGRAVE VERGEER KESTER LLP
/s/ Susan K. Eggum
Susan K. Eggum, OSB No. 824576
Paul A. C. Berg, OSB No. 062738
Telephone: 503-323-9000
Fax: 503-323-9019
E-mail: eggum@cvk-law.com
            pberg@cvk-law.com
Of Attorneys for Plaintiff
Trial Attorney: Susan K. Eggum, OSB No. 824576

COSGRAVE VERGEER KESTER LLP
Attorneys
805 SW Broadway, 8th Floor
Portland, OR 97206
(503) 323-9000

559548

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing REPLY IN SUPPORT OF PLAINTIFF'S 12(b)(6) MOTION TO DISMISS COUNT V OF YOUNESSI'S AMENDED COUNTERCLAIM on the date indicated below by

☐    mail with postage prepaid, deposited in the US mail at Portland, Oregon,

☐    hand delivery,

☐    facsimile transmission,

☐    overnight delivery,

☒    electronic filing notification;

I further certify that said copy was placed in a sealed envelope delivered as

indicated above and addressed to said attorney(s) at

the address(es) listed below:

Robin Hulshizer
Mark Mester
Alan Devlin
Cameron Krieger
Latham & Watkins LLP
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Of Attorneys for Defendant Ramin Younessi

Bruce C. Hamlin
Lane Powell PC
601 SW 2nd Ave., Suite 2100
Portland, OR 97204
Of Attorneys for Defendant Younessi

DATED: May 8, 2008

/s/ Susan K. Eggum
_____
Susan K. Eggum

Page 1 CERTIFICATE OF SERVICE

COSGRAVE VERGEER KESTER LLP
Attorneys
805 SW Broadway, 8th Floor
Portland, OR 97205
(503) 323-9000

559548

# Exhibit C

**Bruce C. Hamlin**, OSB No. 79254
hamlinb@lanepowell.com
**LANE POWELL** PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone:  503.778.2100
Facsimile:  503.778.2200

Mark S. Mester, *pro hac vice* pending
mark.mester@lw.com
Cameron R. Krieger, *pro hac vice* pending
cameron.krieger@lw.com
**LATHAM & WATKINS LLP**
233 S. Wacker Drive, Suite 5800
Chicago, Illinois  97205
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Attorneys for Defendant Ramin Younessi

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

| | |
|---|---|
| **FREIGHTLINER LLC,** a Delaware limited liability company, | No. 08-CV-0031-ST |
| Plaintiff, | Defendant Ramin Younessi's **MEMORANDUM IN SUPPORT OF HIS EMERGENCY MOTION FOR A PROTECTIVE ORDER** |
| v. | |
| **RAMIN YOUNESSI,** an Illinois resident, | |
| Defendant. | |

In support of his Emergency Motion for a Protective Order, Defendant Ramin Younessi

("Mr. Younessi"), by and through his attorneys, states as follows:

PAGE 1 -   MEMORANDUM IN SUPPORT OF HIS EMERGENCY MOTION FOR A
　　　　　　PROTECTIVE ORDER

# I. INTRODUCTION

Freightliner LLC ("Freightliner") has taken steps in this litigation designed solely to harass and embarrass Mr. Younessi and his family, with no conceivable legitimate purpose. On information and belief, Freightliner has engaged private detectives to sit outside Mr. Younessi's house on a twenty-four basis, to follow Mr. Younessi and to follow Mr. Younessi's wife. Accordingly, Mr. Younessi asks this Court to enter a protective order barring Freightliner from any further harassment and intimidation of either Mr. Younessi or any member of his family.[1]

## II. FACTUAL BACKGROUND

On Monday, January 7, 2008, the day this litigation was filed, Mr. Younessi observed a person sitting in a car outside his house.[2] *See* Decl. of K. Younessi, Ex. 1 hereto, at ¶ 2. This person remained outside Mr. Younessi's residence, watching the house, for hours. *Id.* At some point a second car with a second man replaced the first car. *Id.* These individuals, who sat in the cars with open laptop computers, remained in continuous cycle observing Mr. Younessi's house for at least several days. *Id.*

On Tuesday, January 8, 2008, a neighbor of the Younessis approached the car to ask the occupant what he was doing. *Id.* at ¶ 3. The man told the Younessis' neighbor that he was a private detective. *Id.* He indicated that the Naperville, Illinois police were aware of his activities. *Id.* Mr. Younessi, in turn, called the Naperville police department, which confirmed that a private detective had informed them of surveillance in the area. *Id.*

On Wednesday, January 9, 2008, Mr. Younessi's wife was followed by a man while going to a doctor's appointment. *Id.* at ¶ 4. When she left the house, the car sitting outside made a u-turn to follow her, and followed her all the way to her doctor's office. *Id.* When she

---

[1] Mr. Younessi reserves all rights to pursue any and all other remedies in addition to this Motion in response to Freightliner's actions.

[2] Mr. Younessi is currently traveling out of the country on business and thus it was not possible to obtain a sworn statement from him supporting this Motion. On Mr. Younessi's return, however, a sworn declaration can be provided to the Court in further support of all factual statements made herein.

PAGE 2 -   MEMORANDUM IN SUPPORT OF HIS EMERGENCY MOTION FOR A
                 PROTECTIVE ORDER

returned home, the same car was sitting outside the Younessis' house again. *Id.* On that same day, Mr. Younessi informed his employer of his and his wife's fear for their personal safety due to the foregoing harassment. *Id.*

Mr. Younessi's wife was frightened and intimidated by the man following her and remaining outside the house. *Id.* at ¶ 5. She has also been embarrassed by the tactics, because her neighbors were worried about the presence of the men and the Younessis felt obligated to inform their neighbors that the private detectives were observing them. *Id.*

On Thursday, January 10, 2008, counsel for Mr. Younessi called counsel for Freightliner to discuss these intimidation tactics. *See* Jan. 13, 2007 Corresp. fr. C. Krieger to S. Eggum, Ex. 2 hereto. A voicemail message was left, but was not returned. *See id.* Freightliner's counsel also did not respond to a letter addressing the same issues. *Id.*

## III. ARGUMENT

Under Federal Rule of Civil Procedure 26(c)(1), a court may enter a protective order to prevent a party or person from suffering undue "annoyance, embarrassment, [or] oppression." *See* Fed. R. Civ. P. 26(c)(1); *see also, e.g., Pintos v. Pacific Creditors Ass'n*, 504 F.3d 792, 801 (9th Cir. 2007); *U.S. for the Benefit of P.W. Berry Co, Inc. v. General Electric Corp.*, 158 F.R.D. 161, 163 (D. Or. 1994). Good cause exists for entry of the requested order due to the unnecessary harassment to which Freightliner has subjected Mr. Younessi and his family.

Freightliner has alleged that Mr. Younessi took confidential information from Freightliner nearly a year ago. As Freightliner and its counsel are aware, Freightliner has already litigated this issue, settled it and released its claims related against Mr. Younessi. *See* Younessi's Response to Freightliner's Motion for TRO. In addition to the settlement agreement in which he agreed to maintain the confidentiality of any Freightliner information, Mr. Younessi signed a sworn statement that he had not and would not disclose any confidential information of Freightliner's. *See* Settlement Agreement, Ex. 3. Tellingly, Freightliner has *not* alleged that

PAGE 3 -    MEMORANDUM IN SUPPORT OF HIS EMERGENCY MOTION FOR A
            PROTECTIVE ORDER

Mr. Younessi violated the earlier settlement agreement or that he has disclosed any Freightliner confidential information to any third-party. *See* Complaint at *passim*.

In response to inquiries from Mr. Younessi's counsel, Freightliner has not offered a single legitimate reason as to why surveillance of Mr. Younessi's home and family is necessary or reasonable nor is any such explanation apparent.[3] Instead, Freightliner's only apparent purpose is to annoy, embarrass and harass Mr. Younessi.

Furthermore, Mrs. Younessi is not a party to this litigation. Freightliner has not alleged that Mrs. Younessi has done anything, or that she is even a potential witness in this litigation. *See id.* There can be no conceivable purpose for Freightliner having its agents tailing her for twenty-four hours a day. In fact, it would appear that the Oregon Rules of Professional Conduct prohibit such actions. Oregon Rule of Professional Conduct 4.4(a) states as follows:

> In representing a client or the lawyer's own interests, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, harass or burden a third person, or knowingly use methods of obtaining evidence that violate the legal rights of such a person.

O.R.P.C. 4.4(a). To the extent that Freightliner claims that Mrs. Younessi is a potential witness, their tactics are even more inexcusable, as the only purpose can be to intimidate Mrs. Younessi. And these tactics appear to be working, as Mrs. Younessi is in fear for her personal safety.[4]

---

[3] As Mr. Younessi was served with process at his place of business, there is simply no need for a private detective to be stationed outside his house around the clock days after service was effectuated.

[4] The stalking statutes of both Oregon and Illinois also prohibit the actions of Freightliner's agents. For example, Oregon's stalking statute defines "stalking" as "intentionally, knowingly or recklessly engag[ing] in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person." *See* ORS 30.866(1). "Contact" is defined as "coming into the visual or physical presence of the other person; following the other person…[or] waiting outside the home, property, place of work or school of the other person or of a member of that person's family or household." *See* ORS 163.730; *see also Schiffner v. Banks*, 33 P.3d 701, 706 (Or. Ct. App. 2001) (finding that a person who followed the victim to her house, waited for her outside and then watched her leave both "followed" and "came within his visual or physical presence" for the purpose of ORS 163.730 and thus had engaged in "contact").

PAGE 4 -   MEMORANDUM IN SUPPORT OF HIS EMERGENCY MOTION FOR A PROTECTIVE ORDER

Mr. Younessi has every reason to believe that Freightliner will continue its tactics for the foreseeable future unless this Court intervenes. Freightliner's harassment of both Mr. Younessi and his wife serves no purpose other than improper oppression and intimidation under the law.

## IV. **CONCLUSION**

WHEREFORE, Mr. Younessi respectfully requests that this Court enter a protective order requiring Freightliner to cease any and all surveillance of Mr. Younessi, any member of his immediate family, and his house; immediately remove any of its agents currently engaged in surveilling or following Mr. Younessi or any member of his family; and any other relief this Court deems necessary.

DATED:  January 14, 2008

LANE POWELL PC


By___/s/  Bruce C. Hamlin_____
    Bruce C. Hamlin, OSB No. 79254
    Telephone:  503.778.2158
Attorneys for Defendant Ramin Younessi

Mark S. Mester, *pro hac vice* pending
mark.mester@lw.com
Cameron R. Krieger, *pro hac vice* pending
cameron.krieger@lw.com
**LATHAM & WATKINS LLP**
233 S. Wacker Drive, Suite 5800
Chicago, Illinois  97205

PAGE 5 -   MEMORANDUM IN SUPPORT OF HIS EMERGENCY MOTION FOR A
           PROTECTIVE ORDER

# Exhibit D

Page 1

1          IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF OREGON

3   FREIGHTLINER LLC, a Delaware   )
    limited liability company,     )
4                                  )
                Plaintiff,         )   CV-08-31-HA
5                                  )
        vs.                        )   January 16, 2008
6                                  )
    RAMIN YOUNESSI, an Illinois    )   Portland, Oregon
7   resident,                      )
                                   )
8               Defendant.         )

9

10            TRANSCRIPT OF PROCEEDINGS

11      BEFORE THE HONORABLE ANCER L. HAGGERTY

12    UNITED STATES DISTRICT COURT CHIEF JUDGE

13                APPEARANCES

14  FOR THE PLAINTIFF:    Susan K. Eggum
                          Paul A. C. Berg
15                        Attorneys at Law

16

    FOR THE DEFENDANT:    Mark S. Mester
17                        Bruce C. Hamlin
                          Cameron R. Krieger
18                        Attorneys at Law

19

20

21

22  COURT REPORTER:       Dennis W. Apodaca, RPR
                          1000 S.W. Third Ave., Room 301
23                        Portland, OR  97204
                          (503) 326-8182

24

25

Page 3

1   pleadings.

2           Ms. Eggum, what the is purpose of this private

3   detective?

4           MS. EGGUM:  Your Honor, first of all, let me say

5   that it is my client's position that whether the

6   investigator has been retained is an OEC 503 privileged

7   communication; and therefore, I'm not at liberty to

8   disclose whether such an investigator has been retained.

9   I might point out to the Court that there isn't any

10  submission before the Court indicating that any

11  surveillance took place after what Mrs. Younessi describes

12  as several days.  I do think it is a moot point,

13  Your Honor.

14          THE COURT:  Well, let's see.  Mr. Mester, do you

15  think it is a moot point?

16          MR. MESTER:  Your Honor, it certainly isn't for

17  our client.  It was a matter of some concern to them to

18  have a black SUV parked outside their home with tinted

19  windows day and night and to have that car follow them.

20  Perhaps it is the case that it has stopped.  We don't know

21  for sure.  We can't know for sure.  But we would like some

22  assurance it is not going to happen again.

23          THE COURT:  I'll grant the protective order.

24          MR. MESTER:  Thank you, Your Honor.

25          THE COURT:  All right.  That takes us to the

1

2                                  --oOo--

3

4              I certify, by signing below, that the foregoing

5       is a correct transcript of the record of proceedings in

6       the above-entitled cause. A transcript without an

7       original signature is not certified.

8

9       _____        _____  1/28/08

10      DENNIS W. APODACA, RPR                    DATE
        Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25